UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROSEMARY O'MAHONY,                :    E-FILED

                       Plaintiff,   :    07-CIV- 7916 (VM)

       - against -                :

                                        :

ACCENTURE LTD. and ACCENTURE LLP.,   :

                                        :

                    Defendants.   :

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**
**IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**<u>PURSUANT TO FED. R. CIV. PROC. 12(B)(6)</u>**

Defendants Accenture Ltd and Accenture LLP ("Defendants"), by and through their attorneys SEYFARTH SHAW LLP, hereby request that this Court take judicial notice of the following matters pursuant to Federal Rule of Evidence 201 and consider them in deciding Defendants' motions to dismiss as authorized by the Second Circuit. *See Mangiafico v. Blumenthal,* 471 F.3d 391 (2d Cir. 2006) (Court took judicial notice of and considered docket sheet in another action, counsel's response to questions at oral argument regarding matters outside the complaint, and a letter to plaintiff from the Attorney General's office); *Tian Ming Lin v. U.S. Department of Justice,* 473 F.3d 48 (2d Cir. 2007) (*per curiam*) (Court took judicial notice of certain documents that were in the record of another case); *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998) (docket sheets are public records of which the court could take judicial notice); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (In ruling on 12(b)(6) motion, court may take judicial notice of public records integral to a complaint).

1.     Plaintiff's March 24, 2005 complaint with the United States Department of Labor's Occupational Safety & Health Administration ("OSHA") against Accenture Ltd and its

subsidiaries.  A true and correct copy of the complaint is attached hereto and incorporated herein at Exhibit A.

2.       OSHA's Whistleblower Program Manager, Sherrill F. Benjamin, March 25, 2005, Final Investigation Report in which Ms. Benjamin states OSHA did not have jurisdiction over Plaintiff's whistleblower complaint.  A true and correct copy of the Final Investigation Report is attached hereto and incorporated herein at Exhibit B.

3.        OSHA Secretary's Findings dated May 9, 2005 dismissing Plaintiff's complaint. A true and correct copy of the May 9, 2005 Findings Letter is attached hereto and incorporated herein at Exhibit C.

4.       Administrative Law Judge's January 20, 2006 order dismissing Plaintiff's OSHA complaint.  A true and correct copy of this order is attached hereto and incorporated herein at Exhibit D.

5.       OSHA's Administrative Review Board's dismissal of Plaintiff's appeal indicating that Plaintiff "may bring an action at law or equity in the appropriate United States District Court, which will have jurisdiction over the action without regard to the amount in controversy." A true and correct copy of this order is attached hereto and incorporated herein at Exhibit E.

6.       Plaintiff's *Convocation LR-AR Devant le Bureau Conciliation (stamped received March 1, 2005)*. A true and correct copy of this document is attached hereto and incorporated herein at Exhibit F.

7.       French Tribunal's judgment dismissing Plaintiff's claims against Accenture SAS and Accenture LLP for cotisations between 2002 and 2004, but awarding Plaintiff lost wages from December 2004, when her pay was reduced, until October 2006.  A true and correct copy of this judgment is attached hereto and incorporated herein at Exhibit G.

Dated: New York, New York
       November 2, 2007

                             Respectfully submitted,

                             SEYFARTH SHAW LLP

                             By: ___s/ Anthony J. Rao_____
                                 Anthony J. Rao (AR-8482)
                           620 Eighth Avenue
                           New York, New York 10018
                           (212) 218-5500

                               David Rowland, admitted *Pro Hac Vice*
                               Miriam Geraghty, admitted *Pro Hac Vice*
                           131 South Dearborn Street, Suite 2400
                           Chicago, IL 60603
                           (312) 460-5965

                           Attorneys for Defendants Accenture Ltd and
                           Accenture LLP

# EXHIBIT A

# KAISER SAURBORN & MAIR, P.C.

## COUNSELORS AT LAW

NEW JERSEY OFFICE
3163 KENNEDY BOULEVARD
JERSEY CITY, NJ 07306
TEL: (201) 798-7082
FAX: (201) 798-4627

20 EXCHANGE PLACE
NEW YORK, NEW YORK 10005
TEL: (212) 338-9100
FAX: (212) 338-9088

March 24, 2005

**BY FEDERAL EXPRESS**
Diane Turek
Area Director
United States Department of Labor
Occupational Safety & Health Administration
701 Lee Street - Suite 950
Des Plains, Illinois 60016

Re:     Complaint by Rosemary O'Mahony Pursuant to Title VIII of the Sarbanes-Oxley
        Act of 2002

Dear Ms. Turek:

We represent Rosemary O'Mahony.  This letter constitutes Ms. O'Mahony's written
complaint, pursuant to Title VIII of the Sarbanes-Oxley Act of 2002 (18 U.S.C. § 1514A) and 29
CFR § 1980.103, that her employer, Accenture Ltd. and its subsidiaries, have violated 18 U.S.C.
§ 1514A by retaliating against Ms. O'Mahony because of her investigation of, and objection to, a
fraudulent scheme to evade the payment of social security contributions that were due in France
for United States employees on secondment to that country.

A.     **Sarbanes-Oxley Whistleblower Prohibition**

The whistleblower protection provisions of the Sarbanes-Oxley Act (18 U.S.C. § 1514A)
prohibit companies, such as Accenture Ltd. and its subsidiaries, that are publicly traded on the
New York Stock Exchange from retaliating against an employee because of the employee's
investigation of, opposition to, or complaints about, certain types of unlawful conduct by the
company.  This protection applies to any employee who reasonably believes that the conduct
complained of constitutes a violation of, amongst other laws, the United States mail and wire
fraud statutes.  As set forth below, Ms. O'Mahony reasonably believes that Accenture has
violated such laws by affirmatively concealing her work status from the French authorities,
including filing false reports in France purporting to certify the identities of all employees, and
the concerted course of action by French and American executives of Accenture to deliberately
evade paying millions of dollars of French social security payments it was legally obligated to
make.

KAISER SAURBORN & MAIR, P.C.

Diane Turek
Re: Rosemary O'Mahony
March 24, 2005
page -2-

**B.**    **Accenture Ltd's Corporate Structure**

Accenture Ltd. is a Bermuda-based company that is listed on the New York Stock Exchange. It is one of the world's leading management consulting, technology services and outsourcing organizations, with approximately $13.7 billion of revenues in its 2004 fiscal year. According to Accenture Ltd.'s most recent Form 10-K filed withe the Securities and Exchange Commission, as of August 31, 2004, Accenture had more than 100,000 employees worldwide, approximately 2,300 of which were designated as "partners." Ms. O'Mahony is one such partner.

Accenture Ltd.'s only business is to hold shares in, and act as the sole general partner of, Accenture SCA. Accenture Ltd. controls Accenture SCA's management and operations and consolidates Accenture SCA's results in its financial statements. Accenture operates its business through subsidiaries of SCA.

Ms. O'Mahony was a partner and employee of Accenture's United States subsidiary, Accenture LLP, until August 31, 2004. As a United States employee on secondment to France, her employment continued to be based in Illinois and she continued to receive payment of her salary and bonuses in Illinois until September 1, 2004.

As set forth in detail below, as of September 1, 2004, Ms. O'Mahony was forced by Accenture to transfer her employment to Accenture's French subsidiary as part of Accenture's efforts to conceal its social security fraud from the French authorities. Since September 1, 2004, Ms. O'Mahony has therefore been an employee and partner of Accenture SAS, the French operating subsidiary of Accenture SCA.

