UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| ROSEMARY O'MAHONY, | : | E-FILED |
| Plaintiff, | : | 07-CIV- 7916 (VM) |
| - against - | : | |
| | : | |
| ACCENTURE LTD. and ACCENTURE LLP., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Dated: New York, New York
      November 2, 2007


*Of Counsel*:

      Anthony J. Rao (AR-8482)




                             SEYFARTH SHAW LLP
                             620 Eighth Avenue
                           New York, New York 10018
                               (212) 218-5500
                             Attorneys for Defendants
                           Accenture Ltd and Accenture LLP

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

SUMMARY OF FACTS AS PLED BY PLAINTIFF............................................................... 1

    A.    Allegations of Failure to Pay "Cotisations"............................................................ 2

    B.    Allegations of Retaliation ..................................................................................... 2

PROCEDURAL BACKGROUND........................................................................................... 3

ARGUMENT ............................................................................................................................. 5

    A.    Standard Of Law ................................................................................................... 5

    B.    Plaintiff's Claims Should Be Dismissed Because Section 806 of the
Sarbanes-Oxley Act Does Not Apply Extraterritorially ........................................ 5

    C.    Plaintiff's Claims Should Be Dismissed Because Plaintiff's
Complaints Regarding Defendants' Alleged Failure to Pay French Social
Security Taxes Are Not Cognizable Under Section 806 ..................................... 11

CONCLUSION........................................................................................................................ 13

# TABLE OF AUTHORITIES

Pages

## CASES

*Ahluwalia v. ABB, Inc., ABB Transmission & Distribution, Ltd,*
    2007-SOX-44, 2007 DOLSOX LEXIS 69 (ALJ Sep. 24, 2007)........................................6

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...............................................................................................5

*Beck v. Citigroup, Inc.*,
    2006-SOX-00003, 2006 DOLSOX LEXIS 90 (ALJ Aug. 1, 2006)...................................6

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)......................................................................................................5

*Barnhart v. Sigmon Coal, Co.*, Inc.,
    534 U.S. 438 (2002)..........................................................................................................7

*Benz* v. *Compania Naviera Hidalgo, S.A.*,
    353 U.S. 138 (1957)..........................................................................................................7

*Carnero v. Boston Scientific Corp.*,
    433 F.3d 1 (1st Cir. 2006)......................................................................................6, 7, 8, 9

*Carnero v. Boston Scientific Corp.*,
    No. 04-10031-RWZ, 2004 U.S. Dist. LEXIS 17205 (D. Mass. Aug 27, 2004) ..................5

*Concone v. Capital One Fin. Corp.*,
    2005 SOX-00006, 2004 DOLSOX LEXIS 97 (ALJ Dec. 3, 2004)................................6, 9

*Di Giammarino v. Barclays Capital, Inc.*,
    2005-SOX-00106, 2006 DOLSOX LEXIS 79 (ALJ July 7, 2006) ....................................6

*Diorinou v. Mezitis*,
   237 F.3d 133, (2d Cir. 2001)..................................................................................9

*Ede v. Swatch Group*,
   ARB CASE NO. 05-053, ALJ CASE NOS. 04-SOX-68, 04-SOX-69,
   2007 DOLSOX LEXIS 51 (ALJ June 27, 2007) ...........................................6, 10

*Foley Bros., Inc. v. Filardo*,
   336 U.S. 281 (1949)..................................................................................8

*Fraser v. Fiduciary Trust Co., Int'l*,
   417 F. Supp. 2d 310 (S.D.N.Y. 2006)..................................................................11

*Fredrickson v. The Home Depot U.S.A., Inc.*,
   2007-SOX-13, 2007 DOLSOX LEXIS 53 (ALJ July 10, 2007) .......................................12

*Gebhardt v. Allspect, Inc,*
   96 F. Supp. 2d 331 (S.D.N.Y. 2000)..................................................................5

