# TAB A

LEXSEE 2004 U.S. DIST. LEXIS 17205

**RUBEN CARNERO v. BOSTON SCIENTIFIC CORP.**

**CIVIL ACTION NO. 04-10031-RWZ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

*2004 U.S. Dist. LEXIS 17205; Fed. Sec. L. Rep. (CCH) P92,910*

**August 27, 2004, Decided**

**SUBSEQUENT HISTORY:** Affirmed by *Carnero v. Boston Sci. Corp., 2006 U.S. App. LEXIS 135 (1st Cir. Mass., Jan. 5, 2006)*

**DISPOSITION:**     [*1] Defendant's motion to dismiss allowed; judgment entered for Defendant.

**COUNSEL:** For Ruben Carnero, Plaintiff: Michael Lushan, LEAD ATTORNEY, Lushan, McCarthy & Goonan, Brookline, MA.

For Boston Scientific Corporation, Defendant: James W. Nagle, Leslie S. Blickenstaff, LEAD ATTORNEYS, Goodwin Procter, LLP, Boston, MA.

**JUDGES:** RYA W. ZOBEL, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RYA W. ZOBEL

**OPINION**

*MEMORANDUM OF DECISION*

ZOBEL, D.J.,

Plaintiff Ruben Carnero is an Argentinean citizen who worked for the Argentinean and Brazilian subsidiaries of defendant Boston Scientific Corporation, until he was terminated in 2002 allegedly after he reported accounting irregularities. Consequently, plaintiff initiated three actions: (1) a conciliation proceeding in Argentina seeking statutory severance; (2) an eight count Complaint against defendant, which this Court dismissed for lack of jurisdiction; and (3) an administrative

complaint against defendant with the Department of Labor. The administrative complaint alleges retaliatory termination and other discrimination by defendant's Argentinean and Brazilian subsidiaries in violation of *18 U.S.C. § 1514A*, which was enacted [*2] as part of the Corporate and Criminal Fraud Accountability Act of 2002, and incorporated as Title VIII of the *Sarbanes-Oxley Act of 2002*. On December 19, 2003, the Secretary of Labor, acting through her agent, the Regional Administrator for the Occupational Safety and Health Administration ("OSHA"), preliminarily determined that OSHA has no jurisdiction to consider the merits of plaintiff's claim because nothing in the language of *Section 1514A* indicates any intention by Congress to cover employees working outside of the United States. (Pl.'s Decl. in Opp'n to Mot. to Dismiss, Tab 30). On January 7, 2004, plaintiff filed a Complaint in this Court seeking a de novo review of his administrative complaint and relief in the form of: reinstatement to his job, back pay, damages for loss of reputation, lost future wages, emotional distress and other economic injury. [1] Thereafter, on January 22, 2004, the Secretary issued a final decision dismissing the administrative complaint because of the pendency of the complaint in this Court. (Pl.'s Decl. in Opp'n to Mot. to Dismiss, Tab 31). Defendant Boston Scientific Corporation now moves to dismiss, or in the alternative, for summary judgment or [*3] stay.

> 1   Because the Secretary of Labor did not issue a final decision within 180 days of the filing of the administrative complaint, plaintiff filed suit in this Court pursuant to *18 U.S.C. § 1514A(b)(1)(B)*.

Defendant asserts that *Section 1514A* does not apply to plaintiff, a foreign national who worked exclusively

2004 U.S. Dist. LEXIS 17205, *3; Fed. Sec. L. Rep. (CCH) P92,910

overseas. It is well established that Congressional legislation is meant to apply within the United States, absent any evidence of contrary intent. *Smith v. United States, 507 U.S. 197, 204, 122 L. Ed. 2d 548, 113 S. Ct. 1178 (1993)*. This principle is based on a number of reasons, including "the commonsense notion that Congress generally legislates with domestic concerns in mind." *Id.* at n. 5. Thus, the language of the law is examined to determine whether there is "any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or some measure of legislative control." *Foley Bros. v. Filardo, 336 U.S. 281, 285, 93 L. Ed. 680, 69 S. Ct. 575 (1949)*. [*4] The scheme of the law is also considered as well as whether any distinction is drawn between alien employees and those who are citizens of the United States. *Id.* at 286. *See, e.g., 29 U.S.C. § 623(f)(1)*(stating that it is not unlawful for an employer to take action which is prohibited under the *Age Discrimination in Employment Act of 1967*, where the employee is in a foreign country and compliance with the statute would violate foreign law.). The absence of such distinction suggests that the law is to be applied only within the United States. *Foley Bros., 336 U.S. at 286*. Finally, the legislative history and the administrative interpretations of the law as it was developed may be taken into account. *Id. at 287-288*.

Title *18 U.S.C. § 1514A(a)* provides that no company subject to the *Securities Exchange Act of 1934* may retaliate against an "employee" who lawfully cooperates with an investigation concerning violations of the Act or fraud on the shareholders. *Section 1514A(b)*, the enforcement provision, allows any "person" who alleges discharge or discrimination in violation of *Section 1514A(a)* [*5] to seek relief.

Nothing in *Section 1514A(a)* remotely suggests that

Congress intended it to apply outside of the United States. No distinction is drawn between overseas employees and domestic employees. In fact, application of *Section 1514A* overseas may conflict with foreign laws, which is especially likely in this case where plaintiff seeks to be reinstated to his job. Notably, he has already invoked Argentinean law in support of his cause. He misunderstands the canon of construction when he asserts that neither the language nor the legislative history restricts the application of *Section 1514A* to domestic employees.

The protection of workers is a particularly local matter, and nothing in the legislative history supports plaintiff's assertion that the language of *Section 1514A* protecting an "employee" was meant to include all employees wherever they may work.

Finally, the parties do not point to any administrative interpretations of the law during its development phase. In any case, the preliminary determination by the Department of Labor coincides with this Court's reasoning.

Accordingly, defendant's motion to dismiss is allowed.

Judgment may be entered for the defendant.

[*6] *8/27/04*

DATE

/s/

RYA W. ZOBEL

UNITED STATES DISTRICT JUDGE

# TAB B

LEXSEE 2007 DOLSOX LEXIS 69

In The Matter of: SURESH AHLUWALIA Complainant v. ABB, INC. ABB
TRANSMISSION & DISTRIBUTION, LTD. Respondents

CASE NO.: 2007-SOX-44

U.S. Department of Labor
Office of Administrative Law Judges

*2007 DOLSOX LEXIS 69*

September 24, 2007

[*1]

DECISION AND ORDER GRANTING MOTION TO DISMISS

By THOMAS M. BURKE, Administrative Law Judge

**OPINION:**

Respondents, ABB, Inc. and ABB Transmission & Distribution, Ltd. ("ABB T&D, Ltd."), move that the complaint filed by Complainant, Suresh Ahluwalia, under the whistleblower protection provisions at Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act, codified at *18 U.S.C. § 1514A* ("SOX" or "the Act") be dismissed for lack of subject matter jurisdiction. Complainant asserts that his employment was terminated because he engaged in activities protected by the Act.

Respondents argue that the complaint should be dismissed because the Act does not have extraterritorial application and Complainant is a non-citizen who worked for ABB T&D, Ltd., a foreign company, and all relevant conduct occurred outside the United States. Respondents also contend that ABB, Inc. and ABB, Ltd. should be dismissed as not properly named.

**Procedural Background**

Complainant commenced this action by a complaint filed before the U. S. Department of Labor Occupational Safety and Health Administration ("OSHA") on February 15, [*2] 2007. The complaint named ABB T&D, Ltd. and ABB, Ltd. as Respondents, and asserted that "Respondents relieved [Complainant] of duties." OSHA dismissed the claim against Respondent ABB T&D, Ltd. because ABB T&D, Ltd. is a United Arab Emirates ("UAE") corporation that only does business in Abu Dhabi, and is not a company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and is not required to file reports under Section 15(d) of the Securities Exchange Act of 1934. OSHA also dismissed the complaint against Respondent ABB, Ltd. because OSHA found the evidence showed that no one employed by Respondent ABB, Ltd. was involved in the hire, performance or termination of Complainant, and that Respondent ABB, Ltd. was not involved in the daily operation or decision-making of Respondent ABB T&D, Ltd.

Moreover OSHA found that it lacked jurisdiction to investigate the complaint because it found that the Act is meant to apply only within the territorial jurisdiction of the United States, and Complainant's work with Respondent ABB T&D, Ltd. took place at all times relevant to the complaint in Abu Dhabi, UAE, and as such was outside the United States.

2007 DOLSOX LEXIS 69, *2

Complainant [*3] filed a timely appeal with the Office of Administrative Law Judges ("OALJ"). His appeal named ABB T&D, Ltd. and ABB, Inc. as Respondents. He did not appeal OSHA's findings regarding ABB, Ltd. His complaint does not provide any reasoning for adding ABB, Inc. as a Respondent. It merely reiterates the allegation that he made before OSHA that, "Respondents relieved [Complainant] of duties."

After Respondents' filed their Motion to Dismiss, Complainant filed an "Amended and Supplemental Complaint" before the undersigned Administrative Law Judge in which he added ABB, Ltd. as a Respondent and asserted that all three Respondents "operate as a joint enterprise, and each participated in the unlawful acts and practices described in this complaint."

**Motion to Dismiss**

The Rules of Practice and Procedure for Administrative Hearings Before the Office of Administrative Law Judges, 29 CFR, Part 18 ("the Rules") provides no rule governing consideration of motions to dismiss. In the absence of a guiding rule provided by the Rules, 29 C.F.R. § 18.1 provides that the Federal Rules of Civil Procedure "shall be applied."

