UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ROSEMARY O'MAHONY, | : E-FILED |
| Plaintiff, | : 07-CIV- 7916 (VM) |
| - against - | : |
| ACCENTURE LTD. and ACCENTURE LLP., | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Dated: New York, New York
       November 2, 2007


*Of Counsel*:
    Anthony J. Rao (AR-8482)


SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500
Attorneys for Defendants
Accenture Ltd and Accenture LLP

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFF'S CLAIMS ARE BARRED BECAUSE SECTION 806 OF SOX DOES NOT APPLY TO EMPLOYEES WHO WORK OUTSIDE OF THE U.S. ................................................... 2

    A. Whether Section 806 Applies Extraterritorially Depends Upon Where The Employee Was Employed ................................................................................................ 2

        1. The Place Where Retaliatory Decisions Were Made or Alleged Misconduct Occurred Is Irrelevant ........................................................................ 2

        2. Penesso v. LLC Int'l, Inc. Is Aberrational ............................................................. 4

    B. Plaintiff's Argument That The Extraterritorial Application Of A Statute Is Not Implicated When The Conduct Occurs Within The U.S. Is Flawed ........................................ 5

    C. Traditional Cannons Of Statutory Construction Confirm Congress's Intent To Preclude Extraterritorial Application Of SOX's Whistleblower Protections ........................... 7

II. PLAINTIFF DID NOT ENGAGE IN PROTECTED ACTIVITY AS DEFINED BY SOX ...................... 8

CONCLUSION ............................................................................................................................. 10

CERTIFICATE OF SERVICE ..................................................................................................... 11

## TABLE OF AUTHORITIES

## CASES

Pages

*Ahluwalia v. ABB, Inc.*,
    2007 DOLSOX LEXIS 69 (ALJ Sep. 24, 2007) ........................................................................ 2, 5

*Beck v. Citigroup, Inc.*,
    2006-SOX-00003, 2006 DOLSOX LEXIS 90 (ALJ Aug. 1, 2006) ............................................ 2-5

*Bishop v. PCS Admin. (USA), Inc.*,
    2006 U.S. Dist. LEXIS 37230 (N.D. Ill. May 23, 2006) .................................................................. 9

*Carnero v. Boston Scientific Corporation*,
    433 F.3d 1 (1st Cir. 2006) ..................................................................................................... 1-5, 7, 8

*Concone v. Capital One Fin. Corp.*,
    2004 DOLSOX LEXIS 97 (ALJ Dec. 3, 2004) ................................................................................ 2

*Di Giammarino v. Barclays Capital, Inc.*,
    2005-SOX-00106, 2006 DOLSOX LEXIS 79 (ALJ July 7, 2006) ............................................. 2, 5

*Ede v. Swatch Group*,
    ARB No. 05-053 ALJ Nos. 2004-SOX-69 (ARB June 27, 2007) ................................................... 3

*EEOC v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991) ........................................................................................................................ 8

*Environmental Defense Fund, Inc. v. Massey*,
    986 F. 2d 528 (D.C. Cir. 1993) .................................................................................................. 5-7

*Foley Bros., Inc. v. Filardo*,
    336 U.S. 281 (1949) ........................................................................................................................ 6

*Fraser v. Fiduciary Trust Co., Int'l*,
    417 F. Supp. 2d 310, 321-322 (S.D.N.Y. 2006) ............................................................................. 8

*Fredrickson v. The Home Depot U.S.A., Inc.*,
    2007-SOX-13, 2007 DOLSOX LEXIS 53 (ALJ July 10, 2007) ................................................... 10

*Harvey v. Safeway*,
    No. 2004 SOX 21, 2005 DOLSOX LEXIS 4 (ALJ Feb. 11, 2005) ............................................... 10

*Livingston v. Wyeth, Inc.*,
    2006 U.S. Dist. LEXIS 52978, 2006 WL 2129794 (M.D. N.C. July 28, 2006) .............................. 9

