# SEYFARTH SHAW LLP
ATTORNEYS

131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
fax (312) 460-7000
www.seyfarth.com

Writer's direct phone
(312) 460-5817

Writer's e-mail
drowland@seyfarth.com

August 1, 2008

The Honorable Victor Marrero
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 660
New York, NY 10007

Re:  *Rosemary O'Mahony v. Accenture Ltd. and Accenture LLP*
     *(Case No. 07 CV 7916)*

Dear Judge Marrero:

Pursuant to Section III of the Court's individual practices regarding discovery disputes, the parties in the above-referenced matter submit this joint letter seeking a ruling from the Court concerning the defendants' application for a protective order directing that certain documents produced in discovery be maintained as confidential in this case. By way of background, Plaintiff Rosemary O'Mahony commenced this action against Accenture LLP and Accenture, Ltd. ("Accenture"), on September 7, 2007. In her complaint, Plaintiff alleges that Accenture retaliated against her because of her investigation of, and objections concerning, Accenture's alleged failure to pay French Social Security contributions on her behalf, in violation of the whistleblower provisions of Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. §1514A.

The parties have agreed in principle to the entry of a protective order limited to the following categories of non-public documents and deposition testimony: (1) documents (or testimony about them) which reveal or reflect the compensation or Level of Responsibility of any employee other than Plaintiff; (2) documents (or testimony about them) which contain personnel or personal data for any employees other than Plaintiff; and (3) documents (or testimony about them) containing proprietary business or client information, including documents and testimony related to Accenture's IPO, documents related to Accenture's Senior Executive Career Management or Partner Career Management & Compensation programs, client-identifying documents, and any documents reflecting business strategies (whether in a personnel document or otherwise). The parties have also agreed to certain specified categories of non-parties with whom a party may share a confidential document (e.g, an expert, an investigator, a deposition witness, etc.), provided that the non-party execute an acknowledgement confirming that he or she has read the protective order and

BRUSSELS    WASHINGTON, D.C.    SAN FRANCISCO    SACRAMENTO    NEW YORK    LOS ANGELES    HOUSTON    CHICAGO    BOSTON    ATLANTA



agrees to abide by it. A copy of the agreed language of the document (styled as Exhibit A to the protective order) is attached.

However, the defendants seek inclusion of the following additional items in the protective order which have not been agreed to by plaintiff:

(1) Accenture seeks to broaden the scope of the protective order to include: "**any documents concerning its decisions regarding the extent of its social tax obligations in France, the approach it employed to resolve any social tax obligations and its internal discussions about its social tax obligations (whether in general or with respect to Plaintiff).**" Plaintiff opposes any further expansion of the categories of documents to be protected by the order and has proposed language that specifically excludes from the protective order all "documents relating to Accenture's payment of (or decision not to pay) French social taxes, social security or 'cotisation' contributions on behalf of Plaintiff"

(2) Accenture seeks the inclusion in the protective order of language that allows either party access at any time, upon good faith request, to the signed acknowledgement for any non-party *except* with respect to expert witnesses. The precise language sought by Accenture would be as follows:

"**A copy of the acknowledgment and agreement to be bound by the terms of this Protective Order signed by each person falling within the terms of this Protective Order shall be made available to opposing counsel upon request while the litigation is pending upon a good faith showing of need, or at the conclusion of the litigation. Nothing in this paragraph, however, shall require the disclosure of the identity of experts retained by the parties.**"

Plaintiff opposes granting Accenture the right to obtain the executed acknowledgments during the course of the litigation and seeks the limitation of the right to request such acknowledgments to the conclusion of the litigation.

**Accenture's Position**

1. The scope of the documents to be protected as confidential

Fed R. Civ. P. 26(c) provides that this Court "may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression or undue burden or expense…" It is just such protection that Accenture seeks here.