**C.**    **Ms. O'Mahony's Record of Achievement at Arthur Andersen, Andersen Consulting and Accenture**

Accenture is the successor to Andersen Consulting. Ms. O'Mahony joined Accenture (then Arthur Andersen and subsequently Andersen Consulting) in Dublin in 1978 and has worked for the company ever since. In 1984 she moved to the Chicago office and was promoted to partner in 1988. In 1993 Ms. O'Mahony began an expatriate secondment to France where she was responsible for setting up and heading a new Accenture office in Sophia Antipolis. In 1996, Ms. O'Mahony was asked to transfer to Paris to lead the Technology Competency group for the West Europe region. In parallel, she was given increased responsibility for the Technology Competency group for Europe Middle East Africa (EMEA). In 2000, Ms. O'Mahony was asked

KAISER SAURBORN & MAIR, P.C.

Diane Turek
Re: Rosemary O'Mahony
March 24, 2005
page -3-

by Steve James (then Managing Partner for Resources and subsequently Accenture's Chief
Operating Officer) to assume global responsibility for the Technology Competency within the
Resources Operating Group.

**D.**     <u>**Accenture's Legal Obligation to Pay French Social Security Taxes**</u>

Under the terms of the Agreement on Social Security Between the United States of
America and the French Republic, dated March 2, 1987 ("Social Security Treaty"), employees
who are sent by United States employers to work in the territory of France are subject to the
provisions of the French social security system and their employers are required to make
employer contributions with respect to each such employee in France.  The only exception to this
rule applies to employees for whom "the period of work in the territory of [France] is not
expected to exceed 5 years."  (Social Security Treaty, Article 6.1)

Ms. O'Mahony's initial five years of employment in France ended in 1998.  Hence, at
least as early as 1998 Accenture/Andersen had an obligation to begin paying contributions on her
behalf to the French social security system (referred to in France as "cotisations").  We are
advised by Ms. O'Mahony's French counsel that the "cotisations" Accenture was legally
obligated to make included URSSAF contributions (basic healthcare, life insurance and basic
retirement fund), ASSEDIC (unemployment insurance fund) and ARRCO and AGIRC
(supplemental retirement funds).  Accenture's portion of these unpaid "cotisations" amounts to
approximately 33% of Ms. O'Mahony's total compensation each year since 1998.

Beginning at least as early as October 2001, Ms. O'Mahony had discussions about the
need for Accenture to begin making "cotisations" contributions on her behalf with Nathalie
Helio, an Accenture tax expert based in Paris, with additional input from Steven Brown, an
associate partner in the corporate finance group in New York and Carine De Bontridder, a
manager in that group.  The results of these discussions are summarized in an e-mail from Ms.
Helio dated October 31, 2001, in which she confirmed the requirement that Accenture make
these payments and estimated the "cotisations" to be approximately $425,000 per year for
Accenture.  The email made explicit reference to the fact that Benoit Genuini, the Chairman of
Accenture SAS, acknowledged Accenture's obligation to pay these cotisations: "Benoit Genuini
understands that Accenture France will be paying this."  A copy of the e-mail is enclosed
herewith as Exhibit A.  However, despite repeated efforts by Ms. O'Mahony over the course of
three years, some of which are summarized below, Accenture has failed to make a single
"cotisations" contribution for Ms. O'Mahony for the period prior to September 1, 2004, when she
was transferred to the payroll of the French company.

KAISER SAURBORN & MAIR, P.C.

Diane Turek
Re: Rosemary O'Mahony
March 24, 2005
page -4-

Instead of making the required "cotisations", Accenture continued to make employer social security contributions for Ms. O'Mahony in the United States. However, these U.S. contributions amount to only approximately 8% of the first $90,000 of an employee's salary and approximately 2% above that threshold. Under the French system, on the other hand, an employer such as Accenture is required to make "cotisations" payments at the rate of approximately <u>33%</u> of an employee's <u>entire salary and bonuses</u>. Thus, looking solely at the period January 2002 through August 2004, it is conservatively estimated that the social security contributions Accenture fraudulently evaded in France for Ms. O'Mahony amount to approximately $1.3 million (and Accenture/Andersen's obligation actually commenced as early as 1998).

E.     **Accenture's Fraudulent Evasion of Social Security Taxes**

Beginning in November 2001, Ms. O'Mahony repeatedly and consistently demanded that Accenture meet its legal obligation to pay her "cotisations" to the French authorities. During the period November 2001 through July 2004, some of Accenture's most senior executives repeatedly admitted to Ms. O'Mahony that the company was legally obligated to pay the "cotisations" to the French social security administration but insisted that the company was unwilling to make these payments or declare to the French authorities that she was working there. These admissions were made by Benoit Genuini, head of Accenture France, and Dominique Calmels, the CFO of Accenture France. In addition, Nathalie Helio, the Accenture tax expert based in Paris, confirmed that the company was violating French law by evading these payments.

In conversations on February 28, 2004 and June 10, 2004 with Pamela Craig, Accenture's Global Financial Controller in New York, Ms. O'Mahony reiterated her position that Accenture must make  payment of her "cotisations" that were legally mandated by French law for the period beginning in July 2001. She also told Ms. Craig that Mr. Genuini had repeatedly admitted that Accenture had a legal obligation to pay the "cotisations" for that period but refused to make the payments. Genuini confirmed his position on June 10, 2004 shortly before Ms. O'Mahony's second conversation with Ms. Craig.

On June 29, 2004, Ms. O'Mahony met with Catherine Delhaye, Chief Counsel at Accenture SAS. Ms. Delhaye admitted to Ms. O'Mahony that, after receiving advice from outside counsel, she believed Accenture had been legally obligated to make payment of the "cotisations" since July 2001. Ms. Delhaye confirmed that the decision to refuse to make the payments came from Genuini himself and characterized Genuini's refusal as "shameful." At a subsequent meeting on July 5, 2004, Ms. Delhaye again confirmed that Genuini's decision was

KAISER SAURBORN & MAIR, P.C.

Diane Turek
Re: Rosemary O'Mahony
March 24, 2005
page -5-

wrong and informed Ms. O'Mahony that his decision was motivated by his desire to avoid creating the risk of a new audit by the URSSAF (French social security administration).

As Ms. O'Mahony continued to insist on payment of the "cotisations", Ms. Delhaye further admitted to her that she believed the intentional failure to make the payments constituted "fraud" but asked Ms. O'Mahony to understand that they could not now make the payments because of the risk of triggering a wider audit of employee "cotisations".

During this same period, as Ms. O'Mahony continued to insist that Accenture meet its legal obligations by making the "cotisations" contributions, Accenture began pressuring Ms. O'Mahony to transfer her employment from its U.S. subsidiary to its French subsidiary. In fact, Genuini explicitly told Ms. O'Mahony that the company would be able to exploit such a transfer to treat her as a "new" employee in France and begin making "cotisations" payments on an ongoing basis without triggering suspicion from the French authorities -- and without making the retroactive payments due. Genuini repeatedly pressured Ms. O'Mahony to agree to drop her insistence that Accenture make back payments and acquiesce in the fraudulent scheme to treat her as a newly-arrived employee. On July 28, 2004, after Ms. O'Mahony refused to do so, and refused to sign a French employment contract until the issue was resolved, Ms. Craig became angry and accused Ms. O'Mahony of acting in bad faith. Ms. Craig also told Ms. O'Mahony that she (Craig) and Michael McGrath, Accenture's Global Risk Officer in the United States, would make a final decision as to whether or not Accenture would pay the "cotisations".