*Harvey v. Safeway*,
   No. 2004 SOX 21, 2005 DOL SOX LEXIS 4 (ALJ Feb. 11, 2005)..................................12

*Livington v. Wyeth Pharms, Inc.*,
   1:03CV00919, 2006 U.S. Dist. LEXIS 52978 (M.D.N.C. July 28, 2006) .......................11

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007)..................................................................5

*McCulloch v. Sociedad Nacional de Marineras de Honduras*,
   372 U.S. 10 (1963)..................................................................8

*Neuschafer v. Parexel Int'l, LLC*,
   2007 SOX 39 and 2007 SOX 42, 2007 DOLSOX LEXIS 63 (ALJ Aug. 31, 2007).........12

*Ofori-Tenkorang v. Am. Int'l Group, Inc.*,
   460 F.3d 296 (2d Cir. 2006)..................................................................7, 8, 10

*Portes v. Wyeth Pharms, Inc.*,
    06 Civ. 2689 (WHP), 2007 U.S. Dist. LEXIS 60824 (S.D.N.Y. Aug. 20, 2007)..............11

*Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*,
    350 F. Supp. 2d 369 (S.D.N.Y. 2004)................................................................................10

*Russello v. United States*,
    464 U.S. 16\ (1983)...............................................................................................................7

## STATUTES

15 U.S.C. §1513(e) (2005)........................................................................................................7

18 U.S.C. §1513(d) (2005) .......................................................................................................7

18 U.S.C. §1514 (a)(1)............................................................................................................11

## FEDERAL CONGRESSIONAL REPORT

S. Rep. No. 98-467, at 27-28 (1984)..........................................................................................8

## **INTRODUCTION**

Defendants, Accenture Ltd and Accenture LLP ("Defendants"), by and through their attorneys, SEYFARTH SHAW LLP, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submit the following Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint. Accenture LLP is a management consulting, technology services and outsourcing company. Accenture LLP is an Illinois Limited Liability Partnership and its ultimate parent company is Accenture Ltd, a Bermuda holding company listed on the New York Stock Exchange. Plaintiff is a former employee of Accenture LLP and Accenture's French subsidiary, Accenture SAS.

## **SUMMARY OF FACTS AS PLED BY PLAINTIFF**

Plaintiff was a partner and employee of Accenture LLP and its predecessor, Andersen Consulting, from 1984 until August 31, 2005. (Compl. p. 8). In 1992, Plaintiff moved to France as an expatriate secondment, where she was responsible for setting up and heading a new Accenture office in Sophia Antipolis. (Compl. p. 9). Although Plaintiff's assignment initially involved working only part time in France, in 1993 her expatriate assignment became full time. (Compl. p. 9). In 1996, Plaintiff was transferred to Paris to lead the Technology Competency group for the West Europe Region. (Compl. p. 10). Thereafter, in 2000 Plaintiff assumed global responsibility for the Technology Competency division in the Resources Industry Group. (Compl. p. 10). During this time, Plaintiff remained employed in France. Plaintiff transferred to Accenture's French subsidiary, Accenture SAS, in September of 2004 and was paid as a French employee of Accenture SAS. (*See* Compl. p. 12). Plaintiff remained an employee of Accenture SAS until October 31, 2006. (Compl. p. 12).

A.    **Allegations of Failure to Pay "Cotisations"**

Plaintiff alleges in her Complaint that at some point more than five (5) years after she began working in France, Accenture had an obligation to pay the French government social security taxes (referred to in France as "cotisations"). (Compl. pp. 14, 16). Plaintiff further alleges that as early as October 2001, she discussed cotisation payments with Steven Brown, an associate partner in the corporate finance group in New York, and Carine De Bontridder, manager of the same group. (Compl. p. 22). On or about November 2001, Plaintiff alleges she demanded that Accenture pay her cotisations to the French authorities. (Compl. p. 23). Plaintiff also claims that several Accenture senior level executives admitted the company was violating French law by evading the payments. (Compl. p. 24). Plaintiff alleges she had conversations on February 28, 2004 and June 10, 2004 with Pamela Craig, Accenture's Global Financial Controller in New York, wherein she informed Ms. Craig that Accenture was legally obligated to pay cotisations under French law but Accenture refused to make the payments. (Compl. p. 25).