Federal Rules of Civil Procedure 12(b)(1) and (6) address motions to dismiss for [*4] lack of subject matter jurisdiction and failure to state a claim. Here, Respondents' Motion to Dismiss places at issue whether Complainant's complaint is sufficient on its face to establish subject matter jurisdiction and state a recognizable claim under SOX. During this consideration, Complainant's factual assertions are accepted as true. However, the Complainant bears the burden of proof to establish jurisdiction. *Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9, 13-14 (D.D.C. 2001).*

**Sarbanes-Oxley Act**

The whistleblower protections of Section 806 of the Act are codified at Title 18, Chapter 73 Section 1514A, under the caption "Civil action to protect against retaliation in fraud cases." Subsection (a) of 1514A provides that the whistleblower protection provisions apply to companies "with a class of securities registered under section 12 of the Securities Exchange Act of 1934 *(15 U.S.C. 78l)* or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 *(15 U.S.C. 78o* (d))." The registration and reporting requirements of the [*5] Securities Exchange Act of 1934 "apply to U.S. and foreign companies listed on U.S. securities exchanges." *Carnero v. Boston Scientific Corp., 433 F.3d 1, 5 (1st Cir. 2006).* Moreover, the prohibition on retaliation against whistleblowers is not limited to publicly listed corporations themselves; rather, 1514A specifies that no "officer, employee, contractor, subcontractor or agent" of listed corporations can engage in prohibited conduct either. This has been construed to extend the bar on retaliation against whistleblowers to privately held subsidiaries of publicly traded parents. *Carnero, 433 F.3d at 6.*

Sarbanes-Oxley prohibits certain covered employers from discharging, demoting, suspending, threatening, harassing, or in any other way discriminating against employees who provide information to a covered employer or a Federal agency or Congress regarding conduct that the employee reasonably believes constitutes a violation of *18 U.S.C.A. §§ 1341* (mail fraud), 1343 (wire, radio, TV fraud), 1344 (bank fraud), or 1348 (securities fraud), any rule or regulation of the Securities and Exchange [*6] Commission, or any provision of Federal law relating to fraud against shareholders. Employees are also protected from retaliation when they have filed, testified in, participated in, or otherwise assisted in a proceeding filed or about to be filed relating to a violation of the above-referenced fraud statutes, SEC rules or Federal law.

**Jurisdiction**

**Lack of Extraterritorial Jurisdiction.**

It is uncontested that Complainant's employment took place outside the United States. PP 4 and 5 of Complainant's

Declaration states that in 1999 he was transferred to ABB's Group headquarters in Zurich, Switzerland, where he worked consolidating ABB Group accounts, and in 2003 was transferred to Abu Dhabi to work for ABB T&D, Ltd. See also the Respondents' submission of a declaration by Christopher C. Hudson, ABB's regional Human Resources Manager for the area including ABB T&D, Ltd., stating that Complainant entered an employment agreement with ABB T&D, Ltd. on June 13, 2003, in Abu Dhabi, UAE, according to which none of Complainant's duties required any contact with the United States.

The facts of this case are on all fours with a recent decision of the Administrative Review Board ("ARB") [*7] in *Ede v. The Swatch Group, Ltd.,* ARB No. 05-053 ALJ Nos. 2004-SOX-69 and 69 (ARB June 27, 2007). In *Ede,* the ARB sustained an appeal of an Administrative Law Judge's dismissal in a case involving two foreign employees of a foreign subsidiary of a publicly traded corporate parent seeking the Act's protections. The ARB held that "section 806 does not protect employees such as [the complainants] who work exclusively outside the United States." In *Ede,* the complainants worked in Switzerland, Hong Kong and Singapore for a subsidiary of a Swiss corporation, and "they never worked...within the United States." The ARB's reasoning relied on the decision of the First Circuit Court of Appeals in *Carnero v. Boston Scientific Corp., 433 F.3d 1,* (1st Cir. 2006). In *Carnero,* the First Circuit considered the case of an Argentinian citizen employed in Brazil who sought the Act's whistleblower protections after informing his employer's American parent about fraud occurring at two Latin American subsidiaries. The court accepted for purposes of considering the foreign application of the Act that "if [his] whistleblowing activities had occurred in this country [*8] relative to similar alleged misconduct by domestic subsidiaries, he might well have a potential claim under the whistleblower protection provision of the Sarbanes-Oxley Act." *Carnero, 433 F.3d at 6.* The court concluded, however, that the Act's whistleblower protections have no foreign application. It reasoned that a "foreign employee...who complains of misconduct abroad by overseas subsidiaries" may not maintain a suit against a listed American parent company. *Id at 7.*

Complainant presents two arguments in support of the existence of subject matter jurisdiction. He argues initially that the *Carnero* decision was wrongly decided and instead the "more enlightened view is that SOX needs to have the extraterritorial effect necessary to accomplish its fundamental purpose." However, the decision of the ARB in *Ede,* supra, is binding precedent here. Moreover, the *Carnero* reasoning is consistent with the well-established presumption against extraterritorial application of Congressional statutes. "Where, as here, a statute is silent as to its territorial reach, and no contrary congressional intent clearly appears, there [*9] is generally a presumption against its extraterritorial application." *Id.* at 6.

Complainant's second argument is that the parent and subsidiary are jointly liable for a violation of Section 806 of SOX, and, likewise, that a SOX claim may proceed against a non-publicly traded subsidiary under the theory that the subsidiary is an agent of the parent company. n1 However, Complainant's second argument misses the mark. Jurisdiction is lacking because the activity protected by the statute occurred outside the United States, not because liability of the Complainant's employer fails to extend to the parent company. In *Carnero,* the court interpreted SOX as being able to be read as embracing an agent-subsidiary's retaliation against a protected employee. The court assumed that if the discriminatory activity was committed in the United States by the subsidiary the activity would have been covered by SOX. The lack of jurisdiction was a consequence of the overseas location of the employment, not the subsidiary status of the employer, or its agency relation to the parent company.

     n1 Complainant's Amended and Supplemental Complaint alleges that Respondents "operate as a joint enterprise, and each participated in the in the unlawful acts and practices described in this complaint."

[*10]

**ABB, Inc. Not Named in OSHA Complaint.**

Complainant named ABB, Inc. as a respondent for the first time in his appeal to the OALJ. ABB, Inc. is an American subsidiary of ABB, Ltd. and sister subsidiary to ABB T&D, Ltd. It is a Delaware corporation and is neither a parent corporation nor a subsidiary of ABB T&D, Ltd. n2 As ABB, Inc. was not named in the complaint before OSHA, OSHA made no finding on its potential liability.

n2 Declaration of Christopher C. Hudson, PP 14-16.

Complainant argues at page 21 of his Memorandum in Opposition of Motion to Dismiss that ABB, Inc. was named as a respondent. But Complainant is wrong. His complaint is styled with a caption heading showing *Suresh Ahluwalia against ABB, Ltd. and ABB Transmission & Distribution, Ltd.* The only place in his complaint he references ABB, Inc. is in a paragraph providing addresses for the parties. n3

n3 Complainant also suggests in his Memorandum that an error in not naming a party could be corrected in the future by amendment under 29 CFR 18.5(e). Complainant might be correct that such an amendment could have been granted if he was able to meet the requisites for an amendment *nunc pro tunc. Wilson v. Bolin Associates, Inc.,* 91-STA-4 (Sec'y Dec. 30, 1991)

[*11]

29 C.F.R. § 1980.103(d) provides that a complaint must be filed within ninety (90) days of the occurrence of the alleged violation of the Act. Complainant alleged in his complaint that Respondents relieved him of his duties on or about November 23, 2006, and stopped paying wages to him on or about January 31, 2007. Complainant did not name ABB, Inc. as a Respondent until his appeal to the OALJ on May 2, 2007, more than ninety days after the occurrence of the discriminatory act. As the complaint against ABB, Inc. was untimely, no jurisdiction over ABB, Inc. exists. A requirement that a party be named in a complainant's complaint to OSHA is not a mere procedural detail, but is necessary so that the party can offer a defense to allegations of retaliatory conduct.

## ABB, Ltd. not named in appeal to OALJ

Complainant did not name ABB, Ltd. as a respondent in his appeal to the OALJ. He subsequently listed ABB, Ltd. as a respondent in the "Amended and Supplemental Complaint" he filed with the undersigned Administrative Law Judge on July 2, 2007.

29 C.F.R. § 1980.106(a) provides that an objection to OSHA's Findings and Order must be filed with the OALJ within thirty days of receipt of  [*12]  those findings. If an objection is not timely filed, it becomes the final decision of the Secretary not subject to judicial review. OSHA's Findings and Order concluding, inter alia, that ABB, Ltd. did not engage in conduct prohibited under the Act, was issued on April 4, 2007. Thus, the OSHA finding regarding ABB, Ltd. became final on, or about, May, 4, 2007, and was not subject to objection on July 2, 2007, when Complainant filed his supplemental complaint.

### Conclusion

The Motion to Dismiss is granted because the Complainant has failed to satisfy his burden, by a preponderance of the evidence, that subject matter jurisdiction exists, in that the Complainant's employment occurred exclusively outside the United States and thus is not covered by the Act's protections. To that end, the Complainant has not alleged that protected activity or retaliation occurred within the United States. Because no material fact exists relating to Complainant's employment, protected activity or retaliation occurring outside the United States, this case is dismissed.

Also, ABB, Inc. and ABB, Ltd. are dismissed because of the failure of Complainant to properly and timely name them as Respondents.

### ORDER [*13]

In consideration of the aforesaid it is hereby ORDERED the Motion to Dismiss filed by Respondents is granted.