*Marshall v. Northrup,*
    2005-SOX-0008, 2005 DOLSOX LEXIS 63, 2005 (ALJ June 22, 2005) ......................................... 9

*McCulloch v. Sociedad Nacional de Marineras de Honduras,*
    372 U.S. 10 (1963) .............................................................................................................. 6

*Neuschafer v. Parexel International, LLC,*
    2007 DOLSOX LEXIS 63 (ALJ Aug. 31, 2007) ................................................................... 10

*Ofori-Tenkorang v. Am. Int'l Group, Inc.,*
    460 F.3d 296 (2nd Cir. 2006) ............................................................................................. 6

*Penesso v. LLC Int'l, Inc.,*
    2005 SOX 000016 (ALJ March 4, 2005) ......................................................................... 4, 5

*Portes v. Wyeth Pharms, Inc.,*
    2007 U.S. Dist. LEXIS 60824 (S.D.N.Y. Aug. 20, 2007) ..................................................... 8

*Reyna v. ConAgra Foods, Inc.,*
    506 F. Supp 2d 1363 (M.D. Ga. 2007) ............................................................................... 9

*Shekoyan v. Sibley International Corporation,*
    217 F. Supp. 2d 59 (D.D.C. 2002) ................................................................................. 5, 7

*Stevens v. Premier Cruises, Inc.,*
    215 F. 3d 1237 (11th Cir. 2000) ..................................................................................... 5, 6

*Wengender v. Robert Half Int'l Inc.,*
    2005-SOX-59, 2006 DOLSOX LEXIS 32 (ALJ March 30, 2006) ......................................... 10

## STATUTES

18 U.S.C. § 1514A ................................................................................................................... 1

## INTRODUCTION

Plaintiff raises two arguments in her Memorandum in Opposition to Defendant's Motion to Dismiss. First, Plaintiff maintains that because the allegedly fraudulent scheme and retaliation were perpetrated by U.S. executives of Accenture within the U.S., this case does not involve the extraterritorial application of the whistleblower provision of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A. To this end, Plaintiff argues that *Carnero v. Boston Scientific Corporation,* 433 F.3d 1 (1st Cir. 2006), one of the many cases contrary to Plaintiff's position, is inapposite because the misconduct and employment decisions in that case were made overseas, whereas extraterritorial application of a statute is not implicated when the alleged misdeeds occur within the U.S. Indeed, plaintiff turns the statutory argument on its head by arguing that general rules of statutory construction establish that Section 806 applies to all employees of companies publicly traded on the U.S. stock exchanges. Second, plaintiff maintains that her complaints constituted protected activity as defined by Section 806 of SOX because she reasonably believed Defendants violated provisions of the U.S. mail and wire fraud statutes.

*Carnero* and the plethora of cases decided by the Department of Labor's Administrative Law Judges do not turn on whether the decisions made or actions taken against the plaintiff occurred in the U.S., but rather, *where the plaintiff was employed.* Furthermore, plaintiff has not shown that the extraterritorial application of a statute is not implicated when the misconduct occurs in the U.S, as the cases she cites for this proposition are inapposite and entirely off point. Because plaintiff's argument that extraterritorial application is not at issue in this case is fatally flawed, her position that "general standards of statutory construction" must apply also fails. Lastly, plaintiff has failed to demonstrate that she was engaged in activity protected by Section 806 as her complaints did not involve fraud against shareholders.