Plaintiff's broad discovery requests include requests that are designed to elicit information about how, when, whether and to what extent Accenture decided to pay French social security contributions on behalf of plaintiff and others similarly situated. Accenture's decisions and internal deliberations on this topic are both business confidential and sensitive given the complexity of the French social tax scheme, the relevant U.S.–France treaty on taxes, plaintiff's own tax decisions and



the strategies that Accenture may have employed to navigate these difficult waters. In Accenture's view, a company's tax strategies and its tax payment practices are highly appropriate for confidential treatment and no less so *than other business proprietary information or actual tax filings*. Indeed, courts in this district have confirmed that a party's tax information is of a private nature and that it should be protected against public disclosure. *See Chen v. Republic Rest., Corp.*, 2008 U.S. Dist. LEXIS 24000, * 5 (S.D.N.Y. Mar. 28, 2008) (noting that courts are reluctant to order the discovery of tax returns because of the "private nature of the sensitive information contained therein"); *Baim & Blank, Inc. v. Bruno-New York, Inc.* 17 F.R.D. 346, 348 (S.D.N.Y. May 2, 1955) ("the contents of tax returns produced during the course of a deposition or discovery under the rules, whether by voluntary action or pursuant to court order, should be protected against public disclosure"); *see also McCarthy v. Barnett Bank of Polk County*, 876 F. 2d 89, 91-92 (11th Cir. 1989) (holding that district court did not abuse its discretion in issuing a protective order covering the parties' financial documents and tax returns in a case involving federal securities laws); *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355 (11th Cir. 1987) (upholding a protective order allowing parties to designate tax returns and other sensitive material as confidential and noting that "private litigants have a protectible interest in confidential information disclosed through discovery.").

Furthermore, there is a substantial chance that this SOX case will receive media attention. In fact, your Honor's decision regarding subject matter jurisdiction has already garnered attention in various legal and financial publications. *See* Jeremy Grant, *Court Extends Sarbox Protection*, Financial Times, Feb. 14, 2008, available at FT.com; Bailey Somers, *France Based Employee Can Sue Under SOX*: Court, Employment Law 360, Feb. 12, 2008, available at employmentlaw360.com. Thus, to the extent Plaintiff "leaks" isolated documents or snippets of deposition testimony which she may view as supportive of her assertions of alleged "tax fraud", Accenture may find itself battling this case in two distinct forums: (1) before this Court; and (2) in the media – or, perhaps better stated, the court of popular opinion. "[T]he fear of adverse publicity, intimidation or other outside forces that could interfere with the free flow of information ... is adequate justification for the inclusion of the documents in the parties' protective order. *See McCarthy*, 876 F. 2d at 91-92. Stated differently, if Plaintiff is not precluded from restricting the public dissemination of these documents – some of which may not be admissible or even introduced at trial – Accenture will be subject to needless "annoyance, embarrassment, oppression, undue burden and expense." *See SEC v. TheStreet.com*, 273 F. 3d 222, 229 (2d Cir. 2001); Fed. R. Civ. P. 26(c).

Accenture will fully comply with its discovery obligations in this matter which will ultimately allow this Court to consider probative evidence, properly presented under the Federal Rules of Evidence, to render a just and fair result. Accenture does *not* seek an order barring production of documents that Plaintiff may one day introduce in evidence to support her claims; rather, Accenture seeks only to limit her use of the documents to this proceeding, which is the clear purpose of the expansive discovery permitted by the Federal Rules of Civil Procedure. *See Zyprexa Litigation, et al.*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (quoting *Joy v. North*, 692 F. 2d 880, 893 (2d Cir. 1982)(The purpose of discovery is to "facilitate orderly preparation for trial, not to educate or titillate the public."); *see also International Products Corporation v. Koons*, 325 F.2d



The Honorable Victor Marrero
August 1, 2008
Page 4

403, 407 (2d Cir. 1963) (Friendly, J.) ("we entertain no doubt as to the constitutionality of a rule allowing a federal court to forbid the publicizing, in advance of trial, of information obtained by one party from another by use of the court's processes"). In sum, Plaintiff cannot articulate any reason to suggest that the inclusion of the broader language sought by Accenture in the protective order will impede her preparation of this case or otherwise prejudice her.

    2.    Access to Acknowledgments (Exhibit A)

Accenture also believes that, in the event that it determines in good faith that a potential violation of the protective order has occurred, it has the right to know the identities of the individuals (other than experts) who receive access to protected documents during the pendency of the litigation. Such a provision is entirely reasonable because Accenture cannot identify the source of a potential leak and seek enforcement of the Court's order if it is required to wait until the conclusion of the litigation to determine who had access to its confidential documents and who agreed to be bound by the protective order. This is important as to documents that the parties have already agreed are confidential, even if the Court denies Accenture's application for broader coverage.