The following day, on July 29, 2004, Ms. O'Mahony met with Genuini. At that meeting Genuini became so angry at Ms. O'Mahony that she feared he would physically strike her. Genuini insisted she sign the French employment contract so that, in his words, he could "slip [her] into the French system" along with that year's new French partners and avoid alerting the French authorities to her unpaid "cotisations". When Ms. O'Mahony brought up the issue of payment of the back taxes, Genuini told her that he "did not give a damn about the URSSAF" and would not make the payments. Genuini became so aggressive that Ms. O'Mahony was forced to sign the French employment contract under duress. That same day Ms. O'Mahony filed a complaint against Genuini with the Accenture Business Ethics Hotline and, the following day, Ms. O'Mahony reported Genuini's conduct and statements to Ms. Craig.

During a series of telephone conversations with Ms. Craig during August and September 2004, Ms. O'Mahony continued to insist that the "cotisations" be paid and expressly informed Ms. Craig that she would not agree to conceal the "fraud" being committed by Accenture. Craig initially responded by asserting that Jamey Shachoy, Accenture's global tax partner based in California, had decided to make payments for 2003 and 2004, but not for 2001 and 2002 for fear

KAISER SAURBORN & MAIR, P.C.

Diane Turek
Re: Rosemary O'Mahony
March 24, 2005
page -6-

of provoking another URSSAF audit. Then, in a subsequent conversation, Ms. Craig asserted that Accenture had decided not to pay any retroactive "cotisations" in order to "optimize Accenture's overall tax position." Finally, on September 23, 2004, Ms. Craig admitted that Jamey Shachoy had determined that Accenture's "interests" could best be served by not making any of the payments and continuing to conceal Ms. O'Mahony's prior employment in France from the French authorities. However, despite these admissions, Accenture has not made payments for the period prior to the transfer of Ms. O'Mahony's employment to the French company on September 1, 2004.

**F.    Accenture's Retaliation Against Ms. O'Mahony**

As the preceding section demonstrates, Ms. O'Mahony has repeatedly complained to some of the most senior executives of Accenture about Accenture's fraudulent conduct in deliberately evading payment of her French social security taxes for the stated purpose of avoiding an audit that might reveal a more widespread fraud and other illegalities with respect to "cotisations" contributions for expatriate U.S. Accenture employees in France. The unpaid "cotisations" for the period January 2002 through August 2004 for Ms. O'Mahony alone amounts to approximately $1.3 million.

As a result of these complaints, Ms. O'Mahony has been subjected to a number of substantial acts of retaliation which culminated with a substantial reduction in her salary on December 24, 2004. Accenture's retaliation has included, but is not limited to, the following:

- Reduction of Level of Responsibility – On November 19, 2004, Ms. O'Mahony was told by Mark Spelman, the partner to whom she reports, that her level of responsibility was being reduced from B1 to A3 for 2005. Ms. O'Mahony was given no prior warning of this unprecedented reduction of her role, and the reduced level of A3 represents the level typically given to partners with 4-6 years of seniority as partners rather than Ms. O'Mahony's 16 years. Notably, Mr. Spelman informed Ms. O'Mahony that the decision to reduce her level of responsibility was made by Tom Pike, the global business operations director, who had no contact or reporting relationship with Ms. O'Mahony in 2004. Ms. O'Mahony asked Mr. Spelman what she would need to do to increase her level of responsibility back to B1 but he had no response. At a subsequent meeting on December 15, 2004, Spelman told Ms. O'Mahony that, regardless of her work performance or level of achievement in the future, her level of responsibility would never be increased from the reduced A3 level. The unjustified reduction of Ms. O'Mahony's level of responsibility by a senior executive with whom she has no relationship, and the

KAISER SAURBORN & MAIR, P.C.

Diane Turek
Re: Rosemary O'Mahony
March 24, 2005
page -7-

unprecedented warning to Ms. O'Mahony that it would never be increased again, are transparent acts of retaliation.

• <u>Removal of Duties</u> – On December 9, 2004, Ms. O'Mahony learned from a colleague that her responsibilities as global lead for the Solutions Engineering Service Line within Resources had suddenly been removed without her knowledge. Spelman had met with her earlier that week and had given her no indication that she was about to be stripped of these substantial duties. Moreover, Spelman had communicated this change to her replacement, to members of her team and to her subordinates two weeks previously, which was an act of extreme hostility and one guaranteed publicly to embarrass Ms. O'Mahony.

• <u>Substantial Unilateral Reduction of Salary in Violation of French Contract</u> – As set forth above, on July 28, 2004, Ms. O'Mahony was coerced into signing an employment contract with Accenture France so that Accenture could begin paying "cotisations" to the French authorities as if she were a new partner. Pursuant to the terms of the contract, which took effect on September 1, 2004, Ms. O'Mahony was entitled to receive a guaranteed base salary of 25,977 euro per month. However, **on December 24, 2004,** when Ms. O'Mahony was paid her December salary, she discovered that it had been unilaterally reduced by 21% to 20,467 euro per month without prior warning or notification and contrary to the express terms of her French contract. This was another blatant act of retaliation and an unmistakable warning to her to drop her insistence that Accenture end its fraudulent evasion of responsibility for payment of her back "cotisations".

G.    **Conclusion**

Ms. O'Mahony is willing to provide any further information to Department of Labor that may assist it in its investigation of this matter and will make herself available for an interview. Please contact me if you would like to request such further information or arrange an interview.

Very truly yours,

David N. Mair

Encl.

KAISER SAURBORN & MAIR, P.C.

Diane Turek
Re: Rosemary O'Mahony
March 24, 2005
page -8-


cc:    **BY FEDERAL EXPRESS**
       David Rowland, Esq.
       (Counsel for Accenture)
       Seyfarth Shaw LLP
       55 East Munroe Street
       Suite 4200
       Chicago, IL 60603

# EXHIBIT B

**U.S. Department of Labor**

Occupational Safety and Health Administration
230 South Dearborn Street Room 3244
Chicago, Illinois 60604
(312) 353-2220

April 18, 2005

MEMORANDUM FOR:   Diane Turek
                  Area Director

FROM:             Sherrill F. Benjamin, Whistleblower Program Manager
                  Shawn Hughes, Investigator

SUBJECT:          Accenture Ltd./O'Mahoney/5-2330-05-030

### Final Investigation Report

<u>Date Filed:</u>   March 25, 2005

<u>Complainant:</u>
Ms. Rosemary O'Mahoney
Address Unknown
France
Telephone: Unknown

<u>Represented By:</u>
Kaiser Saurborn & Mair, P.C.
David N. Mair, Esq.
20 Exchange Place
New York, New York 10005
Telephone: 212-338-9100

<u>Respondent:</u>
Accenture Ltd.
161 North Clark
Chicago, IL 60601
Telephone: 312-693-0161

<u>Represented By:</u>
Seyfarth Shaw LLP
David Rowland, Esq.
55 East Monroe Street
Suite 4200
Chicago, IL 60603

<u>Allegation:</u>   Complainant alleges that Accenture Ltd. is retaliating against her because of her investigation of, and objection to, a fraudulent scheme to evade the payment of social security contributions that were due in France for United States employees on secondment to that country.

<u>Defense:</u>   DOL-OSHA lacks jurisdiction to investigate this complaint therefore the Respondent was not provided an opportunity to proffer a defense.

<u>Coverage:</u>   Although Accenture Ltd is a company within the meaning of SOX; the Complainant is not an employee within the meaning of SOX. The Complainant in this case lives in France where all aspects of the allegation and prima facie elements of the complaint occurred.

<u>List of Witnesses:</u>

Based on the available information that submitted by the Complainant through legal counsel and telephone conversations with her attorney, DOL-OSHA does not have jurisdiction to investigate this complaint. Therefore no witnesses were interviewed.