Plaintiff alleges on July 28, 2004, Ms. Craig informed her that she and Michael McGrath, Accenture's Global Risk Officer in the United States, would make the final decision as to whether Accenture would pay the cotisations. (Compl. p. 26). Subsequently, during August and September 2004, Plaintiff allegedly had several conversations with Ms. Craig, whom she claims admitted that James Shachoy, Accenture's global tax partner based in California, determined Accenture would not make any of the cotisations to the French government. (Compl. pp. 27-28).

B.    **Allegations of Retaliation**

Plaintiff claims Defendants retaliated against her for complaining about the payment of cotisations. (Compl. p. 37). Specifically, Plaintiffs alleges that on November 19, 2004, she was informed by Accenture that her level of responsibility was being reduced from B1 to A3 effective December 1, 2004. (Compl. p. 31). Plaintiff alleges that as a result of the reduction in

her level of responsibility, her compensation for the period of December 1, 2004 through October 31, 2006 was decreased by approximately $670,000.00. (Compl. p. 34). According to Plaintiff, the decision to reduce her level of responsibility was made by Tom Pike, the global business operations director, who is based in New York. (Compl. p. 35). Plaintiff alleges although she and Pike never had any direct contact, Pike had numerous discussions with Pamela Craig during the summer of 2004 regarding Plaintiff's complaints about the payment of French cotisations. (Compl. p. 36). Plaintiff did not identify the individual who decreased her salary. (*See* Compl. p. 34).

## PROCEDURAL BACKGROUND

On March 24, 2005, Plaintiff filed a complaint with the United States Department of Labor's Occupational Safety & Health Administration ("OSHA") against Accenture Ltd and its subsidiaries.[1] ( Defendants' accompanying Request for Judicial Notice ("RJN") at ¶ 1 & Ex. A.) In her complaint, Plaintiff alleged that Accenture retaliated against her because of her investigation of and objection to a "fraudulent scheme to evade the payment of social security contributions that were due in France for United States employees on secondment to that country" in violation of the whistleblower provisions of Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. §1514A. *Id*. Plaintiff alleged Defendants' conduct constituted a violation of law including the United States mail and wire fraud statutes. *Id.*

On March 25, 2005, OSHA's Whistleblower Program Manager, Sherrill F. Benjamin, issued a Final Investigation Report. (RJN ¶ 2 & Ex. B.) In that report, Ms. Benjamin indicated that OSHA did not have jurisdiction over Plaintiff's whistleblower complaint because she "is not

---

[1] Defendants respectfully request the Court take judicial notice of OSHA's official records and documents attached to the Request for Judicial Notice ("RJN") filed herewith.

an employee within the meaning of SOX. The Complainant . . . lives in France where all aspects of the allegations and prima facie elements of the Complaint occurred." *Id.* On May 9, 2005, OSHA's Regional Administrator, Michael G. Connors, issued the Secretary's Findings concluding that "Ms. Mahoney's [sic] employment and each of the alleged elements of her complaint occurred in France. As Section 806 of SOX does not apply extraterritorially, your complaint is hereby dismissed." (RJN ¶ 3 & Ex. C.). On June 10, 2005, Plaintiff filed an objection and requested a hearing.