**NOTICE OF APPEAL RIGHTS:** To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within ten (10) business days of the date of the administrative law judge's decision. *See* 29 C.F.R. § 1980.110(a). The Board's address is: Administrative Review Board, U.S. Department of Labor, Room S-4309,

200 Constitution Avenue, NW, Washington, DC 20210. Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-mail communication; but if you file it in person, by hand-delivery or other means, it is filed when the Board receives it. *See* 29 C.F.R. § 1980.110(c). Your Petition must specifically identify the findings, conclusions or orders to which you object. Generally, you waive any objections you do not raise specifically. *See* 29 C.F.R. § 1980.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge, U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC [*14]  20001-8002. The Petition must also be served on the Assistant Secretary, Occupational Safety and Health Administration and the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor, Washington, DC 20210.

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. § 1980.109(c). Even if you do file a Petition, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days after the Petition is filed notifying the parties that it has accepted the case for review. *See* 29 C.F.R. §§ 1980.109(c) and 1980.110(a) and (b).

# TAB C

LEXSEE 2006 DOLSOX LEXIS 90

In the Matter of: THOMAS M. BECK, Complainant, v. CITIGROUP, INC., CITIGROUP
GLOBAL MARKETS HOLDINGS, INC., CITIGROUP GLOBAL MARKETS, INC.,
and CITIGROUP GLOBAL MARKETS DEUTSCHLAND AG & CO. KGaA,
Respondents.

CASE NO.: 2006-SOX-00003 n1

n1 An initial notice included an incorrect docket number. That notice was
reissued subsequently to correct the docket number so as to reflect that the case
was docketed in fiscal year 2006, not 2005. The correct docket number is
"2006-SOX-00003."

U.S. Department of Labor
Office of Administrative Law Judges

*2006 DOLSOX LEXIS 90*

August 1, 2006

[*1]

RECOMMENDED DECISION AND ORDER OF DISMISSAL

PAMELA LAKES WOOD, Administrative Law Judge

**OPINION:**

This proceeding arises out of a complaint filed under the whistleblower protection provisions of the
Sarbanes-Oxley Act, codified at *18 U.S.C. § 1514A* (hereafter "the Act") n2 by Complainant Thomas M. Beck
("Complainant") against Respondents Citigroup, Inc., Citigroup Global Markets Holdings, Inc., and Citigroup Global
Markets Deutschland AG & Co. KGaA (collectively referenced as "Respondents" or "Citigroup.") For the reasons set
forth below, I find that this case should be dismissed for lack of jurisdiction.

n2 The whistleblower protection provisions appear at section 806 of the Sarbanes-Oxley Act, in title VIII,
entitled the "Corporate and Criminal Fraud Accountability Act of 2002" (Sarbanes-Oxley Act of 2002, title VIII,
§ 806, Public Law 107-204, 116 Stat. 745, 802-04 (2002)). Implementing regulations appear at 29 C.F.R. Part
1980.

**PROCEDURAL BACKGROUND**

In his June 2, 2005 verified complaint [*2] (as amended by his October 13, 2005 amended complaint),
Complainant asserted that his employment was terminated because he engaged in protected activities cognizable under
the Act. However, in a determination letter of September 8, 2005, the Occupational Safety and Health Administration
(OSHA), New York, NY (on behalf of the Secretary of Labor) determined that it lacked jurisdiction under the Act
because Complainant, an investment banker who was employed by Citigroup Global Markets Deutschland AG & Co.

KGaA, was located in Germany when the alleged adverse action took place, and OSHA stated that adverse employment actions occurring outside the United States are not covered by the whistleblower protection provisions in the Act. Under cover letter of October 7, 2005, filed by facsimile, Complainant, through counsel, filed objections to the Secretary's Findings and Preliminary Order and requested a full hearing on the merits of the claim. Thereafter, on October 18, 2005, Complainant filed his amended complaint.

On October 20, 2005, I issued a Notice of Assignment and Order stating that a preliminary issue concerning jurisdiction must initially be resolved, and the parties were directed [*3] to state their positions on the preliminary issue within thirty (30) days. Specifically, the issue to be addressed was whether this tribunal has jurisdiction under the Sarbanes-Oxley Act because the actions complained of took place outside of the United States. The parties were also directed to indicate whether a formal hearing would be required for resolution of the preliminary issue. On November 18, 2005, both parties submitted Statements of Position. Complainant asserted that this tribunal has jurisdiction under the Act and demanded a hearing while Respondent took the position that there was no jurisdiction under the Act and no hearing was necessary. Thereafter, the parties discussed supplemental authority, and specifically the decision by the Court of Appeals for the First Circuit in *Carnero v. Boston Scientific Corp., 433 F.3d 1 (1st Cir. 2006), cert. denied* No. 05-1397, -- U.S. -- (June 26, 2006).

## FACTUAL ALLEGATIONS

As stated above, Complainant filed the initial complaint with OSHA on June 2, 2005 alleging violations of the Sarbanes-Oxley Act and that complaint was amended on October 18, 2005. For the purposes of this decision, the factual [*4] allegations made in the amended complaint will be deemed to be true; however, the legal assumptions and conclusions that are replete in the Amended Complaint will not be accepted.

Complainant Thomas Beck, a German national, was employed in Germany by Citigroup Global Markets Deutschland AG & Co. KGaA, a subsidiary of Citigroup, Inc., from February 1, 2004 until his discharge on March 9, 2005. *Amended Complaint* P 2, 15, 16, 17. Complainant was an investment banker working in Respondents' global merger and acquisitions business. *Id.* Although his office was in Frankfurt, Germany, his employment also required travel to the United States, work with clients in the United States, and almost daily contact with Citigroup Inc.'s New York headquarters. *Id. P 16.* His paychecks came from Citigroup Global Markets Deutschland AG & Co. KGaA but his compensation was determined via a global review process managed by Citigroup, Inc. out of New York and his compensation included Citigroup Inc. stock options. *Id. P 18.* Dr. Paul Lerbinger, Managing Director of Citigroup, Inc. and its Head of German Investment Banking, supervised Complainant's [*5] work product and work environment. *Id. P 24.* However, Complainant also reported to the Head of European Mergers & Acquisitions ("M&A"), a position in Citigroup's London offices that was initially held by Thomas King and then by Peter Tague, both of whom were U.S. citizens and also held other positions within Respondents' organizations. *Id. P 23.* In addition, Complainant reported to other managers, at least one of whom was based in New York, on a project basis. *Id. P 25.* Approximately 60% of Citigroup's German M&A business came from outside Germany. *Id. P 27.* Moreover, Complainant asserts that Citigroup Global Markets Holdings, Inc., Citigroup Global Markets, Inc., and Citigroup Global Markets Deutschland AG & Co. KGaA are owned and controlled by, and are mere instrumentalities and alter egos of, Citigroup, Inc. *Id. P 5, 6, 7, 8.*

Complainant alleges that, beginning on or about February 1, 2005, he provided information regarding conduct which he reasonably believed constituted a violation of the Act to persons with supervisory authority [*6] over him, including Dr. Lerbinger and Mr. Tague. *Id. P 28.* These alleged violations included (1) misrepresentations of projected revenues of Citigroup, Inc.'s German investment banking business; (2) misrepresentations by certain senior employees of their credentials and employment histories; (3) misrepresentations concerning the value of a German company to a client based in the United States who was considering it as a potential acquisition; and (4) fraudulent attempts to obtain investment banking business and mislead investors by inflating Citigroup, Inc.'s market position. *Id. P 27.* Complainant asserts that because of and in retaliation for engaging in this protected activity, he was abruptly terminated on March 9, 2005, the day before he was scheduled to meet with Mr. King, who was then the Head of European Investment

Banking, to inform him about the above allegations. *Id. P 31*. Complainant asserts that the decision to discharge him was made or approved and ratified by officials of Citigroup, Inc. located in New York. *Id. P 32*.

### LEGAL BACKGROUND

Section [*7]  806 of the Act, *Protection for Employees of Publicly Traded Companies Who Provide Evidence of Fraud,* amended title 18 of the United States Code by adding a new section 1514A, *Civil action to protect against retaliation in fraud cases.* Subsection (a) of the new section provided whistleblower protection for employees of publicly traded companies and provided that no such company or its officers, employees, contractors, subcontractors, or agents "may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment" because the employee engaged in certain lawful acts:

> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [*fraud and swindles*], 1342 [*fraud by wire, radio, or television*], 1344 [*bank fraud*], or 1348 [*securities fraud*], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation [*8]  is conducted by --

>> (A) a Federal regulatory or law enforcement agency;

>> (B) any Member of Congress or any committee of Congress; or

>> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or

> (2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1342, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

Paragraph (b) specifies how an enforcement action may be brought by such an aggrieved employee and paragraph (c) provides for remedies.

### DISCUSSION

The issue presented in this case is whether Complainant, a foreign national who was employed by a German division of Citigroup and worked exclusively in Germany, is afforded the protection of the whistleblower provisions of Section 806 of the Sarbanes-Oxley Act.

Complainant asserted jurisdiction on two bases. First, Complainant asserted that there was [*9]  no need to explore the issue of SOX's extra territorial application because the decision to terminate Complainant was made by Citigroup's New York officials and there was a substantial nexus to the United States, in that Complainant's work was "intensely connected with United States clients"; his work was controlled by U.S.-based officials of Citigroup, Inc.; the misconduct complained of occurred in the United States or related to U.S. clients; and the protected disclosures were made to officials of Citigroup in New York, among others. Second, Complainant asserted that even if the complaint were deemed to present a question of extraterritoriality, jurisdiction was established because Congress intended the whistleblower provisions in SOX to apply to reports of misconduct from the overseas employees of publicly held companies. and the various tests courts used to determine the extraterritorial reach of U.S. laws were satisfied here.

To the contrary, Respondents argued that Complainant was a foreign national employed overseas whose employment does not fall within the coverage of the Act and that the complaint should be dismissed for lack of jurisdiction. Initially, Respondents argued [*10] that the Act had no applicability extraterritorially to an employee who was employed overseas under any circumstances. However, they have also argued that the facts in the instant case do not give rise to jurisdiction under the Act based upon the analysis applied to other statutory schemes.