## ARGUMENT

I. **PLAINTIFF'S CLAIMS ARE BARRED BECAUSE SECTION 806 OF SOX DOES NOT APPLY TO EMPLOYEES WHO WORK OUTSIDE OF THE U.S.**

   A. Whether Section 806 Applies Extraterritorially Depends Upon Where The Employee Was Employed

   1. The Place Where Retaliatory Decisions Were Made or Alleged Misconduct Occurred Is Irrelevant

Plaintiff's attempt to distinguish *Carnero* on the grounds that the alleged misconduct and retaliation in that case occurred overseas is untenable. *Carnero* stands for the proposition that Section 806 does not and was not intended to apply to persons employed outside of the U.S. 433 F.3d at 3. Contrary to plaintiff's argument, *Carnero*'s analysis was not dependent upon whether the decisions made or actions taken against the plaintiff occurred in the U.S. but rather, where the plaintiff was employed. *See Concone v. Capital One Fin. Corp.*, 2004 DOLSOX LEXIS 97 at *8 (ALJ Dec. 3, 2004) ("*Carnero* [the district court opinion] appears to be based solely on the fact that the employee was employed outside the United States").

Indeed, all other administrative decisions directly on point turned on the fact that the employee was employed outside of the U.S. *See Ahluwalia v. ABB, Inc.*, 2007 DOLSOX LEXIS 69 (ALJ Sep. 24, 2007) (Complainant's employment occurred outside the U.S. and thus is not covered by the Act's protections); *Beck v. Citigroup, Inc.*, 2006-SOX-00003, 2006 DOLSOX LEXIS 90 (ALJ Aug. 1, 2006) (foreign national employed by a German division of Citigroup not covered by Section 806); *Di Giammarino v. Barclays Capital, Inc.*, 2005-SOX-00106, 2006 DOLSOX LEXIS 79 (ALJ July 7, 2006) ("Here, the employee worked exclusively in the [U.K.] for a division of Barclays ... [a]ccordingly, this matter should be dismissed for lack of jurisdiction under the Act); *Concone*, 2004 DOLSOX LEXIS 97 (finding that Complainant was not a covered employee under the Act because he was employed by Respondent outside the U.S., without even

discussing where the misconduct and adverse employment actions occurred); *Ede v. Swatch Group*, ARB No. 05-053 ALJ Nos. 2004-SOX-69 and 69 (ARB June 27, 2007) ("Section 806 does not protect employees … who work exclusively outside the United States").[1]

Notably, in determining that the presumption against extraterritorial application precluded plaintiff's Section 806 claim, the *Carnero* court found it to be of no import that plaintiff had significant contacts with the U.S. and that he reported the misconduct of the subsidiary companies for which he worked to supervisors in the U.S. 433 F.3d at 3. Instead, the court focused on the legislative history of the Act and the intent of Congress when it enacted Section 806. *See id.* at 7-18. Here, the court stated that, "the legislative history … suggests that Congress was concerned about providing whistleblower protections for corporate employees within the various states." *Id.* at 13. The court went on to note that "nowhere…is there any indication that the whistleblower provision of SOX was drafted with the purpose of extending to *foreign employees working in nations outside of the United States.*" *Id.* (emphasis added). In reaching its decision, the *Carnero* court also stressed that plaintiff's employment duties were mainly performed abroad and that plaintiff's employers were two foreign subsidiaries. *Id.* at 3.

Plaintiff's position that the misconduct and retaliation must occur overseas to implicate the extraterritorial application of Section 806 is also undermined by the ALJ's decision in *Beck v. Citigroup Global Markets Holdings, Inc.*, 2006 DOLSOX 90 (ALJ Aug. 1, 2006). In *Beck*, the complainant claimed that extraterritorial application of Section 806 was not at issue because the decision to terminate him was made by Citigroup's New York headquarters, the misconduct occurred in the U.S. and the protected disclosures were made to officials in New York. In dismissing the claim for lack of jurisdiction, the ALJ held that despite complainant's allegations of the interrelationship of the various subsidiaries of Citigroup and

---

[1] *Ede* is notable because, to Defendants' knowledge, it represents the only decision on this point issued by the Administrative Review Board ("ARB") of the DOL. Because of the backlog of cases and the strict deadlines in SOX, 18 U.S.C. § 1514A(b)(1)(B), this appellate body is often forced to relinquish appeals that are already ripe for filing in a district court. *See* Exhibit E in Defendants' Opening Brief.