**Plaintiff's Position**

    1.    Centrally Relevant Documents Relating to Accenture's Payment of Plaintiff's Social Security Contributions Should Not be Given Confidential Status

The information for which Accenture seeks confidential protection goes to the very heart of plaintiff's claims in this case. Plaintiff alleges that, under the terms of a bilateral U.S.-French social security treaty and French domestic law, as of September 1997 Accenture had a legal obligation to begin paying social security contributions on her behalf into the French social security system. She further alleges that Accenture deliberately and wilfully concealed Ms. O'Mahony's employment status from the French authorities and fraudulently withheld payment of millions of dollars of French Social Security Contributions that were legally owed on her behalf for the period 1997 through 2004. Plaintiff also alleges that senior Accenture executives admitted to her that Accenture had a legal obligation to pay French social security payments retroactively on her behalf but that it made an internal decision not to pay these contributions because it "was in Accenture's best interests" not to pay them.

Accenture has no legitimate privacy expectations with respect to decisions it has made to illegally withhold payment of social security contributions owed on behalf of its employees. The categories of information traditionally given confidential protection by Courts, such as trade secrets and customer lists, involve proprietary business information the disclosure of which could place a party at a competitive disadvantage in its regular course of business. However, Courts in the Second Circuit have refused to provide such protection for information that demonstrates or implies that the party has committed illegal conduct including tax fraud. *See, e.g., Ideal Steel Supply Corp. v. Anza*, 2005 WL 1213848 (S.D.N.Y. 2005) (rejecting defendant's application to include in a

CH1 11527043.1



protective order deposition testimony showing the company's failure to pay sales tax); *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 122 F.R.D. 433 (S.D.N.Y. 1988) (Court refused to protect as confidential party's assertion of Fifth Amendment in answer to deposition questions because "[t]he rationale for confidentiality offered ... clearly does not meet the standard for entry of a protective order").

Magistrate Judge Peck's rejection of defendant's application for confidentiality in *Ideal Steel* involved circumstances almost identical to the instant case. In that case, the defendant sought confidentiality under the terms of a protective order for deposition testimony relating to defendant's "practices in connection with not charging sales tax on certain sales" and "the preparation of [defendant's] tax returns and how sales tax was treated." *Id.* at *1. After observing that "[t]he burden of showing that *specific* documents deserve confidential status is on the producing party," Judge Peck went on to explain that:

> While defendants assert that prior cases have upheld protective orders in which tax returns are deemed confidential ... the deposition ... excerpts at issue here are not tax returns nor do they reveal the information contained in tax returns. While the excerpts reveal defendants' apparent failure to pay certain taxes, that information (at least in allegation form) is already public via plaintiff's complaint and amended complaint.

*Id.* at *2. (For Your Honor's convenience, a copy of Judge Peck's unpublished decision is enclosed herewith).

Judge Peck also expressly rejected the defendant's argument that the information was entitled to confidentiality because it "will incriminate or embarrass defendants," holding that such an assertion "is not a basis for documents to be held to be 'confidential' under Rule 26." *Id.* at *3 citing *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F.Supp. 449, 487 (S.D.N.Y.1996) ("'Good cause' is not established merely by the prospect of negative publicity. A party seeking to file documents under seal generally must show both that the documents are confidential and that disclosure will result in a 'clearly defined and very serious injury.'") (citations omitted); *Culinary Foods, Inc. v. Raychem Corp*, 151 F.R.D. 297, 301 (N.D.Ill.) ("Although the information regarding the hazards of products and the corporation's knowledge of the information may be embarrassing and incriminating, this alone is insufficient to bar public disclosure."), *clarified,* 153 F.R.D. 614 (N.D.Ill.1993)

Here, as in *Ideal Steel*, defendants' attempted reliance on cases giving heightened protection to filed tax returns is misplaced. Specifically, plaintiff has not sought production of defendants' income tax returns and would not oppose confidentiality for such returns were they to become relevant to the case. Nor does plaintiff seek information regarding Accenture's tax strategies or payment practices with respect to Accenture's *own* income taxes. Rather, the information at issue

CH1 11527043.1



The Honorable Victor Marrero
August 1, 2008
Page 6

relates solely to Accenture's decision-making regarding payment of *social security taxes* owed on *plaintiff's behalf*.