<u>Investigative Findings:</u>

The Respondent is a management consulting, technology services and outsourcing organization.

# EXHIBIT C



**U.S. Department of Labor**

Occupational Safety & Health Administration
230 S. Dearborn St., Room 3244
Chicago, IL 60604
(312) 353-2220

May 9, 2005

Kaiser Saurborn & Mair, P.C.
David N. Mair, Esq.
20 Exchange Place
New York, New York 10005

RE:   Accenture Ltd./O'Mahoney/5-2330-05-030

Dear Mr. Mair:

The Occupational Safety and Health Administration (OSHA) acknowledges receipt of the above referenced complaint filed by your client, Rosemary O'Mahoney, alleging that Accenture Ltd. violated the whistleblower protection provision of Title VIII of the Sarbanes Oxley Act of 2002, Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, 18 U.S.C. §1514A, et seq., (hereinafter called SOX).

### Secretary's Findings

The complaint, together with your discussions with Whistleblower Program Manager, Sherrill F. Benjamin, does not allege facts and evidence to meet the jurisdictional requirements of SOX. Accenture Ltd. is a Bermuda-based company that is listed on the New York Stock Exchange. Ms. O'Mahoney is an employee and partner of Accenture SAS, the French operating subsidiary of Accenture SCA, a subsidiary of Accenture Ltd. Ms. Mahoney's employment and each of the alleged elements of her complaint occurred in France. As Section 806 of SOX does not apply extraterritorially, your complaint is hereby dismissed.

Respondent and Complainant have 30 days from receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ). If no objections are filed, these Findings will become final and not subject to court review. Objections must be filed in writing with:

Chief Administrative Law Judge
U.S. Department of Labor
Suite 400N, Techworld Building
800 K Street NW
Washington D.C. 20001-8002
(202)693-7542, Facsimile (202) 693-7365

with copies to:

Respondent

Michael G. Connors
Regional Administrator
Occupational Safety and Health Administration
230 South Dearborn Street, Room 3244
Chicago, IL 60604

Diane Turek
Area Director
U.S. DOL-OSHA
701 Lee Street # 950
Des Plaines, IL 60016

Department of Labor, Associate Solicitor
Division of Fair Labor Standards
200 Constitution Avenue NW, N2716
Washington, D.C. 20210

In addition, please be advised that the U.S. Department of Labor generally does not represent any party in the hearing held under the Act; rather, each party presents his or her own case. The hearing is an adversarial proceeding before an Administrative Law Judge (ALJ) in which the parties are allowed an opportunity to present their evidence *de novo* for the record. The ALJ who conducts the hearing will issue a decision based on the evidence, arguments, and testimony presented by the parties. Review of the ALJ's decision may be sought from the Administrative Review Board, to which the Secretary of Labor has delegated responsibility for issuing final agency decisions under SOX. A copy of this letter has also been sent to the Chief Administrative Law Judge along with a copy of your complaint. The rules and procedures for the handling of SOX cases can be found in Title 29, Code of Federal Regulations part 1980, a copy of which was sent to you earlier, and may be obtained at www.osha.gov.

If you have any questions, please do not hesitate to call me at (312) 353-2220.

Sincerely,

*Michael G Connors*

Michael G. Connors
Regional Administrator

cc: Respondent
    Chief Administrative Law Judge
    Securities and Exchange Commission

# **EXHIBIT D**

**U.S. Department of Labor**

Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ  08002

(856) 486-3800
(856) 486-3806 (FAX)



**Issue Date: 20 January 2006**

CASE NO.:  2005-SOX-00072

In the Matter of

**ROSEMARY O'MAHONY**
    Claimant

    v.

**ACCENTURE LTD**
    Respondent

**R E C E I V E D**

JAN 2 4 2006

**SEYFARTH SHAW**

<u>**ORDER OF DISMISSAL**</u>

Complainant is an employee and partner of Accenture SAS, the French operating subsidiary of Accenture SCA, which is a subsidiary of Accenture, Ltd., a Bermuda-based company traded on the New York Stock Exchange. Complainant is an Irish national residing in France. Complainant seeks protection as a whistle-blower under the Sarbanes Oxley Act of 2002 (SOX), Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, 18 U.S.C. § 1514A, et seq.

As a matter of statutory construction, the whistleblower provision of the Act applies only to employees who work within the United States. *Ede v. Swatch Group*, 2004-SOX-68, 2004-SOX-69 (ALJ January 14, 2005); *Concone v. Capital One Financial Corp.*, 2005-SOX-6 (ALJ December 3, 2004). On January 5, 2006, the United States Court of Appeals for the First Circuit decided in *Carnero v. Boston Scientific Corp.*, Nos. 04-1801, 04-2291, that Section 806 of SOX does not apply extraterritorially. While not binding on this Court, the recent decision is persuasive and, therefore,

**IT IS ORDERED** that Complainant's claim under the Sarbanes Oxley Act be **DISMISSED**.

**PAUL H. TEITLER**
**Administrative Law Judge**

# SERVICE SHEET

Case Name:  **O'MAHONY ROSEMARY v. ACCENTURE LTD.**

Case Number: **2005SOX00072**

Document Title: **ORDER OF DISMISSAL**

I hereby certify that a copy of the above-referenced document was sent to the following this 20th day of January, 2006:


*Heidi U. Bernard*
**HEIDI U. BERNARD**
LEGAL ASSISTANT

Directorate of Enforcement Programs
U. S. Department of Labor, OSHA
Room N-3603, FPB
200 Constitution Ave., N.W.
Washington, DC 20210
    *{Hard Copy - Regular Mail}*

Associate Solicitor
Division of Fair Labor Standards
U. S. Department of Labor
Room N-2716, FPB
200 Constitution Ave., N.W.
Washington, DC 20210
    *{Hard Copy - Regular Mail}*

Regional Solicitor
U. S. Department of Labor
Room 844
230 South Dearborn Street
Chicago, IL 60604
    *{Hard Copy - Regular Mail}*

Regional Solicitor
U. S. Department of Labor
Room 983
201 Varick Street
New York, NY 10014
    *{Hard Copy - Regular Mail}*

Rosemary O'Mahony
c/o Kaiser Saurborn & Mair, P.C.
20 Exchange Place
New York, NY 10005
    *{Hard Copy - Regular Mail}*

Daivd N. Mair, Esq.
Kaiser Saurborn & Mair, P.C.
20 Exchange Place
New York, NY 10005
    *{Hard Copy - Regular Mail}*

David J. Rowland, Esq.
Seyfarth Shaw LLP
55 East Montoe Street, Suite 4200
Chicago, IL 60603
    *{Hard Copy - Regular Mail}*

**SERVICE SHEET** continued (2005SOX00072 Case Decision)     Page: 2

Accenture LTD
c/o Seyfarth Shaw LLP
55 East Monroe Street, Suite 4200
Chicago, IL 60603
        *{Hard Copy - Regular Mail}*

# **<u>EXHIBIT E</u>**

**U.S. Department of Labor**          Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210



In the Matter of:

ROSEMARY O'MAHONY,                    **ARB CASE NOS.  06-054**

        **COMPLAINANT,**          **ALJ CASE NO.  05-SOX-072**

    **v.**                             **DATE:**   SEP 2 4 2007

**ACCENTURE LTD.,**

      **RESPONDENT.**

**BEFORE:**    **THE ADMINISTRATIVE REVIEW BOARD**

**FINAL ORDER DISMISSING APPEAL**

On March 24, 2005, the Complainant, Rosemary O'Mahony, filed a complaint with the United States Department of Labor's Occupational Safety and Health Administration alleging that her employer, Accenture, Ltd., had retaliated against her in violation of the whistleblower protection provisions of the Sarbanes-Oxley Act of 2002 (SOX).[1]  On January 20, 2006, a Department of Labor Administrative Law Judge issued an Order of Dismissal in this case.  O'Mahony filed a petition for review with the Administrative Review Board on January 26, 2006.   The Secretary of Labor has delegated to the Board her authority to issue final agency decisions under SOX.[2]

On August 16, 2007, the Board received a letter from O'Mahony's counsel indicating that she "intends to file an action for *de novo* review in the appropriate District Court of the United States."  If the Board has not issued a final decision within 180 days of the date on which the complainant filed the complaint and there is no showing that the complainant has acted in bad faith to delay the proceedings, the complainant may bring an action at law or equity for de novo review in the appropriate United States district court, which will have jurisdiction over the action without regard to the amount in

---

[1]        18 U.S.C.A. § 1514A (West 2002).