A hearing was scheduled on June 30, 2005 in New York. Because of the short notice and because Defendants intended to file a motion for summary decision, the parties filed a joint motion for a continuance of the hearing date. A pre-hearing telephone conference was held wherein the Administrative Law Judge ("ALJ"), Paul Teitler, requested that the parties submit briefs on the issue of whether Section 806 of the Sarbanes-Oxley Act applied to Plaintiff. On January 20, 2006, the ALJ issued an order of dismissal because "as a matter of statutory construction, the whistleblower provision of the Act applies only to employees who work within the United States." (RJN ¶ 4 & Ex. D.) On January 26, 2006, Plaintiff filed a notice of appeal. On March 17, 2006, she submitted her brief in support to the Administrative Review Board ("ARB"). On April 17, 2006, Defendants submitted their Reply Brief in Opposition of Appeal. The ARB, however, failed to issue a determination within 180 days, and pursuant to 18 U.S.C. §1514A and 29 C.F.R. §1980.114 and Plaintiff's request, the ARB dismissed the appeal, indicating that Plaintiff "may bring an action at law or equity in the appropriate United States District Court, which will have jurisdiction over the action without regard to the amount in controversy."[2] (RJN ¶ 5 & Ex. E.)

---

[2] OSHA's final rules state: "If the Secretary has not issued a final decision within 180 days of the

**ARGUMENT**

A.   **Standard Of Law**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  Dismissal is warranted "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  To survive dismissal, the plaintiff must provide the grounds upon which his or her claim rests through "[f]actual allegations sufficient to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  In order to avoid dismissal, a plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Gebhardt v. Allspect, Inc,* 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000).

B.   **Plaintiff's Claims Should Be Dismissed Because Section 806 of the Sarbanes-Oxley Act Does Not Apply Extraterritorially**

The one Federal court decision that addresses the issue of the extraterritorial application of Section 806, as well as all administrative decisions directly on point, hold that Section 806 does not and was not intended to apply to persons employed outside of the United States.  *See Carnero v. Boston Scientific Corp.*, No. 04-10031-RWZ, 2004 U.S. Dist. LEXIS 17205, at *5 (D. Mass. Aug 27, 2004), *aff'd*, 433 F.3d 1 (1st Cir. 2006), *cert. denied*, 126 S. Ct. 2973 (2006) (concluding that Congress did not intend for Section 806 to apply to employees of covered

---

filing of the complaint and there is no showing that there has been delay due to the bad faith of the claimant, the claimant may bring an action at law or equity *for de novo review* in the appropriate district court of the United States, which will have jurisdiction over such action without regard to the amount in controversy. *(emphasis added).*
(http://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=FEDERAL_REGISTER&p_id=18223).

companies working outside of the United States) (Copy Attached at Tab A); *Ahluwalia v. ABB, Inc., ABB Transmission & Distribution, Ltd,* 2007-SOX-44, 2007 DOLSOX LEXIS 69 (ALJ Sep. 24, 2007) (employee not protected by the Act because his employment occurred exclusively outside of the United States) (Copy Attached at Tab B); *Beck v. Citigroup, Inc.*, 2006-SOX-00003, 2006 DOLSOX LEXIS 90 (ALJ Aug. 1, 2006) (foreign national employed by a German division of Citigroup not entitled to the protections of Section 806) (Copy Attached at Tab C); *Di Giammarino v. Barclays Capital, Inc*., 2005-SOX-00106, 2006 DOLSOX LEXIS 79 (ALJ July 7, 2006) (United States citizen who worked exclusively in the United Kingdom for a division of Respondent based in the United Kingdom not entitled to the whistleblower protections of Section 806) (Copy Attached at Tab D); *Concone v. Capital One Fin. Corp*., 2005 SOX-00006, 2004 DOLSOX LEXIS 97 (ALJ Dec. 3, 2004) (absent any evidence of contrary intent, laws of the United States are meant to apply only within the United States, and therefore, a foreign national whose employment was outside of the United States was not a covered employee under the Act) (Copy Attached at Tab E); *Ede v. Swatch Group*, ARB CASE NO. 05-053, ALJ CASE NOS. 04-SOX-68, 04-SOX-69, 2007 DOLSOX LEXIS 51 (ALJ June 27, 2007) (whistleblower provisions did not apply to employees who worked exclusively overseas and were subjected to adverse actions overseas) (Copy Attached at Tab F).