Thereafter, the parties discussed the decision by the Court of Appeals for the First Circuit in *Carnero v. Boston Scientific Corp., 433 F.3d 1 (1st Cir. 2006), cert. denied* No. 05-1397, -- U.S. -- (June 26, 2006). Complainant argues that the rationale set forth in *Carnero* supports a finding of jurisdiction while Respondent argues that the factual similarities between the instant case and *Carnero* mandate dismissal.

For the reasons set forth below, I find that, while there may be certain extraterritorial situations which give rise to jurisdiction under the Act, the factual situation in the instant case is not one of them. Dismissal is therefore mandated.

Section 806 does not include a separate definition of the term "employee." The pertinent regulation defines "employee" broadly:

> *Employee* means an individual presently or formerly working for a company [*11] . . . or an individual whose employment could be affected by a company[.]

29 C.F.R. § 1980.101 (emphasis added).

While not addressing the extraterritorial applicability of the Act, the legislative history reflects a concern about employees engaging in whistleblowing activities in the United States. For example, Senator Leahy stated, in relevant part:

> Corporate employees who report fraud are subject to the patchwork and vagaries of current state laws, even though most publicly traded companies do business nationwide. Thus, a whistleblowing employee in one state may be far more vulnerable to retaliation than a fellow employee in another state who takes the same actions. U.S. laws need to encourage and protect those who report fraudulent activity that can damage innocent investors in publicly traded companies. The Act does not supplant or replace state law, but sets a *national* floor for employee protections in the context of publicly traded companies.

148 Cong. Rec. S7419-20 (daily ed. July 26, 2002)(statement of Sen. Leahy)(emphasis added).

The regulation itself provides no guidance on this issue; however, the scope of the definition was raised during the comment period [*12] of rulemaking. Two comments by members of the private sector were submitted and stated the following:

> [1] Siemens commented that the regulatory definition of "company" should exclude foreign issuers to the extent that it relates to foreign national employees who do not work in United States facilities of the foreign issuers. In support, Siemens noted that many foreign industrialized nations already have laws that protect whistleblowers, that United States labor laws already apply to Siemens's affiliated United States companies, and that labor law forms part of the national sovereignty of a foreign country.

> [2] Similarly, HRPA commented that the rule should be revised so as not to apply to employees employed outside of the United States by United States corporations or their subsidiaries; nor should it apply to foreign corporations that have no United States employee. HRPA suggested that applying the rule in these situations would divert the Department's resources and therefore undermine its fundamental mission.

*69 Fed. Reg. No. 163, p. 52105* (Aug. 24, 2004). In response, OSHA stated that the purpose of this rule is to provide procedures for the [*13] handling of Sarbanes-Oxley discrimination complaints; this rule is not intended to provide statutory interpretations. *Id.* Because the regulatory definition of "company" simply applies the language used in the statute, OSHA did not believe any changes to the definition are necessary. *Id.* Based upon OSHA's response, I find that the regulations are intentionally silent on this issue.

Congress explicitly provided extraterritorial jurisdiction under certain sections of the Sarbanes-Oxley Act while excluding such language from § 806. Specifically, Section 1107 provides "extraterritorial federal jurisdiction" over violations of the criminal whistleblower provision section. *18 U.S.C. § 1513*(e). Additionally, Section 106 provides that any "foreign public accounting firm" that prepares an audit report for an "issuer" is "subject to the jurisdiction of the courts of the United States" for enforcement of any request for the firm's work papers. *15 U.S.C. § 7216*(b)(1)(B). When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed [*14] that Congress acts intentionally and purposely in the disparate inclusion and exclusion. *Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452 (2002), citing Russello v. United States, 464 U.S. 16, 23 (1983)*(quoting *United States v. Wong Kim Bo, 472 F.2d 720, 722 (C.A.5 1972))*.

It has long been recognized that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States, based upon the assumption that Congress is primarily concerned with domestic conditions. *Foley Bros., Inc. v. Filardo, 336 U.S. 281 (1949). See also Smith v. U.S., 507 U.S. 197 (1993); EEOC v. Arabian American Oil Co ("Amarco"), 499 U.S. 244, 248 (1991).* The contrary intent must be demonstrated by "affirmative intention of the Congress clearly expressed" to overcome the presumption against extraterritorial application. *Carnero v. Boston Scientific Corp., 433 F.3d 1 (1st Cir. 2006), cert. denied* No. 05-1397, -- U.S. -- (June [*15] 26, 2006), slip op. at 13-14, citing *Amarco.*

In *Foley,* which involved the applicability of the Eight Hour Law to an American citizen performing work at construction projects in Iraq and Iran, the Supreme Court noted the appropriateness of a presumption against extraterritorial application for labor and employment statutes:

> There is no language in the Eight Hour Law, here in question, that gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control. There is nothing brought to our attention indicating that the United States has been granted by the respective sovereignties any authority, legislative or otherwise, over the labor laws or customs of Iran or Iraq. We were on their territory by their leave, but without the transfer of any property rights to us.
>
> The scheme of the Act itself buttresses our conclusion. No distinction is drawn therein between laborers who are aliens and those who are citizens of the United States. Unless we were to read such a distinction into the statute we should be forced to conclude, under respondent's reasoning, that Congress intended [*16] to regulate the working hours of a citizen of Iran who chanced to be employed on a public work of the United States in that foreign land. Such a conclusion would be logically inescapable although labor conditions in Iran were known to be wholly dissimilar to those in the United States and wholly beyond the control of this nation **An intention so to regulate labor conditions which are the primary concern of a foreign country should not be attributed to Congress in the absence of a clearly expressed purpose.** . . . The absence of any distinction between citizen and alien labor indicates to us that the statute was intended to apply only to those places where the labor conditions of both citizen and alien employees are a probable concern of Congress. Such places do not include foreign countries such as Iraq and Iran. [Emphasis added.]

*336 U.S. at 285-86.*

In its 1991 decision in *Amarco,* the Supreme Court reiterated these principles and found that Title VII did not apply

overseas. However, Title VII was later amended to include U.S. citizens employed in foreign countries. *Skekoyan v. Sibley International Corp., 409 F.3d 414, 421 (D.C. Cir. 2005),* [*17] *cert. den. 126 S.Ct. 1337 (2006).*

Turning to the Sarbanes-Oxley Act, Congress recognized that the whistleblower provision in Section 806 should be treated as an employment provision (and not a securities provision) when it authorized the Department of Labor -- not the Securities and Exchange Commission -- to interpret and enforce it. Thus, cases recognizing that federal courts have jurisdiction in securities fraud cases "where illegal activity abroad causes a substantial effect within the United States" (*e.g., Alfadda v. Fenn, 935 F.2d 475, 478 (2d Cir. 1991)),* are inapposite. Although the whistleblower provision undoubtedly has an impact upon securities matters, its essential nature relates to employment issues.

Complainant has argued that there is jurisdiction because his complaint relates to "offensive conduct" taken in the United States, particularly based upon the allegation that the decision to terminate him was made by officials of Citigroup, Inc. based in New York, and Complainant has also argued that the statute should be applied extraterritorially because the activities alleged in the complaint had a substantial [*18] nexus to the United States and the overseas conduct had a substantial domestic effect (citing *Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 532 (D.C.Cir. 1993),* which involved a challenge to the National Science Foundation's plans to incinerate food waste in Antarctica). In so arguing, he has relied upon cases addressing the extraterritorial application of other statutes (*e.g., Torrico v. IBM, 213 F.Supp.2d 390 (SDNY 2002),* involving the applicability of the Americans with Disabilities Act and the New York Human Rights Law to a Chilean national employed in the United States and fired during a period of illness, while on an extended temporary assignment in Chile; and *Shekoyan v. Sibley International Corp., 217 F.Supp.2d 59 (D.D.C. 2002),* involving the applicability of, inter alia, the whistleblower provisions of the False Claims Act to an Armenian-born U.S.-resident employee of a U.S. corporation temporarily assigned to the Republic of Georgia where "the crux of the inappropriate conduct [alleged under the False Claims Act] occurred within the United States." n3 On the other hand, [*19] Respondents have argued that a balancing of contacts test is inapplicable, relying upon authority in other cases (e.g., *Pfeiffer v. W.M. Wrigley Jr. Co., 755 F.2d 554 (7th Cir. 1985),* relating to the applicability of the Age Discrimination in Employment Act to an American citizen employed in Germany by a German subsidiary of a U.S. corporation, and *McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10 (1963),* relating to the jurisdiction of the NLRB over a Honduran seaman employed by a foreign subsidiary of a U.S. company on a foreign flag ship). n4 These cases, while of interest, involve different statutes and factual situations and are of limited applicability to the situation before me.

    n3 Both of the cited decisions in *Torrico* and *Shekoyan* were interlocutory and there were later reported decisions. A decision in *Shekoyan v. Sibley International Corp., 409 F.3d 414, 421 (D.C. Cir. 2005), cert. den. 126 S.Ct. 1337 (2006)* affirmed the district court's granting of summary decision in respondent's favor on different grounds.

[*20]

    n4 In *Pfeiffer, 755 F.2d at 559,* Judge Posner, writing for the Seventh Circuit, remarked that the plaintiff's continuous employment overseas "made his work station foreign and deprived him of the protections of the [age discrimination] Act." The Age Discrimination in Employment Act was subsequently amended to included U.S. citizens employed overseas. *29 U.S.C. § 630*(f).