3

the involvement of the New York office in the events surrounding his claim, it was undisputed that complainant was a German National employed by a German subsidiary of Citigroup. 2006 DOLSOX 90 at *26. To that end, the ALJ found it irrelevant that the complainant had significant contacts with the U.S. or that the alleged misconduct occurred in the U.S. *Id.* According to the ALJ, "such facts, which are undoubtedly to be expected in a global economy, do not change the essential nature of the employment relationship concerned here, which was a foreign employment relationship based in Germany." *Id.* Significantly, the ALJ concluded by noting that the disclosure of misconduct to company officials in the U.S. and the participation by U.S.-based company officials in the decision to terminate complainant "[did not] change the outcome, as they [did] not alter the foreign nature of the employment relationship." *Id.* Similar to the facts in both *Carnero* and *Beck*, in this case, the alleged misconduct and retaliation took place while plaintiff was *employed in France*, where she has lived and worked since 1993. Therefore, the fact that the allegedly retaliatory decisions were supposedly made in the U.S. is irrelevant in determining whether an employee is covered under Section 806 of the Act.

2. *Penesso v. LLC Int'l, Inc.* Is Aberrational

Plaintiff cites *Penesso v. LLC Int'l, Inc.*, 2005 SOX 000016 (ALJ March 4, 2005) for the proposition that Section 806 should be applied to actions where the plaintiff was employed abroad. *Penesso*, however, is contrary to the long line of cases, such as *Carnero* and *Beck*, which focus on the location of employment in determining whether Section 806 should be applied extraterritorially. In *Penesso*, the ALJ held that the complainant, who was employed in Italy by an Italian subsidiary, could bring a cause of action under Section 806. Although the ALJ referenced the District Court's decision in *Carnero*, he did not have the benefit of the First Circuit decision affirming *Carnero* at that time, nor did he have the reasoning employed by the *Beck* ALJ at his disposal. The *Penesso* decision was largely guided by three facts: (1) *Penesso* was a U.S. citizen; (2) he frequently traveled to the U.S. and disclosed the misconduct *occurring* in Italy to officers in the U.S.; and (3) the adverse employment action took place in the U.S. Notably, the ALJ offered

4

no rationale or analysis why these factors were important or determinative of extraterritorial application.

The *Penesso* decision is illogical and, in the context of foreign employees, would force the DOL to begin conducting broad international inquiries for the sole purpose of determining where a particular employment decision was made. Nothing in SOX suggests that the DOL is empowered or equipped to use its limited resources to conduct an international search for a decision site, which may be a nearly impossible feat in a global economy. *See Beck*, 2006 DOLSOX 90 at *26. The only logical means to determine whether Section 806 applies is to determine the locus of employment. *See Carnero*, 433 F. 3d at 2-3; *Ahluwalia*, 2007 DOLSOX LEXIS 69 at *12; *Beck*, 2006 DOLSOX LEXIS 90 at *26; *Di Giammarino*, 2006 DOLSOX LEXIS 79 at *7-8; *Concone*, 2004 DOLSOX LEXIS 17205, at *13; *Ede*, 2004 SOX 0068 at *2. Furthermore, as the ALJ notes in *Beck*, the Order issued in *Penesso* was an interlocutory order, and as the case ultimately settled, no final decision was issued. 2006 DOLSOX 90 at *21-22.

### B. Plaintiff's Argument That The Extraterritorial Application Of A Statute Is Not Implicated When The Conduct Occurs Within The U.S. Is Flawed