The inclusion of these centrally relevant documents within the scope of the protective order may restrict plaintiff's ability to utilize them in connection with this litigation. This concern is particularly acute in this case because certain witnesses reside in France and plaintiff may therefore attempt to approach some witnesses informally rather than seeking to depose all foreign witnesses under the provisions of the Hague Convention. Such witnesses may not be willing to execute an agreement to be bound by the terms of a U.S. Court's Protective Order, which is a prerequisite to disclosure of confidential materials under the proposed protective order agreed to here.

Equally importantly, however, Ms. O'Mahony should be free to provide an explanation for why her 28-year career at Accenture abruptly ended. If, as she contends, it was ended because of her opposition to illegal conduct by Accenture, she must be permitted to provide that explanation for the ending of her career and such an explanation necessarily involves Accenture's decisions and conduct with respect to her social security contributions. Hence, while Ms. O'Mahony does not intend to "try" this case in the media, as Accenture alleges, she does have a very legitimate interest in being able to provide an explanation of what happened to her at Accenture. If, as Accenture claims, its decision-making documents demonstrate an effort on its part to comply with the law then it will not be harmed in any way by their production. If, however, as alleged by Ms. O'Mahony, they demonstrate an internal attempt to evade the law then it is respectfully submitted that Accenture should not be able to shield its own misconduct behind a judicially-ordered wall of secrecy.

Accordingly, plaintiff submits that the Court should deny defendants' application for confidential protection to be afforded to documents and testimony concerning its decision-making process and practices on payment of plaintiff's social security contributions in France.

2.   Defendants' Access to Acknowledgments Signed by Witnesses

As set forth above, plaintiff does not object to according confidential status to the categories of information traditionally entitled to such protection, such as compensation and personnel information concerning other employees and documents containing non-public proprietary information. The proposed protective order concerning these documents permits plaintiff to disclose them to certain witnesses and experts provided that the witnesses sign an acknowledgment and agreement to be bound by the confidentiality order. The parties disagree, however, on the circumstances in which defendants should have access to such signed acknowledgments.

Defendants seek the ability to uncover during the course of discovery and trial preparation the identities of witnesses to whom plaintiff's counsel has shown confidential material "upon a good faith showing of need." Plaintiff believes that such acknowledgments should not be provided to opposing counsel until the conclusion of the litigation because they necessarily reveal plaintiff's counsel's discovery and trial-preparation strategies in terms of the identity of witnesses whom they

CH1 11527043.1



The Honorable Victor Marrero
August 1, 2008
Page 7

are interviewing or speaking to. Plaintiff believes, therefore, that the acknowledgments should only be discoverable during the course of this litigation upon a *prima facie* showing that a specific third-party has breached the terms of the protective order, in which case any acknowledgment by that identified third party only would be disclosed.

The parties request a conference call or hearing on this matter should Your Honor deem it appropriate.

Sincerely,

_David J. Rowland / paw_  
David J. Rowland (Admitted Pro Hac Vice)  
SEYFARTH SHAW LLP  
131 South Dearborn Street  
Suite 2400  
Chicago, Illinois 60603  
Telephone No. 312-460-5817  

Peter A. Walker (PW-7984)  
SEYFARTH SHAW LLP  
620 Eighth Avenue  
New York, New York 10018-1405  

Counsel for Defendants Accenture LLP and Accenture Ltd.

_/s/_  
David N. Mair (DM-8883)  
KAISER, SAURBORN & MAIR P.C.  
111 Broadway  
New York, NY, 10006  
Telephone No. 212-338-9100 ext. 315  

Counsel for Plaintiff Rosemary O'Mahony

USDS SDNY  
DOCUMENT  
ELECTRONICALLY FILED  
DOC #: _____  
DATE FILED: 8-4-08

The parties are directed to address the matter set forth above to Magistrate Judge Michael H. Dolinger, to whom this dispute has been referred for resolution, as well as for supervision of remaining pretrial proceedings, establishing case management schedules as necessary, and settlement.

SO ORDERED.

8-4-08  
Date                    VICTOR MARRERO, U.S.D.J.

CH1 11527043.1