[2]        Secretary's Order No. 1-2002, 67 Fed. Reg. 64,272 (Oct. 17, 2002); 29 C.F.R. § 1980.110(a)(2007).

2

controversy.[3]  Accordingly, we ordered the parties to show cause no later than September 7, 2007, why the Board should not dismiss O'Mahony's appeal pursuant to 29 C.F.R. § 1980.114.

Neither party has responded to the Board's Order.  Accordingly, we **DISMISS** O'Mahony's appeal.

**SO ORDERED.**

**M. CYNTHIA DOUGLASS**
**Chief Administrative Appeals Judge**

**OLIVER M. TRANSUE**
**Administrative Appeals Judge**

---

[3]    18 U.S.C.A. § 1514A(b)(1)(B); 29 C.F.R. § 1980.114.  As is the usual case, by the time the Board received the petition for review, the 180-day period for deciding the case had already expired.

## ADMINISTRATIVE REVIEW BOARD
### CERTIFICATE OF SERVICE

CASE NAME       :       *Rosemary O'Mahony v. Accenture LTD*

ARB CASE NO. :       06-054

ALJ CASE NO.  :       2005-SOX-72

DOCUMENT       :       FINAL

**A copy of the above-referenced document was sent to the following persons on**
SEP 2 4 2007
_____.

_Thomas A Shepherd Jr_
_____

**CERTIFIED MAIL:**

Rosemary O'Mahony
c/o Kaiser Saurborn & Mair, P.C.
20 Exchange Place
New York, NY  10005

David N. Mair, Esq.
Kaiser Saurborn & Mair, P.C.
20 Exchange Place
New York, NY  10005

David J. Rowland, Esq.
Seyfarth Shaw LLP
131 S. Dearborn Street
Suite 2400
Chicago, IL  60603

Accenture LTD
c/o Seyfarth Shaw LLP
131 S. Dearborn Street
Suite 2400
Chicago, IL  60603

**REGULAR MAIL:**

Steven J. Mandel, Esq.
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-2716
Washington, DC  20210

Jonathan L. Snare, Esq.
Solicitor of Labor
U.S. Department of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC  20210

Directorate of Enforcement Programs
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-3603
Washington, DC  20210

Regional Solicitor
U.S. Department of Labor
230 South Dearborn Street
Room 84475
Chicago, IL  60604

Regional Solicitor
U.S. Department of Labor
201 Varick Street
Room 983
New York, NY  10014

Hon. John M. Vittone
Chief Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC  20001-8002

Hon. Paul H. Teitler
Administrative Law Judge
Office of Administrative Law Judges
2 Executive Campus, Suite 450
Cherry Hill, NJ  08002

# EXHIBIT F

# CONSEIL DE PRUD'HOMMES DE PARIS
### Encadrement chambre 3 (Tél : 01.40.38.53.78)
## RÉPERTOIRE GÉNÉRAL N° : F 05/01048

MAR - 1 2005

BY: --------------------

## CONVOCATION LR-AR DEVANT LE BUREAU DE CONCILIATION
*rt. R 516-11 du Code du travail)*

**Mme Rosemary O'MAHONY**

54, avenue Foch

**75116 PARIS**
**Demandeur**
Ayant pour conseil Me RUDIO Raymond
(avocat au barreau de GRASSE)

**ACCENTURE LLP (LIMITED LIABILITY
PARTNERSHIP)**

1345, avenue Of The Americas
New-York - New York 10105 - ETATS-UNIS

**Défendeur**

Le Greffier en Chef vous convoque à l'audience tenue le :
**Mardi 26 Juillet 2005 à 10:30 heures, salle A10, 1ER étage**
en section Encadrement chambre 3 siégeant au :
Conseil de Prud'Hommes, 27, rue Louis Blanc, 75484 Paris Cedex 10 (Métro: Louis Blanc)

*Aux fins d'examen de l'affaire Rosemary O'MAHONY c) SAS ACCENTURE, ACCENTURE LLP*
*(LIMITED LIABILITY PARTNERSHIP)*
(Saisine du 27 Janvier 2005)

Chef(s) de la demande
**Mme Rosemary O'MAHONY**
- Régularisation part employeur et part salarié précompté des
cotisations URSSAF, ASSEDIC et Caisses AGIRC, ARCCO, sur
périodes travaillées en France non prescrites du 1er Janvier 2002 au
31 Août 2004
- Délivrances des fiches de paie conformes sous astreinte de 1.000
€ par jour de retard
- Article 700 du Nouveau Code de Procédure Civile                    4 500,00 €
- Exécution provisoire 515 du NCPC

**Vous êtes invité à vous présenter à l'audience muni des pièces utiles.**
**Vous êtes informé que les décisions exécutoires à titre provisoire pourront, même en votre absence,**
**être prises contre vous à l'audience au vu des seuls éléments fournis par votre adversaire.**
**La comparution des parties est obligatoire tout au long de la procédure, sauf motif légitime.**
**Veuillez aviser votre conseil de la date et de l'heure de l'audience.**

Obligation de l'employeur
Extrait du Code du Travail, Art. 516-45 :
En cas de recours portant sur un licenciement pour motif économique, l'employeur doit, dans les huit jours suivant la date à laquelle il
reçoit la convocation devant le bureau de conciliation, déposer ou adresser par lettre recommandée avec demande d'avis de réception
au greffe du conseil de prud'hommes les éléments mentionnés à l'article L. 122-14-3 pour qu'ils soient versés au dossier du conseil. La
convocation destinée à l'employeur rappelle cette obligation...

PARIS, le 04 Février 2005

P/o Le Greffier en Chef

## Comparution, assistance et représentation des parties.

«Article R. 516-4 - Les parties sont tenues de comparaître en personne sauf à se faire représenter en cas de motif légitime. Elles peuvent se faire assister.

«Article R. 516-5 - Les personnes habilitées à assister ou à représenter les parties en matière prud'homale sont :
- Les salariés ou les employeurs appartenant à la même branche d'activité ;
- Les délégués permanents ou non permanents des organisations syndicales ouvrières ou patronales ;
- Le conjoint ;
- Les avocats ;
- L'employeur peut également se faire assister ou représenter par un membre de l'entreprise ou de l'établissement ;
Devant la Cour d'Appel, les parties peuvent aussi se faire assister ou représenter par un avoué.

### Le Bureau de conciliation

«Article R. 516-12 - La convocation du défendeur devant le bureau vaut citation en justice sous réserve des dispositions du deuxième alinéa de l'article R.516-8. (...La saisine du conseil de prud'hommes, même incompétent, interrompt la prescription).