   Traditional canons of statutory interpretation confirm Congress's intent to preclude extraterritorial application of SOX's whistleblower protections. Indeed, not only is Section 806 silent as to any intent to apply it abroad, but "the statute's legislative history indicates that Congress gave no consideration to either the possibility or the problems of overseas application." *Carnero v. Boston Scientific Corp*., 433 F.3d 1, 8 (1st Cir. 2006). It has long been recognized that, absent a showing of contrary intent, legislation of Congress is meant only to apply within

the territorial jurisdiction of the United States. *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006); *Carnero*, 433 F.3d at 7. This presumption can only be overcome if there is an "affirmative intention of the Congress clearly expressed." *Id*. (quoting Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 147 (1957)). As there is no such intention expressed in Section 806, Plaintiff cannot defeat the insurmountable hurdle of the presumption against its application abroad. *See Carnero*, 433 F.3d at 7.

Congress's silence as to the extraterritorial application of Section 806 is even more telling when viewed in light of other SOX provisions that expressly provide for extraterritorial enforcement. For example, Section 1107 of the Act which provides for criminal penalties for retaliating against a person who provides truthful information to a law enforcement officer, explicitly states that "[t]here is *extraterritorial Federal jurisdiction over an offense under this section*." 18 U.S.C. §1513(d) (2005) (emphasis added). This explicit mandate for extraterritorial jurisdiction is in sharp contrast with the silence of Section 806. Additionally, Section 106 of the Act subjects to the jurisdiction of the United States any "foreign public accounting firm" that prepares an audit report for any "issuer." *See* 15 U.S.C. §1513(e) (2005). It is well established that "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal, Co*., Inc., 534 U.S. 438, 452 (2002) (*citing Russello v. United States*, 464 U.S. 16, 23 (1983)). By including these provisions, "Congress demonstrated that it was well able to call for extraterritorial application when it so desired." *Carnero*, 433 F.3d at 8.

Moreover, the fact that Section 806 is essentially a labor regulation (regulating the employment relationship) strengthens the presumption that Congress did not intend for Section

7

806 to be applied overseas. Indeed, courts have consistently held that the laws of the United States regulating employment relationships generally do not apply to employees working abroad absent clear congressional intent to the contrary. *See Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 286 (1949) (holding that Eight Hour law does not apply abroad because "[an] intention to regulate labor conditions which are the primary concern of a foreign country should not be attributed to Congress in the absence of clearly expressed purpose"); *McCulloch v. Sociedad Nacional de Marineras de Honduras*, 372 U.S. 10 (1963) (National Labor Relations Board had no jurisdiction over election on foreign vessel owned by subsidiary of United States corporation with foreign crew); *Ofori-Tenkorang*, 460 F.3d at 298 (dismissing employee's Section 1981 claim because alleged racial discrimination occurred while he was living and working in South Africa).

  Finally, in the whistleblower provision of SOX, Congress did not address in any fashion the potential conflicts arising between U.S. and foreign laws should the DOL decide to regulate employment relations abroad. This point is particularly telling because in enacting laws that affect employment relationships overseas, "members of Congress have [long] recognized the well-established principle of sovereignty…that no nation has the right to impose its labor standards on another country." *See Carnero*, 433 F.3d at 15; *see also* S. Rep. No. 98-467, at 27-28 (1984), reprinted in 1984 U.S.C.C.A.N. 2974, 3000-01 (limiting age discrimination law's extraterritorial reach to U.S. citizens employed by U.S. corporations or their subsidiaries in countries that do not have inconsistent laws). As stated by the Court in *Carnero*, "if Congress had intended that [Section 806] would apply abroad to foreign entities, it would have said so, and certainly would have considered, before enacting the law, the problems and limits of extraterritorial enforcement." *Carnero*, 433 F.3d at 15. Congress did not discuss the interest

other countries would have in regulating the application of Section 806, nor did it include in Section 806 "any mechanism for resolving potential conflicts with foreign labor laws and procedures." *See id*. "Congress's complete silence suggests that it had no thought or intention to apply [Section 806] to foreign employees and entities." *Id*.