Several decisions by administrative law judges have addressed the applicability of the SOX whistleblower provisions to workers employed overseas and have generally found the Act to be inapplicable to foreign nationals so employed. In *Ede v. Swatch Group,* 2004-SOX-068, 2004-SOX-069 (ALJ, Jan. 14, 2005)(appeal dismissed), Judge Romano found that the Act's whistleblower provisions do not apply to employees who work exclusively overseas and are subjected to adverse action overseas. Administrative Law Judge Teitler reached the same conclusion in *O'Mahony v.*

2006 DOLSOX LEXIS 90, *20

*Accenture LTD,* 2005-SOX-00072 (ALJ, Jan. 20, 2006), which involved an Irish national employed in France. Similarly,  [*21]  in *Concone v. Capital One Financial Corp.,* 2005-SOX-006 (ALJ, Dec. 3, 2004), Administrative Law Judge Kaplan found that a foreign national (of Italy) whose entire employment by Respondent was outside of the United States (in Italy and Great Britain) was not a covered "employee" under the Act because (1) nothing in the Act suggests that Congress intended for the Act to apply outside of the United States; and (2) the inclusion of specific language applying the § 1107 criminal provision extraterritorially coupled with the failure to include similar language in § 806 revealed Congress' clear intention not to extend the whistleblower provision extraterritorially. However, in an interlocutory order issued in *Penesso v. LCC International, Inc.,* 2005-SOX-016 (ALJ, March 4, 2005), Administrative Law Judge Tureck found that there were factors in the case before him (including the American citizenship of the employee, his engagement in protected activities at corporate headquarters in the United States, and the decision making on one or more of the alleged retaliatory actions taking place in the United States) that precluded dismissal or summary decision, notwithstanding the complainant's [*22]  employment in Italy and his complaints about actions taking place in Italy. n5 That case was, however, settled and no final decision was issued.

> n5 Under cover letter of April 24, 2006, Complainant submitted a December 20, 2004 letter relating to the *Penesso* case from Ellen Edmond, a senior attorney at the Office of the Solicitor, as supplemental authority. In that letter, Ms. Edmond requested that the case be remanded to OSHA because OSHA believed that it had erroneously dismissed his complaint. Specifically, Ms. Edmond stated: "Because Mr. Penesso alleges that the adverse [action] taken against him by Respondent LCC International, Inc. occurred in the United States, it is OSHA's position that the presumption against extraterritoriality is not implicated in this case." This letter motion, while consistent with Judge Tureck's decision, is not precedential authority.

   As the first Federal appellate decision addressing the applicability of the whistleblower provisions of the Act to extraterritorial situations, *Carnero* [*23]  warrants special consideration. In *Carnero, 2004 WL 1922132* (D. Mass., Aug. 27, 2004)(unreported), the district court had dismissed the complaint based upon the analysis set forth in *Foley, 336 U.S. at 286* because nothing in the section 806 or its legislative history suggested that it was intended to apply outside of the United States and "[t]he protection of workers is a particularly local matter." Similarly, the First Circuit found the Act inapplicable to the extraterritorial situation presented, which involved an Argentinean citizen who worked for Argentinean and Brazilian subsidiaries of Boston Scientific Corporation. While finding an employee of a subsidiary to be covered under the definition of "employee," the First Circuit found insufficient factors to support extraterritorial application of the whistleblower provision. The court noted the factors mentioned above, including the express provision of extraterritorial applicability elsewhere in the Act, the lack of a discussion of its overseas application in the legislative history, and the assignment of enforcement responsibilities to the Department of Labor, a domestic [*24] agency. Also, the court noted potential problems that would ensue from extraterritorial application of the whistleblower provisions, and specifically the lack of a mechanism for resolving potential conflicts with foreign labor laws and procedures, as well as the lack of a venue provision relating to where extraterritorial actions should be brought. However, in footnote 17 of its decision, at page 39, the First Circuit cautioned that they were deciding this case on its own facts and left open the possibility that there might be situations in which the Act might be applicable to employees working overseas, such as where an employee based in the United States is retaliated against for whistleblowing while on a temporary assignment overseas. n6 The footnote may relate to situations similar to those in *Torrico* and *Shekoyan,* discussed above, which involved temporary assignments overseas. It does not, however, include the situation now before me.

> n6 For unknown reasons, Respondent filed a copy of the *Carnero* decision which omitted the footnotes, including the highly relevant footnote 17. The entire decision is available on the OALJ website, www.oalj.dol.gov, via the case history link for 2004-SOX-018.

[*25]

Complainant argues that the rationale set forth in *Carnero* supports a finding of jurisdiction while Respondent argues that the factual similarities between the instant case and *Carnero* mandate dismissal. Complainant specifically argues that, unlike here, *Carnero* did not involve allegations that the employee reported misconduct in the United States to officials in the United States or that the decision to discharge the employee was made in the United States. To the contrary, Employer argues that the case is on all fours with the instant case and asserts that there were allegations in *Carnero* to the effect that the wrongdoing was reported to the respondents in the United States, that the employee was terminated by senior executives based in the United States, that extensive control over the foreign subsidiary was exercised by the United States parent company, and that the employee traveled frequently to the United States.

Based upon a review of the facts alleged, which I have set forth in some detail above, in the context of the authority cited above, I find that there is no jurisdiction under the Act. Specifically, despite Complainant's allegations of the interrelationship [*26] of the various subsidiaries of Citigroup, Inc., it is undisputed that he was a German national employed in Germany by a German subsidiary of Citigroup, Inc. This is not a situation involving an American employee assigned to work overseas, which the First Circuit has suggested might provide an exception to the general rule. I find it to be of no import that, in his capacity as an investment banker, Complainant had multiple contacts with employees of Citigroup or its other subsidiaries based in the United States and London, that he traveled to the United States on business, or that Citigroup, Inc. was involved in overseeing the work of its subsidiaries. Such facts, which are undoubtedly to be expected in a global economy, do not change the essential nature of the employment relationship concerned here, which was a foreign employment relationship, based in Germany. Nor do the allegations of misconduct being reported to parent company officials in the U.S. or the possible participation by U.S.-based company officials in the decision to terminate Complainant change the outcome, as they do not alter the foreign nature of the employment relationship. Thus, the whistleblower provisions of [*27] the Act do not apply to the situation presented in the instant case. Accordingly,

### ORDER

**IT IS HEREBY ORDERED,** that Complainant's claim against Respondents be, and hereby is, **DISMISSED WITH PREJUDICE** based upon lack of jurisdiction.

Washington, D.C.

**NOTICE OF APPEAL RIGHTS:** To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within ten (10) business days of the date of the administrative law judge's decision. See 29 C.F.R. § 1980.110(a). The Board's address is: Administrative Review Board, U.S. Department of Labor, Room S-4309, 200 Constitution Avenue, NW, Washington, DC 20210. Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-mail communication; but if you file it in person, by hand-delivery or other means, it is filed when the Board receives it. See 29 C.F.R. § 1980.110(c). Your Petition must specifically identify the findings, conclusions or orders to which you object. Generally, you waive any objections you do not raise specifically. See 29 C.F.R. § 1980.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief [*28] Administrative Law Judge, U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8002. The Petition must also be served on the Assistant Secretary, Occupational Safety and Health Administration and the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor, Washington, DC 20210.

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. § 1980.109(c). Even if you do file a Petition, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days after the Petition is filed notifying the parties that it has accepted the case for review. See 29 C.F.R. §§ 1980.109(c) and 1980.110(a) and (b).

# TAB D

LEXSEE 2006 DOLSOX LEXIS 79

In the Matter of: P. J. DI GIAMMARINO, Complainant, v. BARCLAYS CAPITAL, INC., BARCLAYS PLC, RICHARD T. RICCI, and ROBERT E. DIAMOND, JR., Respondents.

CASE NO.: 2005-SOX-00106

U.S. Department of Labor
Office of Administrative Law Judges

*2006 DOLSOX LEXIS 79*

July 7, 2006

[*1]

RECOMMENDED FINAL ORDER OF DISMISSAL

By PAMELA LAKES WOOD, Administrative Law Judge

**OPINION:**

An Order to Show Cause, which was issued in the above-captioned matter on May 25, 2006, directed the parties to either submit a settlement agreement in this matter for approval within thirty days or, if they failed to do so, show cause why this case should not be dismissed for lack of jurisdiction. Although more than thirty-five days have elapsed, allowing thirty days for a response and five days for mailing under 29 C.F.R. §§ 18.6 and 18.10, there has been no response to the Show Cause Order. Accordingly, this matter will be dismissed.

**Background**

The instant case was brought by Complainant P. J. Di Giammarino under the employee protection (whistleblower) provisions of the Sarbanes-Oxley Act of 2002 (the "Act"), *18 U.S.C. § 1514A*, with implementing regulations appearing at 29 C.F.R Part 1980. In his June 29, 2005 complaint, Mr. Di Giammarino ("Complainant") asserted that his employment was terminated because he engaged in protected activities. From early 2003 until his termination in early 2005, Complainant was employed by Barclays Capital Services Limited, [*2] a United Kingdom company. The complaint named two other entities as respondents, based upon their relationship with Barclays Capital Services, Limited: (1) Barclays Bank, PLC, a financial services group with headquarters in London and (2) Barclays Capital, Inc., the United States branch of Barclays Bank PLC. Complainant was employed in the United Kingdom and resided there during the entire course of his employment. Although he has asserted that he was really an employee of the U.S. entity (Barclays Capital, Inc.), his entire basis for claiming that is his assertion that the entity that employed him was merely an "accounting vehicle" for Barclays Capital, the investment banking division of Barclays Bank PLC. Complainant has dual citizenship as an American citizen and an Italian citizen.

In a determination letter of July 28, 2005, the Occupational Safety and Health Administration (OSHA) determined that it lacked jurisdiction under the Act because, although Complainant is a citizen of the United States, he worked in Respondents. London offices and he was discharged in London. In an appeal letter of August 26, 2005, Complainant, through counsel appealed that determination and requested [*3] a full hearing on the merits of the claim.