Plaintiff relies primarily on three cases, *Stevens v. Premier Cruises, Inc.*, 215 F. 3d 1237 (11th Cir. 2000), *Environmental Defense Fund, Inc. v. Massey*, 986 F. 2d 528 (D.C. Cir. 1993), and *Shekoyan v. Sibley International Corporation*, 217 F. Supp. 2d 59 (D.D.C. 2002), to support her position that enforcement of a U.S. statute with respect to actions carried out within the U.S. does not implicate the presumption against extraterritorial jurisdiction. In *Stevens*, the court held that a claim under the Americans With Disabilities Act by a passenger on a foreign cruise ship in U.S. waters did not involve extraterritorial jurisdiction because the conduct occurred within U.S. borders. 215 F. 3d at 1242. *Stevens*, however, did not involve the regulation of foreign employment relationships. Courts have consistently held that U.S. laws regulating employment relationships do not apply to employees working abroad, absent clear congressional intent to the contrary. *See Foley Bros., Inc. v. Filardo*, 336 U.S. 281 (1949); *McCulloch v. Sociedad Nacional de Marineras de Honduras*, 372 U.S. 10 (1963); *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d

5

296, 298 (2nd Cir. 2006). Indeed, the *Stevens* court recognized that "a separate and different presumption exists against the application of American law to the internal management and affairs of a foreign-flag ship in [U.S.] waters," and that "this presumption ... has been applied where application of American law would interfere with the relations between the ship's foreign owner and the ship's foreign crew." 215 F. 3d at 1242. Hence, *Stevens* certainly does not support plaintiff's argument that SOX should be applied extraterritorially where it could interfere with an employment relationship centered outside the U.S.

Plaintiff's reliance on *Massey* is also unfounded. No extraterritorial application was implicated in *Massey* for several reasons: (1) as the D.C. Circuit acknowledged, the facts are unique. *Id.* at 533 (Antarctica it is not a "foreign country" but rather analogized to outer space); (2) the presumption against extraterritoriality is much weaker in Antarctica because the U.S. has some measure of legislative and real control over it. *Id.* at 533-35; (3) the National Environmental Protection Act ("NEPA"), is distinguishable from Title VII and the Federal Tort Claims Act, which are limited by the presumption against extraterritoriality, because NEPA would "never require enforcement in a foreign forum." *Id.* at 533; and (4) the conduct regulated involves the operations of a federal agency's decision-making process, which are "uniquely domestic". *Id.* at 529.

This case does not involve the unique circumstances of *Massey* where the decisions are, by statute, necessarily made within the U.S. by a U.S. agency. Furthermore, unlike Antarctica, France is a sovereign entity over which the U.S. has no measure of legislative control. The employment of French employees is the domain of France and the subject of far-ranging legislation in that country. As the *Massey* court noted, Title VII did not apply to discriminatory conduct perpetuated by a U.S. firm occurring within the jurisdiction of a foreign sovereign. *Id.* at 531. Moreover, as plaintiff was employed in France, enforcement would occur outside of the U.S., which would undermine the "well-established principle of sovereignty ... that no nation has the right to impose its labor standards on another country." *Carnero*, 433 F.3d at 15.

Finally, *Shekoyan* arises under an entirely different federal statute – the False Claims Act ("FCA")

and its unique *qui tam* provisions. The court in *Shekoyan* relies upon the fact that the plaintiff physically came to the U.S. to make his complaint of fraudulent misappropriation of U.S. government funds and was told to "keep it quiet" while in the U.S. and was subsequently terminated. 217 F. Supp. 2d at 71-73. The court concludes from this that the "conduct" occurred in the U.S., thereby allowing it to assert subject matter jurisdiction. *Id.* at 72-73. Given the unique facts and the differing nature of a *qui tam* action, the case is distinguishable. To the extent that the court in *Shekoyan* holds that the FCA's whistleblower provisions apply to any allegedly retaliatory decisions that are made in the U.S., it is wholly inconsistent with the rationale of *Carnero* and the ALJ/ARB decisions decided under SOX.