«Article R. 516-13 - Le bureau de conciliation entend les parties en leurs explications et s'efforce de les concilier. Il est dressé procès-verbal.

«Article R. 516-14 - En cas de conciliation totale ou partielle, le procès-verbal mentionne la teneur de l'accord intervenu. S'il y a lieu, il précise que l'accord a fait l'objet en tout ou partie d'une exécution immédiate devant le bureau de conciliation.

«Article R. 516-15 - A défaut de conciliation totale, les prétentions qui restent contestées et les déclarations que les parties font alors sur ces prétentions sont notées au dossier ou au procès-verbal par le greffier sous le contrôle du président.

«Article R. 516-16 - Si, au jour fixé pour la tentative de conciliation, le demandeur ne comparaît pas sans avoir justifié en temps utile d'un motif légitime, le bureau de conciliation déclare la demande et la citation caduques. La demande ne peut être réitérée qu'une seule fois, à moins que le bureau de conciliation, saisi sans forme, ne constate que le demandeur n'a pu comparaître sur sa deuxième demande par suite d'un cas fortuit.

«Article R. 516-17 - Si, au jour fixé pour la tentative de conciliation, le défendeur ne comparaît pas, le bureau de conciliation procède comme il est dit à l'article R.516-20, après avoir, s'il y a lieu, usé des pouvoirs prévus à l'article R.516-18.
Toutefois, si le défendeur a justifié en temps utile d'un motif légitime, il est convoqué à une prochaine séance du bureau de conciliation par lettre simple.
S'il apparaît que le défendeur n'a pas été joint, sans faute de sa part, par la première convocation, le bureau de conciliation décide qu'il sera à nouveau convoqué à une prochaine séance soit par lettre recommandée du secrétariat avec demande d'avis de réception, soit par acte d'huissier de justice à la diligence du demandeur.
Cet acte doit intervenir dans les six mois de la décision du bureau de conciliation à peine de caducité de la demande constatée par ce bureau.

«Article R. 516-18 - Le bureau de conciliation peut, nonobstant toute exception de procédure et même si le défendeur ne se présente pas, ordonner :
La délivrance, le cas échéant sous peine d'astreinte, de certificats de travail, de bulletins de paie et de toute pièce que l'employeur est tenu légalement de délivrer ;
Lorsque l'existence de l'obligation n'est pas sérieusement contestable, le versement de provisions sur les salaires et accessoires du salaire, les commissions et sur les indemnités de congés payés, de préavis et de licenciement, l'indemnité de fin de contrat prévue par l'article L.122-3-5, l'indemnité prévue au IV de l'article L.122-3-8, les indemnités mentionnées à l'article L.122-32-6 et l'indemnité de précarité d'emploi mentionnée à l'article L.124-4-4 ; le montant total des provisions allouées, qui doit être chiffré par le bureau de conciliation, ne peut excéder six mois de salaire calculés sur la moyenne des trois derniers mois de salaire.
Toutes mesures d'instruction, même d'office ;
Le bureau de conciliation peut liquider, à titre provisoire, les astreintes qu'il a ordonnées ;
Lorsqu'il est fait application du présent article et par dérogation aux dispositions de la dernière phrase de l'article R.515-1 les séances du bureau de conciliation sont publiques.

«Article R. 516-19 - Les décisions prises en application de l'article R.516-18 sont toujours provisoires ; elles n'ont pas autorité de chose jugée au principal. Elles sont exécutoires par provision le cas échéant sur minute. Elles ne sont pas susceptibles d'opposition. Elles ne peuvent être frappées d'appel ou de pourvoi en cassation qu'en même temps que le jugement sur le fond, sous réserve des règles particulières à l'expertise.

«Article R. 516-20 - Lorsque le demandeur et le défendeur sont présents ou représentés et que l'affaire apparaît en état d'être jugée sans que la désignation d'un ou deux conseillers rapporteurs ou le recours à une mesure d'instruction ne soient préalablement nécessaires, le bureau de conciliation renvoie l'affaire au bureau de jugement. Les parties peuvent être convoquées devant ce bureau verbalement avec émargement au dossier; dans ce cas un bulletin mentionnant la date de l'audience leur est remis par le greffier.
Lorsque l'affaire est en état d'être jugée sur le fond, et si l'organisation des audiences le permet, le bureau de conciliation peut, avec l'accord de toutes les parties, les faire comparaître à une audience que le bureau de jugement tient immédiatement.
Lorsque le défendeur n'a pas comparu et que le recours à une mesure d'information ou d'instruction n'apparaît pas préalablement nécessaire, le bureau de conciliation renvoie l'affaire au bureau de jugement. Le demandeur peut être convoqué devant ce bureau verbalement avec émargement au dossier ; dans ce cas un bulletin mentionnant la date de l'audience lui est remis par le greffier.
«Article R. 516-20-1 - Le bureau de conciliation peut fixer le délai de communication des pièces ou des notes que les parties comptent produire à l'appui de leurs prétentions.

## EXTRAITS DU NOUVEAU CODE DE PROCÉDURE CIVILE

### Représentation et assistance en justice

«Article 411 - Le mandat de représentation en justice emporte pouvoir et devoir d'accomplir au nom du mandant les actes de la procédure.

«Article 412 - La mission d'assistance en justice emporte pouvoir et devoir de conseiller la partie et de présenter sa défense sans l'obliger.

«Article 413 - Le mandat de représentation emporte mission d'assistance, sauf disposition ou convention contraire.

«Article 414 - Une partie n'est admise à se faire représenter que par une seule des personnes, physiques ou morales, habilitées par la loi.

«Article 415 - Le nom du représentant et sa qualité doivent être portés à la connaissance du juge par déclaration au secrétariat de la juridiction.

«Article 416 - Quiconque entend représenter ou assister une partie doit justifier qu'il en a reçu le mandat ou la mission. L'avocat ou l'avoué est toutefois dispensé d'en justifier.

«Article 417 - La personne investie d'un mandat de représentation en justice est réputée, à l'égard du juge et de la partie adverse, avoir reçu pouvoir spécial de faire ou accepter un désistement, d'acquiescer, de faire, accepter ou donner des offres, un aveu ou un consentement.

«Article 418 - La partie qui révoque son mandataire doit immédiatement en pourvoir un autre, faute de quoi son adversaire est fondé à poursuivre la procédure et à obtenir jugement en continuant à ne connaître que le représentant révoqué.

«Article 419 - Le représentant qui entend mettre fin à son mandat, n'en est déchargé qu'après avoir informé de son intention son mandant, le juge et la partie adverse.