Here, in addition to filing her initial complaint before the Department of Labor, Plaintiff also pursued a claim regarding the payment of cotisations and for wage loss in the Consiel de Prud' Hommes (employment tribunal) in Paris. *See Convocation LR-AR Devant le Bureau Conciliation (stamped received March 1, 2005,* (Attached at RJN ¶ 6 & Ex. F.). That tribunal has since rendered a judgment dismissing Plaintiff's claims against Accenture SAS and Accenture LLP for cotisations between 2002 and 2004, but awarding Plaintiff lost wages from December 2004, when her pay was reduced, until October 2006. (Attached at RJN ¶ 7 & Ex. G.) The Tribunal also provided her the minimum amount of statutory damages (six months pay) and not the 18 months she sought. *Id.*

There is not simply a theoretical conflict between French and U.S. law with respect to Plaintiff's employment, which in and of itself militates against extraterritorial application of Section 806. *See Concone*, 2004 DOLSOX LEXIS 97, at *12 ("the requested remedy could conflict with the laws of England and Italy"). Rather, to the extent Plaintiff seeks lost wages and "other" damages (*see* Complaint ¶ 41) already awarded (or rejected) in France, she asks this Court to render a decision *inconsistent* with or *duplicative* of the award of the French Tribunal.[3] *See Diorinou v. Mezitis*, 237 F.3d 133, 142 (2d Cir. 2001) (American courts will normally accord

---

[3] The French Tribunal's award confirms, and renders official, the termination of Plaintiff's employment. Plaintiff has not appealed any portion of this decision. Thus, to the extent Plaintiff seeks reinstatement in this matter, she again asks this Court to rule contrary to the French Tribunal.

9

considerable deference to foreign adjudications as a matter of comity); *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F. Supp. 2d 369, 373 (S.D.N.Y. 2004) ("[t]he courts of [the Second Circuit] have been particularly consistent in practicing comity toward foreign judgments and proceedings").

Plaintiff is a foreign national who has lived and worked outside of the United States since 1993. As of September of 2004, Plaintiff was employed by the French Accenture subsidiary, Accenture SAS. It is undisputed that all of Plaintiff's allegations against Defendants arose while Plaintiff was employed in France. A foreign national who works exclusively overseas and is subjected to alleged adverse employment actions overseas simply does not fall within the purview of the whistleblower protections contained in Section 806. *See Ede*, 2004 SOX 068. Furthermore, although Plaintiff alleges that the decision to reduce her level of responsibility was made by Accenture's global business operations director who was located in New York, the Second Circuit has explicitly held that "an individual whose primary workstation is abroad cannot characterize otherwise extraterritorial employment as domestic solely because employment decisions were made…in the United States." *See Ofori-Tenkorang*, 460 F.3d at 304. Accordingly, Plaintiff's claim must fail, as Congress did not intend for Section 806 to apply extraterritorially.

C.  **Plaintiff's Claims Should Be Dismissed Because Plaintiff's Complaints Regarding Defendants' Alleged Failure to Pay French Social Security Taxes Are Not Cognizable Under Section 806**

Section 806 prohibits employers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 from discharging or otherwise discriminating against any employee with respect to terms and conditions of employment because the employee provided information to the employer or the federal government relating to alleged violations of mail fraud, wire fraud, bank fraud, securities fraud, or any other provision of Federal law relating to fraud against shareholders.  18 U.S.C. §1514A(a)(1); *Fraser v. Fiduciary Trust Co., Int'l*, 417 F. Supp. 2d 310, 321-322 (S.D.N.Y. 2006).