On September 9, 2005, the undersigned issued a Notice of Assignment and Order which directed that, within thirty

(30) days, the parties state their positions on the preliminary issue of whether this tribunal had jurisdiction under the Sarbanes-Oxley Act and also indicate whether a formal hearing would be required for resolution of this preliminary issue. In responses of October 11, 2005, Complainant asserted that this tribunal had jurisdiction while Respondent asserted the contrary. Thereafter, the parties discussed supplemental authority, including the decision by the Court of Appeals for the First Circuit in *Carnero v. Boston Scientific Corp., 433 F.3d 1 (1st Cir. 2006), cert. denied* No. 05-1397, -- U.S. -- (June 26, 2006).

On May 8, 2006, Complainant, through counsel, sought to withdraw his hearing request in the instant case. By letter of May 8, 2006, counsel for Complainant asserted that his client "has recently resolved all of his disputes with the respondents" and stated that "[w]e hereby withdraw Mr. Di Giammarino's request for a hearing and request that the proceeding be dismissed." Counsel further [*4] stated that "Mr. Di Giammarino is satisfied that respondents did not unlawfully retaliate against him." Any opposition to Complainant's request would have had to be filed by no later than May 23, 2006. No opposition was filed.

Because it was unclear from Complainant's correspondence whether a settlement was involved, the undersigned had her legal technician contact Complainant's counsel, who advised that a settlement was, in fact, involved. Accordingly, by the Order to Show Cause of May 25, 2006, the parties were ordered to either submit the settlement for approval or show cause (if there was any) why this case should not be dismissed for lack of jurisdiction. No response has been filed by either party.

**Discussion.**

As noted in the Show Cause Order, section 1980.111(c) and (d) (2) of title 29, C.F.R. provides in relevant part:

(c) At any time before the findings or order become final, a party may withdraw his or her objections to the findings or order by filing a written withdrawal with the administrative law judge or, if the case is on review, with the [Administrative Review] Board. The judge or the Board, as the case may be, will determine whether the withdrawal will [*5] be approved. If the objections are withdrawn because of settlement, the settlement will be approved in accordance with paragraph (d) of this section. [Emphasis added]

(d)(1)***

(2) Adjudicatory settlements. At any time after the filing of objections to the Assistant Secretary's findings and/or order, the case may be settled if the participating parties agree to a settlement and the settlement is approved by the administrative law judge if the case is before the judge, or by the Board if a timely petition for review has been filed with the Board. A copy of the settlement will be filed with the administrative law judge or the Board, as the case may be. [Emphasis added]

(e) Any settlement approved by the Assistant Secretary, the administrative law judge, or the Board, will constitute the final order of the Secretary and may be enforced pursuant to § 1980.113.

Based upon this provision, the Show Cause Order found the withdrawal provision to be inapplicable here. Therefore, the parties were essentially given the choice of submitting the settlement for approval or having the jurisdictional issue adjudicated.

Under the decision of the Administrative Review Board in [*6] *Concone v. Capital One Financial Corporation,* ARB No. 05-038, ALJ No. 2005-SOX-6 (2005), the parties were given the option of submitting a settlement for approval or withdrawing the hearing request. In Concone, an administrative law judge dismissed a complaint for lack of jurisdiction because the complainant was employed outside of the United States. When this matter was pending on appeal before the ARB, the parties submitted a Joint Stipulation of Dismissal indicating that the parties agreed to

dismiss the action with prejudice. The Board issued an Order Requiring Clarification, noting that the parties had two options once a party has filed objections to the findings or preliminary order: (1) a party may withdraw his or her objections to the findings or order by filing a written withdrawal of objections and (2) the parties may settle the case if they enter into a settlement and the settlement is approved. The parties withdrew the stipulation for dismissal and the complainant withdrew the objections, and the case was dismissed by the Board.

Inasmuch as the parties have not submitted a settlement, the issue before me is whether this matter should be dismissed for lack of jurisdiction. [*7] Here, in its July 28, 2005 determination letter, OSHA determined that it lacked jurisdiction under the Act because, although Complainant is a citizen of the United States, he worked in Respondents. London offices and he was discharged in London. By Complainant's withdrawing his objection to OSHA's findings, the findings became final. Moreover, dismissal of the case on jurisdictional grounds is consistent with the decision by the Court of Appeals for the First Circuit in *Carnero v. Boston Scientific Corp., supra,* which found the whistleblower provisions of the Sarbanes-Oxley Act inapplicable to the extraterritorial situation involved in that case. While in footnote 17, the First Circuit left open the possibility that there might be situations in which the Act might be applicable in a foreign venue, such as where an employee based in the United States is retaliated against for whistleblowing while on a temporary assignment overseas, there do not appear to be sufficient special circumstances in the instant case that would give rise to jurisdiction. Here, the employee worked exclusively in the United Kingdom for a division of Barclays PLC based in the United [*8] Kingdom. Accordingly, this matter should be dismissed for lack of jurisdiction under the Act.

### ORDER

**IT IS HEREBY ORDERED,** that the instant case be, and hereby is **DISMISSED** for lack of jurisdiction.

**NOTICE OF APPEAL RIGHTS:** To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within ten (10) business days of the date of the administrative law judge's decision. See 29 C.F.R. § 1980.110(a). The Board's address is: Administrative Review Board, U.S. Department of Labor, Room S-4309, 200 Constitution Avenue, NW, Washington, DC 20210. Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-mail communication; but if you file it in person, by hand- delivery or other means, it is filed when the Board receives it. See 29 C.F.R. § 1980.110(c). Your Petition must specifically identify the findings, conclusions or orders to which you object. Generally, you waive any objections you do not raise specifically. See 29 C.F.R. § 1980.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge, U.S. Department of Labor, [*9] Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8002. The Petition must also be served on the Assistant Secretary, Occupational Safety and Health Administration and the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor, Washington, DC 20210.

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. § 1980.109(c). Even if you do file a Petition, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days after the Petition is filed notifying the parties that it has accepted the case for review. See 29 C.F.R. §§ 1980.109(c) and 1980.110(a) and (b).

# <u>TAB E</u>

LEXSEE 2004 DOLSOX LEXIS 97

In the Matter of LUCA CONCONE, Complainant v. CAPITAL ONE FINANCIAL
CORPORATION; CAPITAL ONE BANK (EUROPE) PLC; CAPITAL ONE
FINANCIAL INTERMEDIARY SPA, Respondent

Case No.: 2005-SOX-00006

U.S. Department of Labor
Office of Administrative Law Judges

*2004 DOLSOX LEXIS 97*

December 03, 2004

[*1]

RECOMMENDED DECISION AND ORDER DISMISSING THE COMPLAINT

By Robert D. Kaplan, Administrative Law Judge

**OPINION:**

This proceeding arises from a complaint filed on June 24, 2004 by Luca Concone (Complainant) against Respondent alleging that Respondent violated $ S 806 of the Corporate and Criminal Fraud Accountability Act of 2002, title VIII of the Sarbanes-Oxley Act of 2002, *18 U.S.C. § 1514A* (the Act) by discharging him from employment on April 23, 2004. The applicable regulations are contained in 29 C.F.R. Part 1980, effective on August 24, 2004. The Act protects employees of publicly traded companies from acts affecting their employment because the employee has acted

to provide information . . . [to a Federal regulatory or law enforcement agency, member of Congress, a supervisor of the employer, etc.] which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . .

*18 U.S.C. § 1514A*(a)(1).

On or about October 5, 2004 the Occupational [*2] Safety and Health Administration (OSHA) denied the complaint. On November 3, 2004 Complainant requested a formal hearing. This case was then assigned to me to hear and decide. On November 9, 2004 I issued an "Order to Show Cause Why the Complaint Should Not Be Dismissed" (Order). Complainant and Respondent filed initial responses to the Order on November 26 and additional argument on December 2, 2004.

This case presents the question of whether Complainant, a foreign national whose entire employment by Respondent was outside the United States, is a covered "employee" under the Act. For the reasons set forth below, I find that the Act does not cover persons who were employed outside the United States, and therefore the complaint must be dismissed. n1

n1 Respondent argues, in addition, that the complaint should be dismissed because (1) Complainant was not directly employed by the only publicly traded company named by him as a respondent, Capital One Financial

Corporation, (2) the two other named companies are non-public wholly-owned subsidiaries of Capital One Financial Corporation, and (3) Capital One Financial Corporation "does not share a commonality of management and purpose with" the other named companies. (Respondent's 11/26/04 Response, pp. 4-5) I make no determination regarding the factual or legal merits of this argument. I note, however, the cogent ruling of Administrative Law Judge Stuart A. Levin that under the Act a covered employer is responsible for the conduct of its wholly-owned non-public subsidiaries. Morefield v. Exelon Services, Inc, et al., 2004-SOX-00002 (Jan. 28, 2004).