      C.      **Traditional Cannons Of Statutory Construction Confirm Congress's Intent To Preclude Extraterritorial Application Of SOX's Whistleblower Protections**

In her Response, plaintiff maintains that because she is not seeking extraterritorial application of Section 806, general rules of statutory construction apply to determine whether she is entitled to the protections of the whistleblower provision. To this end, plaintiff believes that because Section 806 does not expressly restrict its protections to employees who are physically located in the U.S., it should apply to all employees of companies that have securities that are traded on the U.S. exchanges. Plaintiff's position, however, is fatally flawed as all case law directly on point indicates that her claims fall squarely within the purview of extraterritorial application. Therefore, the *Carnero* court's analysis and determinations as to the legislative history and congressional intent behind Section 806 is directly on point.

As explained in Defendants' opening brief, traditional cannons of statutory interpretation confirm Congress's intent to preclude extraterritorial application of SOX's whistleblower's protections. When a statute is silent, the presumption against extraterritorial application is an axiomatic principle of construction. *Carnero*, 433 F.3d at 7; *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991). Contrary to plaintiff's position, Section 806's silence as to extraterritorial application indicates that Congress did not intend to extend the protection of this section to persons who are employed outside of the U.S. *See Carnero*, 433 F.3d at 7.

7

Congress's decision to provide extraterritorial jurisdiction in other SOX provisions confirms its desire to limit application of Section 806 to employees working in the U.S. *See* 18 U.S.C. 1513 (1997 & Supp. 2005); 15 U.S.C. 1513(e). By including these provisions, "Congress has demonstrated that it was well able to call for extraterritorial application when it so desired." *Carnero*, 433 F.3d at 9.

Finally, plaintiff does not dispute that, should the DOL decide to regulate employment relationships abroad, conflicts would inevitably arise between U.S. and foreign laws. No doubt, she attempts to downplay the significance of a French judgment fully resolving her employment claims by trying to distinguish the nature of the relief she seeks in this case. As a matter of fact, the French tribunal already dealt with "the reduction of her Level of Responsibility, and resulting reduction in pay" by awarding damages for the same exact time period. *See* Exhibit G in Defendant's Opening Brief. More importantly, Plaintiff misses the point altogether: Congress made no provision for resolving any conflicts that may exist between SOX and foreign laws regulating employment *and* Plaintiff's employment relationship with Accenture's French subsidiary is the exclusive province of a sovereign nation. *See Carnero*, 433 F.3d at 15 ("no nation has the right to impose its labor standards on another country"); *Massey*, 986 F. 2d at 530-531 (recognizing that the primary purpose of the presumption against extraterritoriality is "to protect against the … clashes between our laws and those of other nations which could result in international discord"). So, even if there was no direct conflict between the proceedings in this case, the potential for conflict is obvious and that Congress made no allowance for it is telling.[2]

## II.     PLAINTIFF DID NOT ENGAGE IN PROTECTED ACTIVITY AS DEFINED BY SOX

Plaintiff maintains that the unambiguous language of Section 806 provides that as long as the fraudulent activity constitutes mail or wire fraud, it does not also have to meet the additional requirement of

---

[2] Also telling is the lack of a comprehensive set of venue provisions for complaints brought under Section 806. As noted by the *Carnero* court, this omission indicates that "Congress simply did not contemplate the filing of administrative complaints by foreign employees working abroad." 433 F.3d at 17.

8

being perpetrated against shareholders. While this is an area of conflict among the courts[3] and at the administrative level, the vast majority of case law on this issue affirms that complaints by employees that do not relate to fraud against shareholders are not cognizable under Section 806. Indeed, courts in this District have determined that employee's disclosures must involve fraud against shareholders. *See Fraser v. Fiduciary Trust Co., Int'l*, 417 F. Supp. 2d 310, 321-322 (S.D.N.Y. 2006) (certain complaints made by plaintiff not protected by Section 806 because they did not indicate that [plaintiff] believed the company was *violating any provision related to fraud on shareholders*); *Portes v. Wyeth Pharms, Inc.*, 2007 U.S. Dist. LEXIS 60824 *14 (S.D.N.Y. Aug. 20, 2007) (disclosure regarding pharmacy's alleged lack of compliance with FDA standards not protected because disclosure did not suggest a concern that Defendant was being unfair to its investors).[4]