ANNEX I
Docket n°:  F 05/01048/SD
Labor Court of Paris

Form... F2 (page 1)

## REQUEST FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| **Public Prosecutor of the Civil Court** **Judicial documents** **Office n° 388** **F-75055 Paris** | **P.F.I.** **910 5th Avenue** **Seattle, WA 98104** **U.S.A.** |

The undersigned applicant has the honor of transmitting (in duplicate) the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the address, *i.e.*:

(Identity and address)

### ACCENTURE LLP (LIMITED LIABILITY PARTNERSHIP)
### 1345, avenue of the Americas
### New York, NY  10105
### United States of America

**a) In accordance with the provision of sub-paragraph (a) of the first paragraph of Article 5 of the Convention.**

**c) By delivery to the address, if he accepts it voluntarily (second paragraph of Article 5).**

**The authority is requested to return or to have returned to the applicant a copy of the documents (and of the annexes) with a certificate as provided on the reverse side.**

List of documents:

**Summons to appear at conciliation**

**Done in Paris, February 2, 2005**
**For the Chief Clerk of the Court:  S. Dalibot**
***[stamp]* Labor Court of Paris**
**Supervisors Section**

**LABOR COURT OF PARIS**
**Chamber 3:  Supervisors (Tel.:  01 40 38 53 78)**
**Docket N°:  F 05/01048**

**SUMMONS TO APPEAR BEFORE THE CONCILIATION BUREAU**
(Art. R. 516-11 of the Labor Code)

**Mrs. Rosemary O'Mahony**                    **ACCENTURE    LLP    (LIMITED**
                                              **LIABILITY COMPANY)**


54, avenue Foch                               1345 Avenue of the Americas
75116 Paris                                   New York, NY 10105
France                                        United States of America

**Plaintiff**                                 **Defendant**
Having for lawyer Mr. Raymond Rudio
(Attorney on the Grasse Bar)


**The Chief Clerk summons you to the hearing to be held on:**
**Tuesday, July 26, 2005, at 10:30 a.m., Court A10, 1st Floor**
**Chamber 3, Supervisors Section, at:**

Labor Court
27, rue Louis Blanc
75484 Paris Cedex 10
(Métro:  Louis Blanc)

*In order to hear the case **Rosemary O'Mahony vs. SAS ACCENTURE, ACCENTURE LLP**
**(LIMITED LIABILITY PARTNERSHIP)**
(Claim made on January 27, 2005)

Claims:

**Mrs. Rosemary O'Mahony**
- Adjustment of the employer's share and of the employee's share of deductions at the source of the URSSAF (labor fund), ASSEDIC (unemployment fund), AGIRC and ARCCO (mandatory and optional retirement funds) funds at the source for the periods, worked in France, between January 1, 2002 and August 31, 2004, for which the statute of limitation has not run
- Issuance of the certified payslips, subject to penalties of € 1,000 per day of delay
- Article 700 of the New Code of Civil Procedure              € 4,500
- Provisional enforcement under Article 515 of the New Code of Civil Procedure.

**Please appear at the hearing with any useful documents.**
**You are hereby informed that provisional enforcement of decisions may, even if you do not appear, take place at such hearing based on only the evidence produced by your adversary.**
Parties must appear during the entire proceeding, except for legitimate reasons.
**Please inform your counsel of the date and time of the hearing.**

<u>Employer's obligation</u>
Excerpt from the Labor Code, Article 516-45:
"*In the event of a claim for a dismissal on economic grounds, the employer shall, within eight days following the date on which it is served the summons to appear before the conciliation bureau, file or communicate, by registered letter with return receipt, to the clerk of the labor court, the documents listed in Article 122-14-3, in order to add them to the court's file. The summons served on the employer shall reiterate such obligation [...]*"

**Paris, February 2, 2005
For the Chief Clerk of the Court:  S. Dalibot
*[stamp]* Labor Court of Paris
Supervisors Section**

## EXCERPTS FROM THE LABOR CODE

Appearance, assistance and representation of the parties

*"Article 516-4:  The parties shall appear in person unless a representative appears for them for a legitimate reason.  They may be assisted."*

*"Article R. 516-5:  Persons authorized to assist or represent the parties before the labor court shall be as follows:*
- *employees or employers belonging to the same business sector;*
- *permanent or non-permanent delegates of labor unions or employers' organizations*
- *spouses*
- *lawyers*
- *the employee may also be assisted or represented by a member of the company or establishment;  before the Court of Appeal, the parties may also be assisted or represented by a lawyer authorized to appear before the Court of Appeal".*

### The Conciliation Bureau

*"Article R. 516-12:  A summons served on the defendant shall be construed as a summons to appear before the court subject to the provisions in the second paragraph of Article R. 516-8 (Referral of a matter to the labor court, even if it lacks jurisdiction, interrupts the statute of limitations).*

*Article R. 516-13:  The conciliation bureau shall hear the parties' arguments and attempt to conciliate them.  Minutes shall be prepared of such conciliation.*

*Article R. 516-14:  In the event of full or partial conciliation, the minutes shall mention the provisions of the agreement reached.  If applicable, the minutes shall stipulate that the agreement was fully or partially immediately enforced before the conciliation bureau.*

*Article R. 516-15:  In the event of failure to reach full conciliation, the claims remaining and the statements the parties make on such claims shall be noted in the file or in the minutes by the clerk of the court under the judge's control.*

*Article R. 516-16:  If, on the date scheduled for the attempt at conciliation, the defendant does not appear, without having promptly provided legitimate reasons for such failure, the conciliation bureau shall rule the petition and summons to be null and void.  The petition may be filed only once more, unless the conciliation bureau, to which the matter has been referred, takes judicial notice that the plaintiff was not able to appear for the second petition due to an unforeseen event.*

*Article 516-17:  If, on the date scheduled for the attempt at conciliation, the defendant does not appear, the conciliation bureau shall act as stipulated in Article R. 516-20, after having used the powers provided in Article R. 516-18, if necessary.*

*If, nonetheless, the defendant has promptly provided legitimate reasons, he shall be summoned to a future hearing of the conciliation bureau by a normal letter.*

*If the defendant does not receive, due to no fault of his own, the first summons, the conciliation bureau shall decide that he shall be summoned to a future hearing either by registered letter from the secretariat with return receipt, or by bailiff's service of process, the formalities of which shall be carried out by the plaintiff.*

*Such bailiff's service of process shall take place within six months from the decision of the conciliation bureau. In the event of failure to comply with this six-month period, the conciliation bureau shall determine the petition to be null and void.*

*Article 516-18: The conciliation bureau may, notwithstanding any procedural motions and even if the defendant does not appear, order:*

-       *Issuance, failure of which shall give rise to sanctions, of work certificates, payslips and any other document that the employer is required to deliver;*
-       *When such obligation cannot be seriously disputed, the payment of advances on the employee's salaries and benefits, advances on paid vacation and dismissal notice period compensation, the contract term compensation provided in Article L. 122-3-4, the compensation provided in IV of Article L. 122-3-8, the compensation stipulated in Article L. 122-32-6 and the employment insecurity mentioned in Article L. 124-4-4; the total amount of advances awarded, which shall be calculated by the conciliation bureau, shall not exceed six months of salary calculated based on the average of the last three months of salary;*
-       *Any court investigations, even if automatic;*
-       *Any measures necessary for preserving evidence or disputed objects.*

*The conciliation bureau may order provisional payment of the sanctions it has ordered.*

*When the present article is enforced, as an exception to the provisions of the last sentence of Article R. 515-1, the conciliation bureau's hearings shall be public.*

*Article R. 516-19: Decisions handed down in application of Article R. 516-18 shall always be provisional; they shall not have res judicata effect on the main claim. They shall be self-enforcing by way of advance and, if applicable, even if on appeal. They may not be challenged. They may be appealed to the Court of Appeal or to the Supreme Court only at the same time as the decision on the merits, subject to the particular rules of an expert's investigation.*

*Article R. 516-20: When the plaintiff and the defendant are present or represented and the case is ready to be tried and the designation of one or two reporting judges [judge who prepares a report on a case for a court] or recourse to a court investigation is not necessary, the conciliation bureau shall refer the case to the judgment bureau. The Parties may then be summoned before such bureau orally after initialing the case file; in such case, a court notice stipulating the hearing date shall be provided to them by the clerk of the court.*

*When the case is ready to be heard immediately, and if the hearings schedule so allows, the conciliation bureau may, with the agreement of all the parties, have such parties appear at a hearing which the judgment bureau shall hold immediately.*