Employee disclosures are protected only when they "implicate the substantive law protected in Sarbanes-Oxley 'definitively and specifically'."  *Fraser*, 417 F.Supp. at 322. Furthermore, "Where a communication is 'barren of any allegations of conduct that would alert [a defendant] that [the plaintiff] believed the company was violating any federal rule or law related to fraud against shareholders,' the reporting is not protected " *Portes v. Wyeth Pharms, Inc.*, 06 Civ. 2689 (WHP), 2007 U.S. Dist. LEXIS 60824 *10 (S.D.N.Y. Aug. 20, 2007) (disclosure regarding pharmacy's alleged lack of compliance with FDA standards not protected because disclosure did not suggest a concern that Defendant was being unfair to its investors)(plaintiff's memorandum to Human Resources not protected because it did not contain any allegations of fraud against shareholders, Id. at *14) (Copy Attached at Tab G); *Livington v. Wyeth Pharms, Inc.*, 1:03CV00919, 2006 U.S. Dist. LEXIS 52978 *30-31 (M.D.N.C. July 28, 2006) (employee's complaints regarding Company's training deficiencies were not protected activity under Section 806 because "to be protected under Sarbanes-Oxley, an employee's disclosures must be related to illegal activity that, at its core, involves shareholder fraud") (Copy

11

Attached at Tab H); *Neuschafer v. Parexel Int'l, LLC*, 2007 SOX 39 and 2007 SOX 42, 2007 DOLSOX LEXIS 63 (ALJ Aug. 31, 2007) (the reporting of violations by other employees of certain clinical drug testing protocols is not protected by Section 806 because "'fraud' is an integral element of a cause of action under §806 and incorporates a requisite accusation of intentional deceit that under SOX would pertain to a matter that is material to or *that would impact shareholders or investors*") (emphasis added) (Copy Attached at Tab I); *Fredrickson v. The Home Depot U.S.A., Inc.*, 2007-SOX-13, 2007 DOLSOX LEXIS 53 (ALJ July 10, 2007) ("Sarbanes-Oxley was enacted for the purpose of eliminating perpetration of fraud against shareholders as evidenced by the plain language of the Act as a whole.") (Copy Attached at Tab J.) Therefore, complaints by employees that do not relate to fraud against shareholders are not cognizable under Section 806.

Plaintiff's allegation that Defendants intentionally failed to pay cotisations is not covered by Section 806, as Defendants' alleged violation did not involve intentional deceit or fraud against shareholders. Furthermore, even assuming that Defendants violated the law with respect to non-payment of cotisations, an allegation that Defendants deny, such failure would be a violation of French law, as the United States does not regulate tax payments to the French government. It belies logic that that a violation of French tax requirements for one employee of a corporation that employs more than one hundred thousand employees rises to the level of "fraud against shareholders." *See Harvey v. Safeway*, No. 2004 SOX 21, 2005 DOL SOX LEXIS 4, at *80-81 (ALJ Feb. 11, 2005) (allegation of wage underpayment did not constitute fraud under Section 806 because it failed to reach requisite level of materiality as any impact on financial reporting would be microscopic) (Copy Attached at Tab K). Accordingly, Plaintiff's Complaint should be dismissed for failure to state a claim under Section 806.

## **CONCLUSION**

For the foregoing reasons, Defendants Accenture Ltd. and Accenture LLP. respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: New York, New York
November 2, 2007

                                              Respectfully submitted,

                                              SEYFARTH SHAW LLP

                                              By:    <u>s/ Anthony J. Rao</u>
                                                           Anthony J. Rao (AR-8482)
                                              620 Eighth Avenue
                                              New York, New York 10018
                                              (212) 218-5500

                                                 David Rowland, *admitted Pro Hac Vice*
                                                 Miriam Geraghty, *admitted Pro Hac Vice*
                                              131 South Dearborn Street, Suite 2400
                                              Chicago, IL 60603
                                              (312) 460-5965

                                              Attorneys for Defendants Accenture Ltd and Accenture LLP