[*3]

Complainant, a national of Italy, concedes that he was employed by Respondent only in the United Kingdom and Italy. (Complainant's 11/26/04 Response, p. 2) n2 However, Complainant notes that § 1107 of the Sarbanes-Oxley Act, *18 U.S.C. § 1513*(e), which prohibits retaliation against persons who report a "Federal offense" to a "law enforcement officer," has extraterritorial effect, pursuant to the pre-existing provision in *18 U.S.C. § 1513*(d). n3 Complainant argues, "Therefore, the Act protects whistleblowers, regardless of their nationality or location . . . ." (Complainant's 11/26/04 Response, pp. 4-5; Complainant's 12/2/04 Reply, pp. 1-2)

> n2 The complaint states that Complainant was employed on November 4, 2002 in England by Capital One Bank (Europe) PLC as United Kingdom Country Manager, and on March 6, 2003 also was appointed Chairman of the Board of Capital One Financial Intermediary SPA in Italy. Complainant alleges that as a result of his protected activity under the Act, including notifying Respondent of "accounting irregularities" under "Italian law," Respondent harassed him in "violation[] of his rights under United Kingdom and European Union Laws . . . and finally terminated [his] employment . . ." (Complaint, {2145*1} {2145*2} 10, 12, 13, 16) Complainant further alleges that some of Respondent's misconduct reported by him violates Italian criminal law. (Complaint, {2145*3} 17)

[*4]

> n3 Section 1513(d) states: "There is extraterritorial Federal jurisdiction over an offense under this section." In addition to the prohibitions in § 1107 of the Sarbanes-Oxley Act, *18 U.S.C. § 1513*(e), set forth above, § 1513 prohibits retaliatory killing or attempted killing of a witness, victim, or informant *(18 U.S.C. § 1513*(a)), and retaliatory bodily injury or damage to property *(18 U.S.C. § 1513*(b)). Violations of all these provisions carry criminal penalties. Violation of § 1513(e) is punishable by a fine or imprisonment up to 10 years, or both.

Based on the same statutory provisions, Respondent argues the contrary. Respondent posits that in enacting Sarbanes-Oxley to provide extraterritorial application "to the criminal sanction in Section 1107" and failing to add an extraterritoriality provision extending § 806 to acts outside the United States, Congress revealed the intent to limit "the civil whistleblowing protection only to U.S. citizens working within the United States." (Respondent's 11/26/04 Response, p. 6)

The language of the Act and the regulations  [*5]  do not provide a definitive answer to the question of whether an individual who was not employed in the United States is a covered "employee." The Act does not contain a definition of "employee." The regulation at 29 C.F.R. § 1980.101 defines "employee" as follows:

> *Employee* means an individual presently or formerly working for a company . . . or an individual whose employment could be affected by a company . . . .

The Department of Labor has advised that the permanent regulations in 29 C.F.R. Part 1980 are intentionally silent regarding the question at hand. In its commentary to the final regulations the Department noted two relevant private sector suggestions to change § 1980.101 during the comment period prior to the promulgation of the final regulations. The first suggestion was that the "regulatory definition of 'company' should exclude foreign issuers to the extent that it relates to foreign national employees who do not work in United States facilities of the foreign issuers." The second was

that the Act "should not apply to employees employed outside the United States by United States corporations or their subsidiaries . . . ." To these suggestions the Department [*6] replied:

> The purpose of this rule is to provide procedures for the handling of Sarbanes-Oxley discrimination complaints; this rule is not intended to provide statutory interpretations. Because the regulatory definition of "company" simply applies the language used in the statute, [the Department] does not believe any changes to the definition are necessary.

*69 Fed. Reg. No. 163, p. 52105* (Aug. 24, 2004).

In Carnero v. Boston Scientific, Civ. Action No. 04-10031-RWZ, 2004-WL-1922132 (U.S. Dist. Ct., D. Mass., Aug. 27, 2004), involving a foreign national, the complaint under the Act was dismissed because the employee "worked exclusively overseas." The Court held that, "Nothing in [the Act] remotely suggests that Congress intended it to apply outside the United States." (Slip op. at 3) The Court relied on *Smith v. United States, 507 U.S. 197 (1993)* and *Foley Bros. v. Filardo, 336 U.S. 281 (1949)* for the proposition that the laws of the United States are meant to apply only within the United States, "absent any evidence of contrary intent." (Slip op. at 2)

I agree with Respondent's core [*7] contention that in Congress' failure to make § 806 apply extraterritorially -- while doing so for violation of the criminal provision in § 1107 of the Sarbanes-Oxley Act, 18 U.C. § 1513(e) -- it revealed a clear intention not to extend the protection of § 806 to persons who were employed wholly outside the United States. n4 Under these circumstances, Complainant's contrary argument that the extraterritoriality provision in the criminal code at *18 U.S.C. § 1513*(d) applies to violations of § 806, which allows only non-criminal remedies, simply has no foundation. In this regard, it also should be noted that the Department of Labor has authority to enforce § 806 through the medium of a civil complaint filed by a discriminate, but it does not have jurisdiction over violations of § 1107 of Sarbanes-Oxley *(18 U.S.C § 1513*(e)). Violations of § 1107 must be prosecuted criminally by the U.S. Department of Justice. As Respondent argues, *18 U.S.C. § 1513* "is a criminal statute that only applies to prosecution by the United States Government . . . . [It] does not create a private cause [*8] of action." (Respondent's 12/2/04 Memorandum, pp. 3-4)

> n4 I need not and do not decide whether Respondent is correct in arguing that § 806 applies only to U.S. citizens working within the United States. However, I see no reason why the Act should not protect foreign nationals working in the United States. Nor do I conclude that the District Court's decision in Carnero turned on the circumstance that the employee in that case was a foreign national, as is Complainant in the instant case. Although the Court referred to the employee's foreign nationality, Carnero appears to be based solely on the fact that the employee was employed outside the United States.

Complainant attempts to distinguish Carnero because in that case no allegations of criminal misconduct were made, while he "reported not only accounting and financial irregularities, but also criminal acts . . . to a federal investigative body (the DOL)." Complainant states, "In retaliation for reporting such criminal misconduct [Respondent] stepped up its harassment and 'interference' with [his] 'employment and livelihood', as reported to the DOL on July 15, 2004." (Complainant's 11/26/04 Response, p. 6; Complainant's [*9] 12/2/04 Reply, p. 5) I find that here Complainant misconstrues § 1107 of the Sarbanes-Oxley Act, *18 U.S.C. § 1513*(e). As noted above, that provision prohibits retaliatory acts against persons because they have reported a "Federal offense" to a "law enforcement officer." (Section 1107 describes such prohibited acts as "any action harmful to any person, including interference with the lawful employment or livelihood of any person.") However, Complainant has failed to set forth any "Federal offense" -- i.e., any violation of U.S. law -- that was committed by Respondent, other than the alleged violation of § 806 of Sarbanes-Oxley, itself. As I have found that § 806 does not have extraterritorial application, no Federal offense has been shown. n5

> n5 Complainant's argument is circular: § 806 applies because it has extraterritorial effect, and it has extraterritorial effect because it involves his report of a violation of § 806 which is a "Federal offense" under §

1107.

Complainant concludes his argument with reference to Supreme Court decisions that he contends "clearly favor the extraterritorial application of United States federal laws." (Complainant's [*10]  11/26/04 Response, pp. 7-9) n6 However, in none of these cases was a clear intent of Congress shown to withhold exterritorial application of the involved statute, as it has been shown in the instant case with regard to the Act. Nor do those decisions conflict with the general rule expressed by the Supreme Court in *Smith v. United States, supra,* and *Foley Bros. v. Filardo, supra,* that the laws of the United States are meant to apply only within the United States, absent evidence of the contrary intent. Foley Bros. is particularly instructive as it is somewhat similar to the instant case in that the plaintiff was an overseas employee who sued his U.S. employer. The employee worked on federal projects in Iraq and Iran under the employer's contracts with the United States. He sued for overtime wages allegedly due under the Federal Eight Hour Law (time-and-a-half pay for all hours over eight in a day) applicable to contracts to which the United States was a party. Violation of the law made an employer liable for back pay as well as penalties. Although the applicability language of the law was unlimited in that it applied [*11]  to "Every contract made to which the United States is . . . a party," the Supreme Court held that the law did not apply to contracts involving work in a foreign country. The Court first stated the following principle:

> The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is
> meant to apply only within the territorial jurisdiction of the United States * * * is based on the
> assumption that Congress is primarily concerned with domestic conditions.

*336 U.S. 281, 285.* The Court then expressed concern about whether the United States had the authority, and whether Congress intended, to regulate the working hours "of a citizen of Iran who chanced to be employed on a public work of the United States in a foreign land." *336 U.S. at 286.* Although the Court discussed the difference between overseas work performed by a U.S. citizen and by a foreign national, its primary concern was that if the law had extraterritorial application it would attempt to give the United States "authority . . . over the labor laws or customs of Iran or Iraq" although "nothing [was] brought to our attention  [*12]  indicating that the United States had been granted by the respective sovereignties [such] authority . . . ." The Court went on to state:

> An intention so to regulate labor conditions which are the primary concern of a foreign country should
> not be attributed to Congress in the absence of a clearly expressed purpose. n7

*336 U.S at 286.* With this problem in mind, the District Court in Carnero v. Boston Scientific Corp., supra, expressed concern that

> application of [the Act] overseas may conflict with foreign laws, which is especially likely in this case
> where plaintiff seeks to be reinstated to his job.

(Slip op. at 3) Similarly, in the instant case Complainant seeks reinstatement, back pay, front pay, reimbursement for lost pension, "and other benefits in an amount to be determined." (Complaint, p. 5, {2145*4} (2)) Were the Act to be given extraterritorial application in the instant case, the requested remedy could conflict with the laws of England and Italy, where Complainant was employed by Respondent. This is additional reason to conclude that Congress did not intend to make the Act apply to persons employed wholly outside the United [*13]  States.

n6 *Hartford Fire Insurance Co. v. California, 509 U.S. 764 (1993); United States v. Sisal Sales Corp., 274 U.S. 268 (1927); Steele v. Bulova Watch Co., 344 U.S. 280 (1952); Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306 (1970); Kawakita v. United States, 343 U.S. 717 (1952); Ford v. United States, 273 U.S. 593 (1927).*
n7 Presumably, a country's labor laws would apply not only to its own citizens but also to foreigners working within its borders.

In sum, I find that Complainant is not a covered employee under the Act because he was employed by Respondent outside the United States. Consequently, the complaint herein must be dismissed.

ORDER

It is ORDERED that the complaint herein is dismissed.