In this case, Complainant's general allegations of tax fraud in France, *i.e.* evading cotisations, even if true, does not relate to fraud against shareholders. Moreover, even if Defendants had violated the law for failing to pay French cotistations, an allegation that Defendants deny, such a failure would violate French

---

[3] Plaintiff correctly cites from the holding of *Reyna v. ConAgra Foods, Inc.*, 506 F. Supp 2d 1363 (M.D. Ga. 2007). Defendants respectfully disagree with the court in *Reyna*, as have (implicitly) two courts in this District and several in other jurisdictions. *See* Note 3.

[4] Several other courts and ALJs have also found that complaints that do not relate to shareholder fraud are not cognizable under Section 806. *See Livingston v. Wyeth, Inc.,* 2006 U.S. Dist. LEXIS 52978, 2006 WL 2129794, *10 (M.D. N.C. July 28, 2006) ("To be protected under Sarbanes-Oxley, an employee's disclosures must be related to illegal activity that, at its core, involves shareholder fraud."); *Bishop v. PCS Admin. (USA), Inc.,* 2006 U.S. Dist. LEXIS 37230 (N.D. Ill. May 23, 2006) (phrase "relating to fraud against shareholder" must be read as applying to each violations listed under section 806); *Neuschafer v. Parexel International, LLC*, 2007 DOLSOX LEXIS 63 (ALJ Aug. 31, 2007) (the reporting of violations by other employees of certain clinical drug testing protocols is not protected by Section 806 because "'fraud'" is an integral element of a cause of action under §806 and incorporates a requisite accusation of intentional deceit that under SOX would pertain to a matter that is material to or *that would impact shareholders or investors*") (emphasis added); *Fredrickson v. The Home Depot U.S.A., Inc.*, 2007-SOX-13, 2007 DOLSOX LEXIS 53 (ALJ July 10, 2007) ("Sarbanes-Oxley was enacted for the purpose of eliminating perpetration of fraud against shareholders as evidenced by the plain language of the Act as a whole"); *Marshall v. Northrup,* 2005-SOX-0008, 2005 DOLSOX LEXIS 63, 2005 (ALJ June 22, 2005) ("Protected activity is defined under SOX as reporting an employer's conduct which the employee reasonably believes constitutes a violation of the laws and regulations related to fraud against shareholders."); *Wengender v. Robert Half Int'l Inc.,* 2005-SOX-59, 2006 DOLSOX LEXIS 32 (ALJ March 30, 2006) ("SOX does not apply to . . . general allegations of fraud. . . applicability of SOX is limited to specifically enumerated laws or regulations related to fraud against shareholders.").

law.  The United States tax laws do not regulate tax payments to the French government.  Further, an alleged violation of French tax requirements for one employee, even a highly compensated one, does not rise to the level of a "fraud against shareholders" given that the impact, if any, on the financial reporting of Accenture would be miniscule in comparison to Accenture's global revenues.  *See Harvey v. Safeway*, No. 2004 SOX 21, 2005 DOLSOX LEXIS 4, at *80-81  (ALJ Feb. 11, 2005) (allegation of wage underpayment did not constitute fraud under Section 806 because it failed to reach requisite level of materiality as any impact on financial reporting would be microscopic).  Accordingly, Complainant's complaint should be dismissed for failure to state a claim under Section 806.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Accenture Ltd. and Accenture LLP. respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated:  New York, New York
          December 12, 2007

Respectfully submitted,

SEYFARTH SHAW LLP

By:   s/ Anthony J. Rao
        Anthony J. Rao (AR-8482)
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

        David Rowland, *admitted Pro Hac Vice*
        Miriam Geraghty, *admitted Pro Hac Vice*
131 South Dearborn Street, Suite 2400
Chicago, IL 60603
(312) 460-5965

Attorneys for Defendants Accenture Ltd and Accenture LLP