*When the defendant has not appeared and recourse to requests for information or investigative measures does not appear to be necessary beforehand, the conciliation bureau shall refer the case to the judgment bureau. The plaintiff may be summoned before such*

*bureau orally after initialing the case file; in such case, a court notice stipulating the hearing date shall be provided to him by the clerk of the court."*

### EXCERPTS FROM THE NEW CODE OF CIVIL PROCEDURE

*Legal representation and assistance before a court*

"*Article 411:  The authority to act in representation before a court of justice shall carry the power and the duty to effectuate process papers on behalf of the principal.*

*Article 412:  The function of assisting before a court of justice shall carry the power and duty to advise the party and to defend his arguments without the same binding him.*

*Article 413:  The authority to act in representation shall carry the function of assistance save where provisions or agreement to the contrary shall apply.*

*Article 414:  A party may be represented only by one person, either by an individual or legal entity, empowered by the law.*

*Article 415:  The surname of a representative and the capacity in which he acts shall have to be provided to the judge by way of a declaration to the clerk of the court.*

*Article 416:  Whoever intends to represent or assist a party shall have to show cause of his authority to act to assist.*

*An avocat* [lawyer] *or avoué* [lawyer before the Court of Appeal] *shall, notwithstanding the above, be exempted from such proof.*

*The bailiff shall benefit from the same exemption in cases where he is entitled to represent or assist the parties.*

*Article 417:  The persons empowered with an authority to act in representation before a court of justice shall be considered, with regard to the judge and the opposing party, to have received special powers to move for or indicate acceptance of withdrawing a claim, to accept an opposing party's claim, to make or accept offers, to tender admissions or agreements.*

*Article 418:  A party who intends to revoke the retainership of his representative shall have to immediately thereafter either provide for his replacement or inform the judge and the opposing party of his intention to conduct the proceedings himself, where the law so permits, failing which his opponent may continue the proceedings and seek judgment while recognizing in such continuation only the revoked representative."*

# **EXHIBIT G**

Translation from French to English of
Geraghty 101797
Acc_Rom Attestation decision
CONSEIL DE PRUD'HOMMES
27, rue Louis Blanc
75484 PARIS CEDEX 10
01.40.38.53.78
SECTION
Personnel chamber 3

SCP CABINET DEZAVELLE ET ASSOCIES
11, rue Theodule Ribot
75017 PARIS

R.G.: F 05/0148

Mrs. Rosemary O'MAHONY
Against
SAS ACCENTURE, ACCENTURE LLP
(LIMITED LIABILITY PARTNERSHIP)
ATTESTATION OF DECISION

The Chief Clerk attests that in the case in reference the following decision was rendered in court held on October 31, 2006 at 13:00:

Judgment:  Contradictory at first instance

Pronounces the judicial termination to a work contract

Condemns jointly and severally the SAS ACCENTURE and the company ACCENTURE LLP (LIMITED LIABILITY PARTNERSHIP) to pay Mrs. Rosemary O'MAHONY the following sums:

99,180 euros (ninety-nine thousand, one hundred and eighty euros) in compensation for back payment of salary from December 1, 2004 to May 31, 2006.

9,918 euros (nine thousand nine hundred and eighteen euros) in compensatory indemnity appertaining to paid leave.

61,000 euros (sixty-one thousand euros) in compensatory indemnity in lieu of notice

481,562 euros (four hundred, eighty-one thousand, five hundred and sixty-two euros) in compensation for loss of employment

Orders the delivery/filing of company documents in accordance with this decision

310,000 euros (three hundred, ten thousand euros) in compensation for loss of employment without real or serious cause

550 euros (five hundred euros) according to Article 700 of the New Code of Civil Procedure

Dismisses rest of Mrs. Rosemary O'MAHONY's claims.

Condemns Mrs. Rosemary O'MAHONY to reimburse the salary contributions to SAS ACCENTUR, NAMELY THE SUM OF : 162,908.33 euros (one hundred, sixty-two thousand, nine hundred and eight euros and thirty-three centimes)

Dismisses rest of SAS ACCENTURE's counterclaim.

This attestation is delivered upon the request of the interested party on a strictly informative basis, and constitutes neither an execution copy of the original judgment, nor a writ of execution.

Issued in Paris, November 6, 2006

STAMP OF CONSEIL DE PRUD'HOMMES
                 DE PARIS

CONSEIL DE PRUD'HOMMES
DE PARIS
27, rue Louis Blanc
75484 PARIS CEDEX 10
01.40.38.53.78


Liberté • Egalité • Fraternité
RÉPUBLIQUE FRANÇAISE

SECTION
Encadrement chambre 3

la SCP CABINET DEZAVELLE ET ASSOCIES
11, rue Théodule Ribot
75017 PARIS

R.G. : F 05/01048

**Mme Rosemary O'MAHONY**
contre
SAS ACCENTURE, ACCENTURE LLP
(LIMITED LIABILITY PARTNERSHIP)

## ATTESTATION DE DÉCISION

Le Greffier en chef atteste que dans l'affaire en référence la décision suivante a été rendue à l'audience tenue le 31 Octobre 2006 à 13 H 00 :

Jugement : Contradictoire en premier ressort

Prononce la résiliation judiciaire du contrat de travail

Condamne solidairement la SAS ACCENTURE et la société ACCENTURE LLP (LIMITED LIABILITY PARTNERSHIP) à verser à Madame Rosemary O'MAHONY les sommes suivantes :

99 180 € (quatre vingt dix neuf mille cent quatre vingt euros) au titre de rappel de salaire du 1er décembre 2004 au 31 mai 2006

9 918 € (neuf mille neuf cent dix huit euros) au titre de l'indemnité compensatrice de congés payés afférents

61 000 € (soixante et un mille euros) au titre de l'indemnité compensatrice de préavis

481 562 € ( quatre cent quatre vingt un mille cinq cent soixante deux euros) à titre d'indemnité de licenciement

Ordonne la remise de documents sociaux conformes à la présente décision

310 000 € (trois cent dix mille euros) à titre d'indemnité pour licenciement sans cause réelle ni sérieuse

550 € (cinq cents cinquante euros) au titre de l'article 700 du Nouveau Code de Procédure Civile

Déboute Madame Rosemary O'MAHONY du surplus de ses demandes

Condamne Madame Rosemary O'MAHONY à rembourser les cotisations salariales à la SAS ACCENTUR , soit la somme de :
162 908,33 € (cent soixante deux mille neuf cent huit euros trente trois centimes)

Déboute la SAS ACCENTURE du surplus de sa demande reconventionnelle

La présente attestation est délivrée à la demande de l'intéressé à titre strictement informatif, et ne constitue pas une expédition conforme à la minute, ni un titre exécutoire

Fait à Paris, le 06 Novembre 2006



## CERTIFICATE OF TRANSLATION

The enclosed document, [ Geraghty 101707 ], has been translated from <u>FRENCH to ENGLISH</u> by <u>BARBARA COLLIGNON</u> a professional freelance translator with Cross-Cultural Interpreting Services. <u>BARBARA COLLIGNON</u> is fluent and competent in both the <u>FRENCH and ENGLISH</u> languages, and has accurately translated this document from <u>FRENCH to ENGLISH</u> to the best of her abilities.

Date: _November 1, 2007_                    Signed: _____

<u>Helder Weil – Manager of Translation Services</u>

<u>Heartland's Cross-Cultural Interpreting Services</u>

<u>4753 North Broadway, Suite 400</u>

<u>Chicago, Illinois 60640</u>

Signed before me this _1st_ day of _November_, 20_07_.

_S. Siu_

OFFICIAL SEAL
S SILVERN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/09/09