Cherry Hill, New Jersey

**NOTICE OF APPEAL RIGHTS:** This decision shall become the final order of the Secretary of Labor pursuant to 29 C.F.R. § 1980.110, unless a petition for review is timely filed with the Administrative Review Board ("Board"), US Department of Labor, Room S-4309, [*14] 200 Constitution Avenue, NW, Washington DC 20210, and within 30 days of the filing of the petition, the ARB issues an order notifying the parties that the case has been accepted for review. The petition for review must specifically identify the findings, conclusions or orders to which exception is taken. Any exception not specifically urged ordinarily shall be deemed to have been waived by the parties. To be effective, a petition must be filed within ten business days of the date of the decision of the administrative law judge. The date of the postmark, facsimile transmittal, or e-mail communication will be considered to be the date of filing; if the petition is filed in person, by hand-delivery or other means, the petition is considered filed upon receipt. The petition must be served on all parties and on the Chief Administrative Law Judge at the time it is filed with the Board. Copies of the petition for review and all briefs must be served on the Assistant Secretary, Occupational Safety and Health Administration, and on the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor, Washington, DC 20210. *See* 29 C.F.R. §§ 1980.109(c) and 1980.110(a) and [*15] (b), as found OSHA, Procedures for the Handling of Discrimination Complaints Under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002; Interim Rule, *68 Fed. Reg. 31860* (May 29, 2003).

# TAB F

LEXSEE 2007 DOLSOX LEXIS 51

In the Matter of: JOSEPH EDE and MATTHIEU PHANTHALA, COMPLAINANTS, v.
THE SWATCH GROUP LTD. AND SWATCH USA, RESPONDENTS.

ARB CASE NO. 05-053, ALJ CASE NOS. 04-SOX-68, 04-SOX-69

U.S. Department of Labor
Office of Administrative Law Judges

*2007 DOLSOX LEXIS 51*

June 27, 2007

[*1]

FINAL DECISION AND ORDER

By OLIVER M. TRANSUE, Administrative Appeals Judge; M. CYNTHIA DOUGLASS, Chief Administrative
Appeals Judge

**COUNSEL:**
For the Complainants: Daniel J. Kaiser, Esq., Kaiser Sauborn & Mair, P.C., New York, New York; For the
Respondents: Michael A. Paskin, Esq., Cravath, Swaine & Moore LLP, New York, New York; For the Acting Assistant
Secretary of Labor for Occupational Safety and Health, as Amicus Curiae: Mark E. Papadopoulos, Esq., Ellen R.
Edmond, Esq., Steven J. Mandel, Esq., Howard M. Radzely, Esq., United States Department of Labor, Washington,
D.C.

**OPINION:**

Joseph Ede and Matthieu Phanthala filed a complaint alleging that when their employer, the Swatch Group,
terminated Ede's employment and forced Phanthala to resign, it violated section 806 of the Corporate and Criminal
Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002 (SOX), the employee protection
provision. n1 Swatch Group moved to dismiss the complaint. A United States Department of Labor Administrative Law
Judge (ALJ) granted the motion. Ede and Phanthala appealed.

n1 *18 U.S.C.A. § 1514A* (West Supp. 2005). The SOX implementing regulations are found at 29 C.F.R. Part
1980 (2006).

[*2]

BACKGROUND

The Swatch Group is a Swiss corporation that manufactures, distributes, and sells watches and other products. n2
Its subsidiaries around the world distribute its products. n3 Ede was hired on June 15, 1998, to work for a Swatch Group
subsidiary. n4 Ede began work in Switzerland, where he received six months of training, then worked in Hong Kong. n5
He transferred to Singapore, effective on March 3, 2003. n6 Ede was terminated from his employment with the Swatch
Group subsidiary, effective on July 31, 2004. n7

n2 Declaration of Dr. Hanspeter Rentsch, General Counsel of the Swatch Group, para. 3; Exhibit 1.
n3 *Id.* at para. 3-4.

n4 Declaration of Edgar Geiser, Senior Vice President and Chief Financial Officer of the Swatch Group, para. 4; Exhibit 3. Ede's employment contract indicates that he resided in Azerbaijan when he was hired. Exhibit 3.

n5 *Id.* at para. 4-5; Exhibits 3-4.

n6 *Id.* at para. 6; Exhibit 5.

n7 *Id.* at para. 13; Exhibit 8.

Phanthala was hired in 2001 to work for a Swatch Group subsidiary. n8 He worked in Hong Kong. Phanthala submitted a letter of resignation on June 2, 2004. n9 Neither Ede nor Phanthala [*3] worked for Swatch USA or for any other Swatch Group subsidiary in the United States.

n8 *Id.* at para. 17-18; Exhibit 11. Phanthala's employment contract indicates that he lived in Beijing, China when he was assigned to work in Hong Kong. Exhibit 11.

n9 *Id.* at para. 18, 21; Exhibits 11-12.

On June 25, 2004, Ede and Phanthala filed this SOX complaint with the Department of Labor's Occupational Safety and Health Administration (OSHA). Ede and Phanthala claimed that they were fired and forced to resign, respectively, for complaining about fraud committed by the Swatch Group. n10 OSHA dismissed their complaints. Ede and Phanthala appealed the dismissal and their complaint was referred to the Department of Labor's Office of Administrative Law Judges for a hearing.

n10 *Id.*

SOX's section 806 prohibits certain covered employers from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against employees who provide information to a covered employer or a Federal agency or Congress regarding conduct that the employee reasonably believes constitutes a violation of *18 U.S.C.A. §§ 1341* (mail [*4] fraud), 1343 (wire, radio, TV fraud), 1344 (bank fraud), or 1348 (securities fraud), or any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders. Employees are also protected against discrimination when they have filed, testified in, participated in, or otherwise assisted in a proceeding filed or about to be filed relating to a violation of the aforesaid fraud statutes, SEC rules, or federal law. n11

n11 *18 U.S.C.A. § 1514A*(a).

As noted earlier, the Swatch Group filed a Motion to Dismiss, arguing, in part, that the SOX section 806 does not protect Ede and Phanthala because they both worked exclusively outside of the United States. Consistent with the holding of the United States District Court in *Carnero v. Boston Scientific Corp.,* n12 the ALJ concluded that the section 806 employee protections apply only to employees working within the United States. Thus, because the ALJ found that Ede and Phanthala never worked within the United States for the Swatch Group or one of its subsidiaries, he held that they are not covered employees and dismissed the complaint. [*5] n13 Ede and Phanthala appeal.

n12 No. 04-10031-*RWZ, 2004 WL 1922132* (D. Mass. Aug. 27, 2004).

n13 Decision and Order at 2-3.

**JURISDICTION AND STANDARD OF REVIEW**

The Secretary of Labor has delegated to the Administrative Review Board her authority to issue final agency decisions under the SOX. n14 Pursuant to the SOX and its implementing regulations, the Board reviews the ALJ's findings of fact under the substantial evidence standard. n15 Substantial evidence is that which is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." n16 But the Board reviews an ALJ's conclusions of law de novo. n17

n14 Secretary's Order 1-2002 (Delegation of Authority and Responsibility to the Administrative Review Board),

*67 Fed. Reg. 64272* (Oct. 17, 2002); 29 C.F.R. § 1980.110.

n15 29 C.F.R. § 1980.110(b).

n16 *Clean Harbors Envtl. Servs., Inc. v. Herman, 146 F.3d 12, 21 (1st Cir. 1998)* (quoting *Richardson v. Perales, 402 U.S. 389, 401 (1971)).*

n17 *Cf. Yellow Freight Sys., Inc. v. Reich, 8 F.3d 980, 986 (4th Cir. 1993)* (analogous provision of Surface Transportation Assistance Act); *Roadway Express, Inc. v. Dole, 929 F.2d 1060, 1063 (5th Cir. 1991)* (same).

[*6]

## DISCUSSION

After the ALJ's decision and while this appeal was pending, the First Circuit Court of Appeals reviewed the district court's *Carnero* decision. The First Circuit considered whether section 806 has extraterritorial effect and, therefore, protects foreign employees who are working outside of the United States for foreign subsidiaries of covered companies. n18 Because it found that Congress "made no reference to application [of the employee protection provisions under Section 806] abroad, [but] tailored [it] to purely domestic application," the First Circuit held that section 806 "does not reflect the necessary clear expression of congressional intent to extend its reach beyond our nation's borders." n19 Therefore, the court found that the district court properly dismissed Carnero's complaint since he was a resident of foreign countries "directly employed by foreign companies operating in those countries." n20

n18 *Carnero v. Boston Scientific Corp., 433 F.3d 1, 4, 6-7 (1st Cir. 2006), cert. denied,    U.S.   , 126 S.Ct. 2973* (June 26, 2006).

n19 *433 F. 3d at 18.*

[*7]

n20 *Id. at 18 n.17.* The court noted that it decided the case "necessarily on its own facts" and did not decide "whether Congress intended to cover an employee based in the United States who is retaliated against for whistleblowing while on a temporary assignment overseas." *Id.*

The record indicates that Ede and Phanthala worked for foreign subsidiaries of the Swatch Group in Switzerland, Hong Kong and Singapore and that they never worked for Swatch Group within the United States. n21 They complain that they were subject to adverse actions that occurred outside the United States. The ALJ found that neither Ede nor Phanthala worked within the United States for Swatch or a subsidiary. n22 Substantial evidence supports this finding, and Ede and Phanthala do not challenge it.

n21 Geiser Declaration, para. 3-6, 13, 17-18, 21; Exhibits 3-5, 8, 11, 12.

n22 Decision and Order at 3.

## CONCLUSION

Finding no reason to depart from the First Circuit's *Carnero* decision that SOX section 806 does not protect employees such as Ede and Phanthala who work exclusively outside the United States, we affirm the ALJ's recommendation and **DISMISS** [*8]  this complaint.

## SO ORDERED.